1  Michael D. Braun (167416)
2  BRAUN LAW GROUP, P.C.
   12400 Wilshire Blvd., Suite 920
   Los Angeles, CA 90025
3  Tel:    (310) 442-7755
   Fax:    (310) 442-7756
4
   **Proposed Liaison Counsel for Lead Plaintiff**
5  **Movant Adrian G. Mongeli and the Class**

6  Maya Saxena                              Lewis Kahn
   Joseph E. White, III                     Michael A. Swick
7  SAXENA WHITE P.A.                        KAHN GAUTHIER SWICK, LLC
   2424 North Federal Highway, Suite 257    650 Poydras Street, Suite 2150
8  Boca Raton, FL 33431                     New Orleans, LA 70130
   Tel:    (561) 394-3399                   Tel:    (504) 455-1400
9  Fax:    (561) 394-3382                   Fax:    (504) 455-1498

10
   **Proposed Lead Counsel for Lead Plaintiff**
11 **Movant Adrian G. Mongeli and the Class**

12

13              **UNITED STATES DISTRICT COURT**

14            **NORTHERN DISTRICT OF CALIFORNIA**

15

16 I.B.I. INVESTMENTS, LTD. Individually, )    **CASE NO.: 3-06-CV-03936 MJJ**
   And On Behalf Of All Others Similarly   )
17 Situated,                               )    **CLASS ACTION**
                                           )
18              Plaintiff,                 )    **MEMORANDUM OF POINTS AND**
                                           )    **AUTHORITIES IN SUPPORT OF**
19       vs.                               )    **MOTION OF ADRIAN G. MONGELI TO**
                                           )    **BE APPOINTED LEAD PLAINTIFF**
20 TERAYON COMMUNICATIONS                  )    **PURSUANT TO SECTION 21D(a)(3)(B)**
   SYSTEMS, INC., ZAKI RAKIB, JERRY        )    **OF THE SECURITIES EXCHANGE ACT**
21 D. CHASE, MARK A. RICHMAN, and          )    **OF 1934 AND TO APPROVE PROPOSED**
   EDWARD LOPEZ,                           )    **LEAD PLAINTIFF'S CHOICE OF**
22                                         )    **COUNSEL**
                Defendants.                )
23 _____ )    **DATE:      October 17, 2006**
                                                **TIME:      9:30 a.m.**
24                                              **CTRM:      11, 19th Floor**

25

26

27

28

1

## TABLE OF CONTENTS

2

3   TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

4   I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5   II.  PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

6   III. SUMMARY OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

7   IV.  ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

8        A.   The PSLRA Procedure For Lead Plaintiff Appointment Favors
             Appointment of Mongeli . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
9
             1.   Adrian Mongeli Has Complied With The PSLRA And Should
10                Be Appointed Lead Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

11           2.   Adrian Mongeli Has The Largest Financial Interest of The
                  Plaintiffs Who Have Submitted Applications for Lead Plaintiff
12                And Is Otherwise Qualified To Serve as Lead Plaintiff In This
                  Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
13
             3.   Adrian Mongeli Satisfies The Requirements Of Rule 23  . . . . . . . . . . . . . . 6
14
                  a.   Adrian Mongeli's Claims Are Typical Of The Claims Of
15                     All The Class Members . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

16                b.   Adrian Mongeli Will Adequately Represent The Interests
                       Of The Class  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
17
        B.   This Court Should Accept Mongeli's Selection of Counsel  . . . . . . . . . . . . . . . . . 9
18
    V.   CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

3

### FEDERAL CASES

4

*In re Cavanaugh,*
306 F.3d 726 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

5

*Crossen v. CV Therapeutics,*
6   2005 U.S. Dist. LEXIS 41396 (D.C. N.D. Cal., 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

7   *Ferrari v. Gisch,*
225 F.R.D. 599 (C.D. Cal. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

8

*Hanlon v. Chrysler Corp.,*
9   150 F.3d 1011 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

10  *Miller v. Ventro Corp.,*
2001 U.S. Dist. LEXIS 26027, *44 (N.D. Cal. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

11

*Schriver v. Impac. Mortg. Holdings, Inc.,*
12  2006 Dist. LEXIS 40607, 16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

13  *Siegall v. Tibco Software, Inc.,*
2006 U.S. Dist. LEXIS 26780 (N.D. Cal., 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

14

*Takeda v. Turbodyne Techs.,*
15  67 F.Supp. 2d 1129, 1132 (C.D. Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

16

### FEDERAL STATUTES AND RULES

17  15 U.S.C. §78u-4(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *in passim*

18  Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 . . . . . . . . . . . . . . . . . . . . . . . . 1, 6

19  Fed.R.Civ.P. Rule 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *in passim*

20  15 U.S.C. § 78u-4(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *in passim*

21

### CONGRESSIONAL REPORTS

22  House Conference Report No. 104-369, 104th Cong. 1st Sess.
at 34 (1995), reprinted at 1995 USCC&AN730, 733 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

23

24

25

26

27

28

1    **I.    INTRODUCTION**

2        Adrian G. Mongeli ("Mongeli") hereby moves to be appointed Lead Plaintiff in this action

3    against Terayon Communication Systems, Inc. ("Terayon" or the "Company") pursuant to Section

4    21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-

5    4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and for

6    approval of its selection of the law firms Kahn Gauthier Swick, LLC ("KGS") and Saxena White

7    P.A. ("SW") as Lead Counsel, and the Braun Law Group, P.C. ("BLG") as Liaison Counsel in this

8    action.

9        Mongeli is precisely the type of lead plaintiff the framers of the PSLRA encouraged to

10   participate in securities class actions by enacting the PSLRA's lead plaintiff provision.   The

11   legislative history of the PSLRA is summarized in the Statement of Managers, which noted the

12   PSLRA was intended to increase the likelihood that sophisticated investors who have a significant

13   interest in the underlying action, will serve as lead plaintiffs because, among other reasons,

14   sophisticated investors with large amounts at stake "will represent the interest of the plaintiff class

15   more effectively than class members with small amounts at stake." House Conference Report No.

16   104-369, 104th Cong. 1st Sess. At 34 (1995), reprinted at 1995 USCC&AN730, 733.  Mongeli is the

17   type of sophisticated investor Congress sought to lead securities class actions through enactment of

18   the PSLRA.[1]

19       Mongeli fully understands his duties and responsibilities to the class, and is willing and able

20   to oversee the vigorous prosecution of this action.  As described in the Certification attached to the

21   Braun Declaration at Exhibit A[2], Mongeli has suffered a loss of $63,248.87 as a result of his

22   purchase and/or acquisition of 413,079 shares of Terayon securities during the period October 28,

23   2004 and March 1, 2006, inclusive (tentatively, the "Class Period").  To the best of his knowledge,

24

25       [1] If necessary, Mongeli also stands ready, willing and able to present a further detailed

26   account of his specific attributes and abilities.

27       [2] Declaration of Michael D. Braun in Support of Motion of Adrian G. Mongeli to Be

28   Appointed Lead Plaintiff Pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934
     and to Approve Proposed Lead Plaintiff's Choice of Counsel ("Braun Decl. at Ex.__").

1  Mongeli has therefore sustained the largest loss of any qualified investor seeking to be appointed as

2  Lead Plaintiff. In addition to evidencing the largest financial interest in the outcome of this

3  litigation, Mongeli's Certification demonstrates his intent to serve as Lead Plaintiff in this litigation,

4  including his cognizance of the duties of serving in that role.[3] Moreover, Mongeli satisfies both the

5  applicable requirements of the PSLRA and Rule 23 of the Federal Rules of Civil Procedure ("Rule

6  23") and is presumptively the "most adequate plaintiff." Adrian Mongeli respectfully submits that

7  he should be appointed as Lead Plaintiff in this action, and that this Honorable Court should

8  approve his selection of the law firm of KGS and SW as Lead Counsel for the Class.

9  **II.    PROCEDURAL HISTORY**

10    This case was filed on June 20, 2006, by I.B.L. Investments, Ltd., individually and on behalf

11  of all persons or entities that purchased or otherwise acquired Terayon securities during the relevant

12  Class Period. The gravamen of the complaint is Defendants' violation of Sections 10(b) and 20(a)

13  of the Exchange Act and SEC Rule 10b-5. Specifically, the complaint arises out of Defendants'

14  dissemination of a series of public statements during the Class Period that contained material

15  misrepresentations and omitted material facts concerning Terayon's financial results, business and

16  operations. These misrepresentations and omissions caused the price of Terayon's securities during

17  the Class Period to be artificially inflated, and thereby resulted in the damages suffered by Mongeli

18  and the other members of the Class.

19    Shortly after the initial filing of this action, Plaintiff I.B.L. Investments, Ltd. published a

20  notice of pendency of that action in *The Financial Times,* an international business news service

21  based in the United Kingdom. *See*, Published Notice at Exhibit B to the Braun Declaration. That

22  notice advised class members of the existence of the lawsuit and described the claims asserted.

23

24

25  [3]  The relevant federal securities laws specifically authorize any class member seeking to be appointed lead plaintiff to either file a complaint or move for appointment as lead plaintiff. *See*, 15

26  U.S.C. § 78u-4(a)(3)(B)(iii). A copy of Mongeli's certification of its transactions in Terayon's securities during the Class Period is attached as Exhibit A to the Braun Declaration that has been

27  filed in conjunction with this motion.

28

MPA IN SUPPORT OF MX OF ADRIAN G. MONGELI TO BE APPOINTED LEAD PLAINTIFF PURSUANT TO SECTION 21D(a)(3)(B) OF THE
SECURITIES EXCHANGE ACT OF 1934 AND TO APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL
CASE NO.: 3-06-CV-03936 MJJ
\\Fileserver\shareddocs\BLG\TERAYON\PLD-WPD\MPA re LP.wpd

1    Consistent with the terms of the PSLRA, Adrian Mongeli has timely filed this motion for

2   appointment as Lead Plaintiff within 60 days from the publication of the notice of pendency of that

3   action in *The Financial Times*.

4   **III.    SUMMARY OF FACTS**

5    Terayon Communication Systems, Inc., a Delaware Corporation headquartered in Santa

6   Clara, California, is in the business of developing, marketing, and selling equipment to broadband

7   service providers for delivering broadband voice, digital video solutions ("DVS"), and data services

8   to residential and business subscribers in the United States. During the Class Period, defendant's

9   representations concerting the Company's financial condition, impressive income growth, and

10   various other statements in the Company's quarterly and annual financial results and SEC filings

11   were materially false and misleading because defendants knew or recklessly disregarded that the

12   Company's reported financial results and growth were attributable to improper accounting practices.

13   As a result of these materially false and misleading statements, Terayon traded at artificially inflated

14   prices during the Class Period.

15    Unbeknownst to investors, however, at all relevant times, Terayon's internal controls and

16   procedures and, as a result, the Company's projections and reported financial results were seriously

17   flawed. The Company's lack of internal controls related to the preparation and review of financial

18   statements and its seriously flawed accounting practices led to recordation of certain

19   revenues in the wrong time periods. Terayon's own independent registered accounting firm, Ernst

20   & Young LLP, recognized the Company's weak internal structure. The Company's continued

21   reckless disregard for its accounting practices and the misleading information released to

22   shareholders presented an imminent threat to the Company's cash flow and profitability.

23    On November 7, 2005, Terayon issued a press release titled "Terayon Announces

24   Accounting Review and Delay in Release of Third Quarter Results." The release acknowledged the

25   Company's recordation of revenues in the incorrect period, requiring a restatement of prior period

26   financial statements. More specifically, on that day, Defendants reported that there could be "no

27   additional assurance that Terayon or its independent auditors will not identify additional issues or

28   other considerations in connection with the current review, and that these issues or considerations

1    will not require further adjustments to the company's prior financial results for one or more prior

2    fiscal years or quarters. As a result of this news, on November 8, 2005, Terayon's stock price fell

3    $0.32 per share and closed at $2.25, on unusually heavy trading volume of over 2.5 million shares.

4         Then, on March 1, 2006, the SEC announced that it had begun a formal inquiry of Terayon

5    in the *Bloomberg News*. The article stated that the "Santa Clara, California-based company

6    defaulted on its loans when it missed filing an earnings report for the quarter ended Sept. 30, 2005."

7    These revelations shocked the market. The next day, March 2, 2006, Terayon stock plummeted

8    $0.37 per share, or 13.7% below the previous day's closing price of $2.70, which was before the full

9    extent of the Company's restatement was disclosed to investors. Terayon shares closed on March 2,

10    2006, at $2.25, on extremely heavy trading volume of over 4.8 million shares.

11         Defendants were motivated to and did conceal the true operational and financial condition of

12    Terayon, and to materially misrepresent and fail to disclose the conditions that were adversely

13    affecting the Company throughout the Class Period, because it: (1) enabled defendants to mislead

14    investors regarding Terayon's business, operations, management and the intrinsic value of

15    Terayon's publicly traded securities; (2) enabled defendants to publicly issue false and misleading

16    statements and omit material adverse information about the Company; and (3) caused Plaintiff and

17    other members of the Class to purchase Terayon securities with an unrealistically positive

18    assessment of the Company.

19    **IV.    ARGUMENT**

20         **A.    The PSLRA Procedure For Lead Plaintiff Appointment Favors Appointment of
         Mongeli**

21

22         The selection of Lead Plaintiff in a securities class action is a determination made by the

23    Court as to which plaintiff is the most capable of adequately representing the class. The Court:

24        (s)hall appoint as lead plaintiff the member or members of the purported plaintiff
         class that the court determines to be *most capable of adequately representing* the

25    interests of class members in accordance with this subparagraph.

26        15 U.S.C. §78u-4(a)(3)(B)(i) (emphasis added). The "most adequate plaintiff" assumes a

27    rebuttable presumption that:

28

MPA IN SUPPORT OF MX OF ADRIAN G. MONGELI TO BE APPOINTED LEAD PLAINTIFF PURSUANT TO SECTION 21D(a)(3)(B) OF THE
SECURITIES EXCHANGE ACT OF 1934 AND TO APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL
CASE NO.: 3-06-CV-03936 MJJ
\\Fileserver\shareddocs\BLG\TERAYON\PLD-WPD\MPA re LP.wpd

The most adequate plaintiff in any private action arising under this subchapter is the person or group of persons that —

(aa)  has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);

(bb)  *in the determination of the court, has the largest financial   interest in the relief sought by the class; and*

(cc)  otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I) (emphasis added).

Only by a showing that a Lead Plaintiff will not fairly and adequately represent the class, or is subject to unique defenses that will render such plaintiff incapable of adequately representing the class, will this presumption be overcome. 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

Under this statutory test, Mongeli is the "most adequate plaintiff" and should be appointed as Lead Plaintiff on behalf of the proposed class. Mongeli is exactly the type of sophisticated and interested investor with large losses that Congress intended to lead class action securities lawsuits. Mongeli has timely moved this Court for appointment as Lead Plaintiff in accordance with the PSLRA and has the willingness, resources and expertise to obtain excellent results for the class. Consequently, this Court should appoint Mongeli as Lead Plaintiff and approve his selection of KGS and SW as Lead Counsel.

## 1. Adrian Mongeli Has Complied With The PSLRA And Should Be Appointed Lead Plaintiff

Mongeli moves the Court to be appointed Lead Plaintiff and has timely filed the instant motion to be appointed lead plaintiff within the 60-day time period requirement. The plaintiff in the first filed action published notice on a national business-oriented wire service, on July 11, 2006. Accordingly, Mongeli meets the requirement of 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa) and has filed his motion by September 11, 2006.

Moreover, Mongeli is a sophisticated investor who has sustained a substantial loss from his investment in Terayon stock and has shown his willingness to represent the class by signing a certification detailing his Terayon transaction information during the Class Period. *See* Braun Decl.

1    Ex. A.  As demonstrated by this certification, Mongeli is prepared to consult with counsel on a

2    regular basis, prior to every major litigation event, and direct the course of the litigation, with the

3    benefit of counsel's advice.  In addition, Mongeli has selected and retained highly competent

4    counsel to represent the Class with significant experience in securities class action litigation.  *See*

5    Braun Decl. at Exs. C-E.

6          **2.    Adrian Mongeli Has The Largest Financial Interest of The Plaintiffs**
            **Who Have Submitted Applications for Lead Plaintiff And Is Otherwise**
7          **Qualified To Serve as Lead Plaintiff In This Action**

8          As a result of his purchases of Terayon securities throughout the Class Period The Mongeli

9    has suffered losses of $63,248.87.  *See* Braun Decl. Ex. A.  Mongeli believes he has the largest

10   financial interest in this class action compared to any other party moving for Lead Plaintiff.  The

11   PSLRA provides that there is a rebuttable presumption that the "most adequate plaintiff" is the

12   plaintiff with the largest financial interest in the relief sought by the class. 15 U.S.C. §78u-

13   4(a)(3)(B)(iii)(I)(bb).  "So long as the plaintiff with the largest losses satisfies the adequacy

14   requirements, he is entitled to lead plaintiff status..."  *Ferrari v. Gisch*, 225 F.R.D. 599, 602 (C.D.

15   Cal. 2004) (*citing In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002)).  Mongeli, therefore, is

16   presumptively the "most adequate plaintiff" pursuant to the PSLRA.

17         **3.    Adrian Mongeli Satisfies The Requirements Of Rule 23**

18         Section 21D(a)(3)(B)(iii)(I)(cc) of the Exchange Act, as amended by the PSLRA, provides

19   that the Lead Plaintiff must satisfy the typicality and adequacy requirements of Fed.R.Civ.P. Rule

20   23(a).  *Siegall v. Tibco Software, Inc.*, 2006 U.S. Dist. LEXIS 26780, *15  (N.D. Cal., 2006) ("In

21   the context of determining the appropriate lead plaintiff, the requirements of 'typicality' and

22   adequacy of representation are the key factors.").  This Court's analysis of any other requirements of

23   Rule 23 as it relates to class certification should be deferred until the Lead Plaintiff moves for class

24   certification. *Schriver v. Impac. Mortg. Holdings, Inc.*, 2006 Dist. LEXIS 40607, *16 (C.D. Cal., S.

25   Div. 2006) ("At the lead plaintiff appointment stage, the Rule 23 inquiry is not as searching as it

26   would be on a motion for class certification; the prospective lead plaintiff need only make a prima

27   facie showing that it meets the typicality and adequacy factors.").  As detailed below, Mongeli

28

MPA IN SUPPORT OF MX OF ADRIAN G. MONGELI TO BE APPOINTED LEAD PLAINTIFF PURSUANT TO SECTION 21D(a)(3)(B) OF THE
SECURITIES EXCHANGE ACT OF 1934 AND TO APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL
CASE NO.: 3-06-CV-03936 MJJ
\\Fileserver\shareddocs\BLG\TERAYON\PLD-WPD\MPA re LP.wpd

1 | satisfies both the typicality and adequacy requirements of Rule 23(a), and should therefore be

2 | appointed Lead Plaintiff in this action.

3 |                **a.**    **Adrian Mongeli's Claims Are Typical Of The Claims Of All The Class Members**

4 |

5 |       Under Rule 23(a)(3), typicality exists where "the claims…of the representative parties" are

6 | "typical of the claims….of the class." The typicality requirement of Rule 23 (a)(3) is satisfied when

7 | the representative plaintiffs' claims arise from the same event or course of conduct that gives rise to

8 | claims of other class members, and when the claims are based on the same legal theory. *See Crossen*

9 | *v. CV Therapeutics*, 2005 US Dist. LEXIS 41396, *13 (D.C. N.D. Cal., 2005). The requirement that

10 | the proposed class representatives' claims be typical of the claims of the class does not mean,

11 | however, that the claims must be identical. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th

12 | Cir. 1988).

13 |       In this case, the typicality requirement is met because Mongeli's claims *are* identical to the

14 | claims of the other Class Members. Adrian Mongeli and all the members of the Class purchased

15 | Terayon securities during the Class Period when the stock prices were artificially

16 | inflated as a result of the Defendants' fraudulent misrepresentations and omissions, and thus, both

17 | Mongeli and the Class Members suffered damages as a result of these purchases. Simply put,

18 | Mongeli, like all the other Class Members, (1) purchased Terayon stock during the Class Period; (2)

19 | purchased Terayon stock at artificially inflated prices as a result of the Defendants'

20 | misrepresentations and omissions; and (3) suffered damages thereby. Mongeli's claims and injuries

21 | "arise from the same event or course of conduct that [gave] rise to the claims of other class

22 | members." *Crossen*, at *13.

23 |       Moreover, Mongeli is not subject to any unique or special defenses. Thus, Mongeli meets

24 | the typicality requirement of Fed.R.Civ.P. Rule 23 because his claims are the same as the claims of

25 | the other Class Members.

26 | ///

27 | ///

28 | ///

MPA IN SUPPORT OF MX OF ADRIAN G. MONGELI TO BE APPOINTED LEAD PLAINTIFF PURSUANT TO SECTION 21D(a)(3)(B) OF THE SECURITIES EXCHANGE ACT OF 1934 AND TO APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL
CASE NO.: 3-06-CV-03936 MJJ
\\Fileserver\shareddocs\BLG\TERAYON\PLD-WPD\MPA re LP.wpd

1

2

**b.     Adrian Mongeli Will Adequately Represent The Interests Of The Class**

3      The Requirements of Rule 23(a)(4) relating to adequate representation are satisfied "if (1)

4   the class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the

5   interests of the class are not antagonistic to one another; and (3) the lead plaintiff has a "sufficient

6   interest in the outcome of the case to ensure vigorous advocacy." *Miller v. Ventro Corp.*, 2001 U.S.

7   Dist. LEXIS 26027, *44 (N.D. Cal. 2001) (*citing Takeda v. Turbodyne Techs.*, 67 F.Supp. 2d 1129,

8   1132 (C.D. Cal. 1999)).  As described below, Mongeli will adequately represent the interests of the

9   class.

10      Mongeli's interests are clearly aligned with the members of the Class because his claims are

11   identical to the claims of the Class.  There is no evidence of antagonism between his interests and

12   those of proposed Class Members.  Furthermore, Mongeli has a significant, compelling interest in

13   prosecuting this action to a successful conclusion based upon the very large financial

14   loss he incurred as a result of the wrongful conduct alleged herein.  This motivation, combined with

15   Mongeli's identical interest with the members of the Class, clearly shows that Mongeli will

16   adequately and vigorously pursue the interests of the Class.  In addition, Mongeli has selected

17   counsel that is highly experienced in prosecuting securities class actions such as this one to

18   represent him and the class.

19      In sum, because of Mongeli's common interests with the Class Members, his clear

20   motivation and ability to vigorously pursue this action, and his competent counsel, the adequacy

21   requirement of Fed.R.Civ.P. Rule 23(a) is met in this case.  Therefore, since Mongeli not only meets

22   both the typicality and adequacy requirements of Fed.R.Civ.P. Rule 23(a), and has sustained the

23   largest amount of losses at the hands of the Defendants, he is, in accordance with 15 U.S.C. §78u-

24   4(a)(3)(B)(iii)(I), presumptively the most adequate plaintiff to lead this action.[4]

25   _____

26      [4] The PSLRA clearly envisions a two-part test of a presumption of adequacy and a
    mechanism for rebutting the presumption. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I) and (II).  Mongeli
27   meets the presumption of adequacy.  However, there have not been any submissions to the Court
    which seek to rebut this presumption at this time.  If any such submission can be made or is
28   submitted to the Court, Mongeli Group would respectfully request the opportunity to address them

MPA IN SUPPORT OF MX OF ADRIAN G. MONGELI TO BE APPOINTED LEAD PLAINTIFF PURSUANT TO SECTION 21D(a)(3)(B) OF THE
SECURITIES EXCHANGE ACT OF 1934 AND TO APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL
CASE NO.: 3-06-CV-03936 MJJ
\\Fileserver\shareddocs\BLG\TERAYON\PLD-WPD\MPA re LP.wpd

**B.     This Court Should Accept Mongeli's Selection of Counsel**

The PSLRA vests authority in the Lead Plaintiff to select and retain counsel to represent the class, subject to the Court's approval. See U.S.C. §78u-4(a)(3)(B)(v). Thus, this Court should not disturb the Lead Plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa).

Mongeli has selected KGS and SW to serve as Lead Counsel for the Class and BLG to serve as Liaison Counsel.  These firms have not only prosecuted complex securities fraud actions, but have successfully prosecuted many other types of complex cases. *See* Braun Decl. Exs. C-E.  This Court may be assured that in the event that this motion is granted, the members of the class will receive the highest caliber of legal representation.

**V.     CONCLUSION**

For all of the foregoing reasons, Adrian Mongeli respectfully requests that this Court: (1) appoint Mongeli to serve as Lead Plaintiff in this action; (2) approve Mongeli's selection of Lead and Liaison Counsel for the Class; and (3) grant such other and further relief as the Court may deem just and proper.

Dated: September 11, 2006

Michael D. Braun
BRAUN LAW GROUP, P.C.

By:     _____/S/_____
Michael D. Braun
12400 Wilshire Boulevard
Suite 920
Los Angeles, CA 90025
Tel:     (310) 442-7755
Fax:     (310) 442-7756

**Proposed Liaison Counsel for Lead Plaintiff
Movant Adrian G. Mongeli and the Class**

_____

with the Court in both written and oral argument.

9

1

Maya Saxena
Joseph E. White, III

2

SAXENA WHITE P.A.
2424 North Federal Highway, Suite 257

3

Boca Raton, FL 33431
Tel:    (561) 394-3399

4

Fax:    (561) 394-3382

5

Lewis Kahn

6

Michael A. Swick
KAHN GAUTHIER SWICK, LLC

7

650 Poydras Street, Suite 2150
New Orleans, LA  70130

8

Tel:    (504) 455-1400
Fax:    (504) 455-1498

9

**Proposed Lead Counsel for Lead Plaintiff Movant**

10

**Adrian G. Mongeli and the Class**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MPA IN SUPPORT OF MX OF ADRIAN G. MONGELI TO BE APPOINTED LEAD PLAINTIFF PURSUANT TO SECTION 21D(a)(3)(B) OF THE
SECURITIES EXCHANGE ACT OF 1934 AND TO APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL
CASE NO.: 3-06-CV-03936 MJJ
\\Fileserver\shareddocs\BLG\TERAYON\PLD-WPD\MPA re LP.wpd

1                                    **PROOF OF SERVICE**

2    STATE OF CALIFORNIA              )
                                      )ss.:
3    COUNTY OF LOS ANGELES            )

4         I am employed in the county of Los Angeles, State of California, I am over the age of 18 and
     not a party to the within action; my business address is 12400 Wilshire Boulevard, Suite 920, Los
5    Angeles, CA 90025.

6         On September 11, 2006, using the Northern District of California's Electronic Case Filing
     System, with the ECF ID registered to Michael D. Braun, I filed and served the document(s) described
7    as:

8    **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF**
     **ADRIAN MONGELI TO BE APPOINTED LEAD PLAINTIFF PURSUANT TO SECTION**
9    **21D(a)(3)(B) OF THE SECURITIES EXCHANGE ACT OF 1934 AND TO APPROVE**
     **PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL**

10        The ECF System is designed to automatically generate an e-mail message to all parties in the
11   case, which constitutes service. According to the ECF/PACER system, for this case, the parties served
     are as follows:

12   Lionel Z. Glancy, Esq.                              info@glancylaw.com

13   **Attorneys for Plaintiff**

14

15        On September 11, 2006, I served the document(s) described as:

16   **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF**
     **ADRIAN MONGELI TO BE APPOINTED LEAD PLAINTIFF PURSUANT TO SECTION**
17   **21D(a)(3)(B) OF THE SECURITIES EXCHANGE ACT OF 1934 AND TO APPROVE**
     **PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL**

18
     by placing a true copy(ies) thereof enclosed in a sealed envelope(s) addressed as follows:
19

20   Maya Saxena, Esq.
     Joseph E. White, III,. Esq.
     SAXENA WHITE P.A.
21   2424 North Federal Highway, Suite 257
     Boca Raton, FL 33431
22   Tel:    (561) 394-3399
     Fax:    (561) 394-3382
23

24   Lewis Kahn, Esq.
     Michael A. Swick, Esq.
     KAHN GAUTHIER SWICK, LLC
25   650 Poydras Street, Suite 2150
     New Orleans, LA 70130
26   Tel:    (504) 455-1400
     Fax:    (504) 455-1498
27

28   **Attorneys for Plaintiff**

1    I served the above document(s) as follows:

2    BY MAIL. I am familiar with the firm's practice of collection and processing correspondence
for mailing. Under that practice it would be deposited with U.S. postal service on that same day with
3    postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware
that on motion of the party served, service is presumed invalid if postal cancellation date or postage
4    meter date is more than one day after date of deposit for mailing in an affidavit.

5    I declare declare, pursuant to Civil L.R. 23-2, that on the date hereof I served a copy of the
above-listed document(s) on the Securities Class Action Clearinghouse by electronic mail through the
6    following electronic mail address provided by the Securities Class Action Clearinghouse:

7                                    **scac@law.stanford.edu**

8    I further declare that I am employed in the office of a member of the bar of this Court at whose
direction the service was made.
9
10   I further declare under penalty of perjury under the laws of the United States that the above is
true and correct.

11   Executed on September 11, 2006, at Los Angeles, California 90025.

12

13                                                        /S/ LEITZA MOLINAR
14                                                        Leitza Molinar

15

16

17

18

19

20

21

22

23

24

25

26

27

28