1  MORGAN, LEWIS & BOCKIUS LLP
    John H. Hemann (Bar No. 165823)
2    Michael J. Lawson (Bar No. 66547)
    Sheila A. Jambekar (Bar No. 239101)
3  One Market
   Spear Street Tower
4  San Francisco, CA 94105
   Tel: (415) 442-1000
5  Fax: (415) 442-1001

6  ERNST & YOUNG LLP
    Bruce M. Cormier
7    Joel E. Bonner (Bar No. 105492)
   1225 Connecticut Avenue, NW
8  Washington, D.C. 20036
   Tel: (202) 327-7603
9  Fax: (202) 327-7601

10  Attorneys for Defendant
    ERNST & YOUNG LLP

11

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14               SAN FRANCISCO DIVISION

15  ADRIAN MONGELI, Individually, And        Case No.  3-06-CV-03936 MJJ
    On Behalf Of All Others Similarly Situated,
16                                           **CLASS ACTION**
                    Plaintiff,
17                                           **DEFENDANT ERNST & YOUNG LLP'S
         v.                                  MOTION TO DISMISS AMENDED CLASS
18                                           ACTION COMPLAINT AND
    TERAYON COMMUNICATIONS               MEMORANDUM OF POINTS AND
19  SYSTEMS, INC., ZAKI RAKIB, JERRY D.     AUTHORITIES IN SUPPORT**
    CHASE, MARK A. RICHMAN, EDWARD
20  LOPEZ, RAY FRITZ, CAROL                 Hearing Date:  June 26, 2007
    LUSTENADER, MATTHEW MILLER,            Time: 9:30 a.m.
21  SHLOMO RAKIB, DOUG SABELLA,            Dept.:  Courtroom 11
    CHRISTOPHER SCHAEPE, MARK             Judge:  Hon. Martin J. Jenkins
22  SLAVEN, LEWIS SOLOMON, HOWARD         Action Filed:  June 23, 2006
    W. SPEAKS, ARTHUR T. TAYLOR,
23  DAVID WOODROW, and ERNST &
    YOUNG LLP,
24
                    Defendants.
25

26

27

28

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on Tuesday, June 26, 2007, at 9:30 a.m., or as soon thereafter as may be heard, in the courtroom of the Honorable Martin J. Jenkins, United States District Court for the Northern District of California, San Francisco Division, 450 Golden Gate Avenue, Courtroom 11, 19th Floor, Defendant Ernst & Young LLP, will and hereby does move the Court to dismiss all claims asserted against Ernst & Young LLP in this action.

This motion to dismiss is brought on grounds that the Amended Class Action Complaint For Violations Of Federal Securities Laws fails to plead specific facts raising a strong inference of scienter as required under the Private Securities Litigation Reform Act of 1995 ("Reform Act" or "PSLRA"), 15 U.S.C. § 78u-4(b), and 9(b) of the Federal Rules of Civil Procedure, and therefore fails to state a claim for relief under Section 10(b) of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10b-5 against Ernst & Young LLP. Ernst & Young LLP also joins in the Motion to Dismiss of Terayon Communication Systems, Inc. and the Individual Defendants with respect to the loss causation arguments presented therein.

This Motion is based on this Motion and the Memorandum of Points and Authorities in Support, the Request for Judicial Notice and Declaration of Sheila A. Jambekar filed contemporaneously herewith, the pleadings and papers on file and such further written submissions or oral argument as may be presented at or before the hearing on this Motion.

## STATEMENT OF RELIEF SOUGHT

Ernst & Young LLP seeks an order of this Court dismissing the Amended Complaint pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure and the Reform Act, 15 U.S.C. § 78u-4(b)(3)(A), for failure to: (1) satisfy the pleading requirements of Rule 9(b) and the Reform Act; and (2) state a claim upon which relief can be granted.

///

///

///

///

///

**ISSUE TO BE DECIDED**

1.     Have Plaintiffs pled particularized facts giving rise to a "strong inference" that Ernst & Young LLP, Terayon's former outside auditor, acted with scienter, as required under the Private Securities Litigation Reform Act of 1995?

Dated:  March 23, 2007

MORGAN, LEWIS & BOCKIUS LLP
John H. Hemann
Michael J. Lawson
Sheila A. Jambekar

ERNST & YOUNG LLP
Bruce M. Cormier
Joel E. Bonner


By _____/S/_____
John H. Hemann
Attorneys for Defendant
ERNST & YOUNG LLP

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs have not, in their Amended Complaint, alleged facts that, even if true, establish anything close to a "strong inference" that Ernst & Young LLP ("E&Y") acted with fraudulent intent – or scienter – in connection with its independent audits of the financial statements of Terayon Communication Systems, Inc. ("Terayon" or "the Company").  Accordingly, the claims against Ernst & Young must be dismissed.

On March 1, 2006, Terayon announced that its financial statements for the year ended December 31, 2004, the quarterly statements for that year, and the financial statements for the first two quarters of 2005 would be restated to correct for errors relating to the timing of revenue recognition.  On June 23, 2006, a securities class action complaint was filed against the Company and several of its officers and directors on behalf of those who purchased Terayon stock from October 28, 2004, through March 1, 2006.  On December 29, 2006, Terayon filed its Form 10-K with the SEC for the year ended December 31, 2005, which disclosed that the restatement included the Company's financial statements for the years ended December 31, 2004, December 31, 2003, and December 31, 2002, and that the financial statements for the year ended December 31, 2001, had been adjusted.  Just ten days after that announcement, Lead Plaintiff filed this sweeping Amended Complaint, extending the Class Period more than three years, from June 28, 2001, through March 1, 2006, and adding E&Y, Terayon's independent auditor for most of the Class Period, as a defendant.

Plaintiffs' conclusory allegations that E&Y served as Terayon's auditor and therefore must have known that fraud was afoot are not sufficient to meet even the basic requirements of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"), much less the more rigorous pleading standards of the Private Securities Litigation Reform Act of 1995 ("Reform Act" or "PSLRA").  Plaintiffs have not pled "in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct" as to E&Y.  *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999).  Plaintiffs' failure to plead facts supporting a *strong* inference of scienter is fatal to their claims, and their Amended Complaint should be dismissed

as to E&Y in its entirety.

## II.    PLAINTIFFS' ALLEGATIONS

Terayon, founded in 1993, provides digital video and home access solutions for broadband providers, cable companies, satellite operators and broadcasters for the delivery of data and video services. Amended Complaint ("Compl.") ¶¶ 15, 40. According to the Complaint, "[f]ueled by an aggressive acquisition strategy and a relentless marketing campaign," Terayon rode the boom in technology stocks as its share price allegedly "exploded" from approximately $40.00 to over $235.00 between January 1999 and March 2000. *Id.* ¶ 41. Typical of many of the investor darlings of that period, however, Terayon lost money, sustaining net losses of approximately $64 million and $181 million for the years ended December 31, 1999 and 2000, respectively, before the putative Class Period even began.[1]

Terayon's fortunes worsened during the Class Period despite several strategic shifts in the Company's direction in the aftermath of "the technology-market downturn in 2000." Compl. ¶¶ 42-43; *see also* ¶¶ 41-45, 103, 233. What Plaintiffs fail to reveal is that these losses were timely and openly reported to the investing public in SEC filings and press releases as they were incurred. According to the Company's SEC filings, throughout the Class Period, Terayon bled money, reporting net losses *before* the restatement of about $564 million for the year ended December 31, 2001, and approximately $44 million, $50 million, and $36.5 million, for the years

---

[1]    See Page 38 of Terayon's Form 10-K filed for the year ended December 31, 2001, filed with the SEC on April 1, 2002, and cited in paragraphs 71, 72 and 74 of the Amended Complaint. *See* Declaration of Sheila A. Jambekar In Support of Ernst & Young LLP's Motion to Dismiss and Request for Judicial Notice ("Jambekar Decl."), Exh. A at 38. "Where a plaintiff fails to attach to the complaint documents referred to therein, and upon which the complaint is premised, a defendant may attach to the motion to dismiss such documents in order to show that they do not support the plaintiff's claim…. Thus, the district court may consider the full texts of documents that the complaint only quotes in part." *In re Invision Techs., Inc. Sec. Litig.*, No. C 04-03181 MJJ, 2006 U.S. Dist. LEXIS 76458, at *6-7 (N.D. Cal. Aug. 31, 2006) (citations omitted). Relevant portions of the Company's Form 10-K filings for 2001 through 2005 appear as Exhibits A through E of the Declaration of Sheila A. Jambekar In Support of Ernst & Young LLP's Motion to Dismiss and Request for Judicial Notice.

ended December 31, 2002, 2003, and 2004, respectively.[2]  For the last full year of the Class Period, ending December 31, 2005, Terayon reported net losses of approximately $27 million. *See* Jambekar Decl., Exh. E (Relevant Portion of Form 10-K, filed with the SEC on December 29, 2006) at 48 (cited in Compl. ¶ 243).  Thus, as Plaintiffs acknowledge, "[b]y the end of 2005 Terayon had over $1 billion dollars in accumulated losses."  Compl. ¶ 42.  Not surprisingly, Terayon's shares badly lagged after the technology stock market bubble burst, trading during the Class Period between $0.86 (June 21, 2002) and $14.75 (December 5-6, 2001) per share, far below their crest at $235 in March 2000 (Compl. ¶ 41), a mere fifteen months before the Class Period began.[3]

It was not this poor financial performance, but a later restatement of the Company's financial statements – which focused primarily on the timing of certain revenue recognition rather than the propriety of recognizing that revenue – that triggered this lawsuit.  Based almost solely on a restatement that, ironically, lends no support to their claims, Plaintiffs allege "as defendants knew or recklessly disregarded throughout that time, Terayon's reported financial results and growth were attributable to improper accounting practices – including improper revenue recognition – which resulted in a significant and material overstatement of the Company's revenues."  Compl. ¶ 2; *see also* ¶¶ 64, 243-44.

Plaintiffs' claims are alleged without the support of a single specific example of financial fraud.  For example, Plaintiffs complain about alleged misstatements of deferred revenue, cost of goods sold, allowances for doubtful accounts, reserves, and internal control in paragraphs 64(c),

---

[2]    See Form 10-K for the year ended December 31, 2001, at 38 (Jambekar Decl., Exh. A at 38); Form 10-K for the year ended December 31, 2002, at 57, filed with the SEC on March 27, 2003 (Compl. ¶ 104; Jambekar Decl., Ex. B at 57); Form 10-K for the year ended December 31, 2003, at 56, filed with the SEC on March 15, 2004 (Compl. ¶ 143; Jambekar Decl., Exh. C at 56); and Form 10-K for the year ended December 31, 2004, at 61, filed with the SEC on March 15, 2005 (Compl. ¶ 187; Jambekar Decl., Exh. D at 61).

[3]    Terayon's stock prices during the Class Period are listed in Exhibit F to the Declaration of Sheila A. Jambekar In Support of Ernst & Young LLP's Motion to Dismiss and Request for Judicial Notice.  This Court may take judicial notice of the stock price of publicly traded companies.  *See In re Ditech Communications Corp. Sec. Litig.*, No. C 05-02406 JSW, 2006 U.S. Dist. LEXIS 58978, at *15 (N.D. Cal. Aug. 10, 2006).

(f), (h), (i), (j) and 244 without citing even one instance of fraud – a contract on which revenue was fraudulently booked, for example.  On the rare occasion Plaintiffs bother to reference specific transactions – the Thompson Broadcast sale in paragraph 64(g) and the Company's convertible subordinated note offering in paragraph 64(k) – Plaintiffs fail to allege any facts supporting any inference, much less a strong inference, that the accounting error was fraudulent as opposed to merely negligent or an honest mistake.  In other words, Plaintiffs' only theory is that, given the Company's restatement, defendants must have been fraudsters.

If the claims against Terayon are weakly supported, the claims against E&Y float on nothing but air.  At issue are E&Y's audit reports for the years ended December 31, 2001 through December 31, 2004, inclusive, in which E&Y opined that the Company's financial statements, taken as a whole, fairly presented the financial condition of Terayon under generally accepted accounting principles ("GAAP").  *See* Jambekar Decl., Exhs. A-D; Compl. ¶¶ 73, 109, 148, 194.  The overstatement of revenue during the four fiscal years on which E&Y opined as auditor – December 31, 2001 through December 31, 2004 – was not nearly as significant as Plaintiffs would lead this Court to believe:  The restatement filed on December 29, 2006 reduced the Company's total revenue over that period by approximately *two percent*, from $692,907,000 to $676,882,000.[4]  Similarly, the Company's reported net losses over this period, $700,365,000 as restated, barely differed from the losses originally reported, $694,943,000 – a disparity of

---

[4]    The Company originally reported total revenue for 2001 through 2004 at $279,481,000, $129,403,000, $133,485,000, and $150,538,000, respectively, for a total of $692,907,000.  *See* Jambekar Decl., Exh. A (Relevant Portion of Form 10-K for year ending December 31, 2001) at 38; Exh. B (Relevant Portion of Form 10-K for year ending December 31, 2002) at 57; Exh. C (Relevant Portion of Form 10-K for year ending December 31, 2003) at 56; Exh. D (Relevant Portion of Form 10-K for year ending December 31, 2004) at 61.  As restated and adjusted, these revenue amounts were $279,481,000, $130,730,000, $130,187,000, and $136,484,000, respectively, for a total of $676,882,000.  *See* Jambekar Decl., Exh. E (Relevant Portion of Form 10-K for year ending December 31, 2005) at 48.

$5,422,000 or *eight-tenths of one percent*.[5]

Not surprisingly, Plaintiffs' scattershot approach taints the allegations against E&Y, Terayon's independent auditor until it resigned after the third quarter of 2005. Compl. ¶¶ 211, 213. Without citing a single respect in which E&Y's audits were flawed – that is, without alleging even one violation of generally accepted auditing standards ("GAAS"), Plaintiffs aver that E&Y countenanced the Company's fraudulent scheme. *Id.* ¶ 39. This contention is based on conclusory allegations of E&Y's knowing or reckless disregard of purported "cautionary signs" or "red flags" during the audits. Compl. ¶¶ 5, 50-59. Plaintiffs also allege, without any supporting detail, that E&Y was motivated to participate in the fraud by the prospect of professional fees, and that E&Y's resignation as the Company's auditor was prompted by its unwillingness to gain "the reputation of exposing its own clients to regulatory, civil or criminal sanctions." Compl. ¶¶ 57-58.

### III. PLAINTIFFS FAIL TO PLEAD PARTICULARIZED FACTS SUPPORTING THEIR CLAIM OF FRAUD OR GIVING RISE TO A STRONG INFERENCE OF SCIENTER

A required element in an action pursuant to Securities and Exchange Commission Rule 10b-5 is "scienter, i.e., a wrongful state of mind." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341 (2005). Relying almost exclusively on the restatement, and thus 20-20 hindsight, Plaintiffs allege that E&Y's opinions on Terayon's financial statements were fraudulent. Plaintiffs have failed to state a claim for violation of Section 10(b) of the Securities Exchange Act of 1934 ("Section 10(b)") because they have failed to particularize their charge of fraud as required by Rule 9(b), much less plead facts giving rise to a strong inference that E&Y acted with scienter as the Reform Act commands.

---

[5] As shown on the same pages of the Form 10-K filings, the losses as originally reported were $563,846,000, $44,213,000, $50,353,000, and $36,531,000 for the years 2001 through 2004, respectively, for a total of $694,943,000. *See* Jambekar Decl., Exh. A at 38; Exh. B at 57; Exh. C at 56; Exh. D at 61. As restated, the losses were $557,123,000, $39,912,000, $56,225,000, and $47,105,000 for the same four years, totaling $700,365,000. *See* Jambekar Decl., Exh. E at 48.

**A.    Plaintiffs Have Not Satisfied the Extremely High Standard For Pleading Scienter As To An Auditor As Required by *Silicon Graphics* and *DSAM***

The pleading standards governing Section 10(b) claims are familiar and formidable.  The first hurdle is presented by Rule 9(b), which has long required plaintiffs to state with particularity the circumstances constituting fraud.  Rule 9(b) requires a specific averment of (1) "the time, place, and content" of the alleged misrepresentations; and (2) "an explanation as to why the statement or omission complained of was false or misleading."  *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994).

Congress nonetheless concluded that Rule 9(b) had not adequately prevented abuse of the securities laws by plaintiffs who reflexively file suit "based on nothing more than a company's announcement of bad news, not evidence of fraud."  S. REP. NO. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 683; *see also* H.R. CONF. REP. NO. 104-369, at 32, 41 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 740.  Accordingly, Congress enacted the Reform Act to provide "protections to discourage frivolous [securities] litigation."  H.R. CONF. REP. NO. 104-369, at 32, *reprinted in* 1995 U.S.C.C.A.N. at 731.  The Reform Act includes new and rigorous pleading requirements for private securities fraud actions – provisions that courts have enforced steadfastly.  *Silicon Graphics*, 183 F.3d at 978-79.  Complaints alleging misrepresentations or omissions must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and [if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity] all facts on which that belief is formed."  *Id*. at 996 (quoting 15 U.S.C. § 78u-4(b)(1)).  With respect to scienter, the Reform Act requires a civil plaintiff to plead "with particularity all facts giving rise to a '*strong* inference' [that the defendant acted with] the required state of mind."  *Id*. at 997 (quoting 15 U.S.C. § 78u-4(b)(2)) (emphasis added).  Congress further mandated that "the court *shall*, on the motion of any defendant, dismiss the complaint if the requirements of paragraphs (1) and (2) are

1   not met." 15 U.S.C. § 78u-4(b)(3)(A) (emphasis added).[6]

2   Given the scienter element in Section 10(b) cases, Plaintiffs must meet a substantial

3   pleading burden in order to aver the required state of mind: they "must plead, in great detail,

4   facts that constitute strong circumstantial evidence of deliberately reckless or conscious

5   misconduct." *Silicon Graphics*, 183 F.3d at 974. Far removed from ordinary or even gross

6   negligence, scienter is a "nefarious mental state," requiring an "intent to deceive, manipulate, or

7   defraud." *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 391 (9th Cir. 2002);

8   *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976).

9   Where the allegations concern an outside auditor, the PSLRA standard is unbending and

10  proof of scienter requires far more than misapplication of accounting principles.

11   The plaintiff must prove that the accounting practices were so deficient that the
12   audit amounted to no audit at all, or an egregious refusal to see the obvious, or to
     investigate the doubtful, or that the accounting judgments which were made were
13   such that no reasonable accountant would have made the same decisions if
     confronted with the same facts.
14

15  *DSAM*, 288 F.3d at 390 (citing *In re Software Toolworks Sec. Litig.*, 50 F.3d 615, 627-28 (9th

16  Cir. 1995)); *see also In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1426 (9th Cir. 1994).

17  Thus, "mere allegations that an accountant negligently failed to closely review files," follow up

18  on suspicions, or follow GAAS or GAAP, cannot, as a matter of law, create "a strong inference

19  of scienter." *DSAM,* 288 F.3d at 390.

20  Accordingly, scienter cannot be established by the "fraud by hindsight" allegations that

21  are the hallmark of this Complaint. Pleading scienter as to an outside auditor is "exceedingly

22  difficult" given the "complex professional judgment required to perform an audit, … the lack of

23  a rational economic incentive for an independent accountant to participate in fraud," and "the

24  client's central role in providing information to the accountant." *Reiger v. Price Waterhouse*

25

26   [6] These pleading requirements must be met *before* any discovery. *See* 15 U.S.C. § 78u-
     4(b)(3)(B), which imposes a discovery stay "during the pendency of any motion to dismiss" with
27   limited exceptions not applicable here. Accordingly, Plaintiffs' belief "that substantial additional
     evidentiary support will exist for the [Complaint's] allegations … after a reasonable opportunity
28   for discovery," (Compl. ¶ 271), is irrelevant, as it puts the cart before the horse.

*Coopers LLP*, 117 F. Supp. 2d 1003, 1008 (S.D. Cal. 2000).  As shown below, Plaintiffs have fallen far short of alleging specific facts giving rise to a strong inference of fraud.

**B.     Plaintiffs Fail To Plead Facts Creating A Strong Inference Of Fraudulent Intent Or Deliberate Recklessness As To E&Y**

This securities fraud case as to E&Y is summed up in paragraph 17 of the Amended Complaint.  Plaintiffs claim that because E&Y served as Terayon's independent auditor for most of the Class Period, one of two things must be true:  "Ernst & Young either knew of defendant's fraud at the time of its resignation and did nothing to report or expose it, or Ernst & Young recklessly failed to take notice of, and therefore did not reveal, the blatant accounting fraud that existed within the Company throughout the Class Period."

This conclusory approach animates all of the allegations and exposes Plaintiffs claim for what it is:  fraud by hindsight, plainly insufficient to sustain a lawsuit for violation of Section 10(b).

To be sure, Plaintiffs attempt to bolster their theory by alleging that E&Y either knowingly or recklessly disregarded "obvious cautionary signs" while auditing Terayon's financial statements.  *See* Compl. ¶¶ 50-59.  But none of these signs – singly or collectively – demonstrates that E&Y acted either intentionally or with deliberate recklessness, as required under *Silicon Graphics* and *DSAM*.  Again, Plaintiffs must allege facts – not conclusions – demonstrating that when faced with these supposed "cautionary signs," E&Y conducted "no audit at all," or displayed "egregious refusal to see the obvious, or to investigate the doubtful." *DSAM*, 288 F.3d at 390.   There is no foundation for such a conclusion in the Amended Complaint.

**1.     Alleged Violations Of GAAP And The Restatement**

Plaintiffs' attempt in paragraph 59 of the Amended Complaint to base a strong inference of scienter on E&Y's alleged misapplication of GAAP is doomed.  In *DSAM*, plaintiffs alleged that Altris's auditor, Pricewaterhouse ("PW"), "deliberately ignored Altris's repeated failure to follow a Generally Accepted Accounting Principle," and that in performing its audit PW "had in its hands the very documentation that clearly showed Altris' violation of GAAP … yet did not

see the obvious." *DSAM*, 288 F.3d at 389-90.  Because PW had access to documents that revealed Altris's allegedly improper revenue recognition, plaintiffs contended that PW must have consciously disregarded the problem, in violation of Section 10(b).  The Ninth Circuit rejected this claim, holding that these facts "[do] not strongly compel an inference of intentional or deliberately reckless conduct as opposed to ordinarily carelessness." *Id*. at 390.  The court further held that plaintiffs "failed to allege any facts to establish that Pricewaterhouse knew or must have been aware of the improper revenue recognition, intentionally or knowingly falsified the financial statements, or that the audit was 'such an extreme departure' from reasonable accounting practice that PW 'knew or had to have known' that its conclusions would mislead investors." *Id*. at 390-91.

So too here, as Plaintiffs fail even to allege that E&Y had "access" to documents that would have exposed the purported fraud, but rest instead on claimed GAAP violations.  As this Court has held repeatedly, "to plead fraudulent intent based on GAAP violations, plaintiffs must allege facts showing that:  (1) specific accounting decisions were improper; *and* (2) the defendants knew specific facts at the time that rendered their accounting determinations fraudulent." *Morgan v. AXT, Inc.*, No. C 04-4362 MJJ, 2005 U.S. Dist. LEXIS 42346, at *41 (N.D. Cal. Sept. 23, 2005) (emphasis added) (granting motion to dismiss and citing *DSAM*, 288 F.3d at 390-91); *In re Business Objects S.A. Sec. Litig.*, No. C 04-2401 MJJ, 2005 U.S. Dist. LEXIS 20215, at *20 (N.D. Cal. Jul. 27, 2005) (same).  Plaintiffs have failed to satisfy either part of this test, and certainly have failed to plead any facts known to E&Y at the time that would have demonstrated that the Company's accounting was fraudulent.  *See also Worlds of Wonder*, 35 F.3d at 1426 (alleged violations of GAAP or SEC regulations, without more, do not establish scienter; affirming summary judgment for independent auditor).

Just as scienter cannot be inferred from violations of GAAP, it cannot be grounded on a restatement of financial results to reflect GAAP more accurately.  "Restatements of earnings are common" and often result from "honest error." *Goldberg v. Household Bank*, 890 F.2d 965, 967 (7th Cir. 1989) (affirming summary judgment on Section 10(b) claim).  Accordingly, "a restatement of earnings, without more, does not support a 'strong inference' of fraud, or for that

matter, a weak one." *In re Segue Software, Inc. Sec. Litig.*, 106 F. Supp. 2d 161, 169 (D. Mass. 2000).  To hold otherwise, even after a large restatement, much less the de minimus restatement here, "would ignore the reality that scienter and falsity are distinct elements of a Section 10(b) claim."  *In re Med/Waste, Inc. Sec. Litig.*, No. 99-1684-CIV-GOLD, 2000 U.S. Dist. LEXIS 22505, at *28 (S.D. Fla. Aug. 30, 2000) (granting motion to dismiss).  A restatement "provides no indication how or when Defendants became aware of the falsity of the original statements." *Id.*  Basing scienter on a restatement typifies fraud by hindsight; "mere allegations that statements in one report should have been made in earlier reports do not make out a claim for securities fraud."  *In re SmarTalk Teleservs., Inc. Sec. Litig.*, 124 F. Supp. 2d 505, 516 (S.D. Ohio 2000) (quotations omitted).

This Court so held in *In re Network Assocs., Inc. II Sec. Litig.*, No. C 00-4849 MJJ, 2003 U.S. Dist. LEXIS 14442, at *13 (N.D. Cal. Mar. 25, 2003), in the context of a restatement for three fiscal years that "revealed that NAI concealed more than $65 million in reductions to net revenue and more than $24 million in operating expenses, thereby overstating the company's reported net income throughout the Class Period."  Dismissing securities fraud claims against NAI's CEO, CFO and Controller, this Court concluded that, "[m]ore is needed."  *Id.* at *49 (quoting *Northpoint Communications Group, Inc. Sec. Litig.*, 184 F. Supp. 2d 991, 998 (N.D. Cal. 2001)).  This Court also held that allegations that these top-level executives signed and approved documents evidencing the inaccurate financial statements was insufficient:  plaintiffs were required, but failed, to allege facts demonstrating that "the signing of these statements was 'highly unreasonable' and constituted 'an extreme departure from standards of ordinary care.'" *Id.* at 50.

This formidable standard applicable to corporate insiders surely must apply to an outside auditor, and courts have ruled that it does.  *See, e.g.*, *Davis. v. SPSS, Inc.*, 385 F. Supp. 2d 697, 719 (N.D. Ill. 2005) (restatement in 2004 could not serve as "red flag" to auditor in 2001 and 2002 because "restatements are merely evidence that certain categories of [audit client's] finances were incorrect, not that the cause of those inaccuracies was fraud") (granting motion to dismiss).  The absence here of any particularized allegations suggesting E&Y had actual

knowledge of GAAP violations is fatal.  *See also In re U.S. Aggregates, Inc. Sec. Litig.*, 235 F. Supp. 2d 1063, 1073 (N.D. Cal. 2002) (granting motion to dismiss).

### 2.    Terayon's Internal Control Deficiencies

Plaintiffs also identify as a "red flag" the Company's internal control problems and E&Y's alleged failure to take issue with Terayon's characterization of them as "one-time events."  Compl. ¶¶ 56, 59.  Plaintiffs' contention is legally, factually, and logically flawed.

First, even when properly pleaded, internal control weaknesses support only a weak inference of scienter, not the "strong inference" of scienter required by the PSLRA.  *See, e.g.*, *Crowell v. Ionics, Inc.*, 343 F. Supp. 2d 1, 19-20 (D. Mass. 2004) ("Internal controls allegations are frequently dismissed, even when a corporation's executives knew that internal controls were inadequate.").

Second, Plaintiffs' assertion in paragraph 5 that E&Y "*never* reported any material problems with the Company's financial reporting" is patently false.  As averred in paragraphs 176 and 177 of the Amended Complaint, in the third quarter of 2004, E&Y identified and brought to the attention of Terayon's Audit Committee a deficiency in internal controls that rose to the level of a "material weakness."  This was disclosed in Terayon's Form 10-Q, filed with the SEC on November 15, 2004.  Compl. ¶ 173.  More importantly, in its audit opinion on the Company's financial statements for the year ended December 31, 2004, filed with the SEC on March 15, 2005, E&Y reported that it had audited the effectiveness of Terayon's internal control over financial reporting and expressed "an *adverse* opinion on the effectiveness of internal control over financial reporting," concurring in management's negative assessment.  Compl. ¶¶ 187, 194 (emphasis added).  If there were any doubt, E&Y's opinion removed it:  "In our opinion, management's assessment that Terayon Communication Systems, Inc. did not maintain effective internal control over financial reporting as of December 31, 2004 is fairly stated, in all material respects, based on the [relevant] control criteria."  Compl. ¶ 194.

Plaintiffs take issue with Company statements from time to time that certain of these deficiencies had been addressed and that Terayon *believed* that it was getting a handle on its internal control problems (even while concluding that its internal controls were *not* effective as

of December 31, 2004). *See, e.g.*, Compl. ¶¶ 176-77, 190. From this, Plaintiffs jump to the unsupported conclusions that internal controls were ineffective throughout the Class Period, that the Company knew this, and so did E&Y. *See* Compl. ¶ 195. However, Plaintiffs fail to explain the illogic of E&Y reporting internal control problems to Terayon's Audit Committee if it had intended to cover them up. *See, e.g.*, *Reiger*, 117 F. Supp. 2d at 1012-13 (granting motion to dismiss while noting that plaintiffs made no attempt to explain why auditors would intentionally ignore improperly recognized revenues and then months later require the financial statements to be restated). Plaintiffs fail to plead any specific facts supporting these accusations, and this destroys their contention that internal controls were a "red flag." *See In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1013 (9th Cir. 2005) ("conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim") (quotation omitted); *In re Comshare, Inc. Sec. Litig.*, 183 F.3d 542, 553-54 (6th Cir. 1999) ("mere allegations that statements made in one report should have been made in earlier reports do not make out a claim for securities fraud") (citations omitted).

As this Court has held repeatedly, particularized allegations demonstrating defendant's knowledge of the fraud are essential. *See, e.g.*, *Shurkin v. Golden State Vintners, Inc.*, No. C 04-03434 MJJ, 2006 U.S. Dist. LEXIS 94900, at *37-41 (N.D. Cal. Dec. 30, 2006) (granting defendants' motion to dismiss where plaintiff failed to plead specific facts demonstrating defendants' knowledge of falsity or deliberate disregard of the same); *Invision Techs.*, 2006 U.S. Dist. LEXIS 76458, at *19 ("Plaintiffs must therefore plead specific facts indicating that [defendants] had knowledge of the falsity of the above statements, and made such misstatements intentionally, or recklessly with 'some degree of intentional or conscious misconduct.'") (citation omitted); *Wu Group v. Synopsys, Inc.*, No. C 04-3580 MJJ, 2005 U.S. Dist. LEXIS 42351, at *30 (N.D. Cal. Aug. 10, 2005) (dismissing where statement about defendant's knowledge "appears to be based more on speculation or assumption than on actual knowledge");*see also Svezzese v. Duratek, Inc.*, No. MJG-01-1830, 2002 U.S. Dist. LEXIS 20967, at *15-17 (D. Md. Apr. 30, 2002) (dismissing complaint where alleged internal control deficiencies were not substantiated by "allegations of knowledge and disregard of such 'red flags' on Defendant's part or some other

allegations evincing fraudulent intent"), *aff'd* No. 02-1587, 67 Fed. Appx. 169, 2003 U.S. App. LEXIS 11647 (4th Cir. June 12, 2003).   Here, the *only* evidence that E&Y knew of the Company's internal control problems was the disclosures – by the Company and E&Y – of internal control weaknesses.   There are no factual allegations in the Amended Complaint that support a conclusion that E&Y was aware of undisclosed problems.

### 3.    Insider Stock Sales

Plaintiffs allege that "[a]s the Company's auditor knew or recklessly disregarded, the Terayon insiders' stock sales were highly unusual in their timing and amounts, and these sales support the *reasonable* inference that the Company insiders who sold their stock during the time were in possession of material, adverse non-public information about the Company."   Compl. ¶ 50 (emphasis added). Plaintiffs then speculate: "Rather than pay heed to these obvious cautionary signs that would have allowed them to uncover defendants' accounting fraud, … Ernst & Young simply resigned from the Company as its purported independent auditor in September 2005."  *Id.* ¶ 51.

Putting aside that inferences of scienter must be strong and not merely "reasonable" to survive a motion to dismiss, these allegations are deficient because Plaintiffs have failed to allege facts supporting their contention that the insider sales were "highly unusual."  Stock sale allegations cannot support an inference of scienter unless the plaintiff alleges specific facts that the sales were "dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information."  *Silicon Graphics*, 183 F.3d at 986.  In making that determination, this Court should consider among other relevant factors: 1) the amount and percentage of shares sold by insiders; 2) the timing of the sales; and 3) whether the sales were consistent with the insiders' prior trading history.  *Id.*

Here, not one of the three factors supports an inference of scienter:  First, the insider sales allegedly occurred during a four-year and eight-month Class Period, which must be viewed with skepticism, as this length permits Plaintiffs to "sweep as many stock sales into their totals as possible."  *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1092 (9th Cir. 2002) (sixty-three *weeks* "unusually long"); *Teachers' Ret. Sys. v. Hunter*, No. 05-1988, 2007 WL 509787, at *19

(4th Cir. Feb. 20, 2007) (forty-six month class period "exceedingly long"); *In re Syncor Int'l Corp. Sec. Litig.*, 327 F. Supp. 2d 1149, 1163 (C.D. Cal. 2004) (four-year and eight-month class period viewed with "heightened scrutiny"). Second, although Plaintiffs set forth the amount of shares sold and the trade dates, no information is provided as to the percentage of shares sold by these insiders and whether their sales are consistent with these individuals' trading histories. Compl. ¶ 264. Third, the magnitude of the trades does not appear to be remarkable either in the number of shares traded or the dollar amount, and the trades appear to be randomly spaced throughout the extraordinarily long Class Period.

In these circumstances, no inference of scienter has been raised much less the requisite strong inference. *See, e.g.*, *Morgan*, 2005 U.S. Dist. LEXIS 42346, at *38 (insider's sales of 200,000 shares for proceeds of approximately $2.2 million insufficient where plaintiff failed to allege specifics regarding the trades and that defendant's sales over the period in question were inconsistent with prior trading history); *Business Objects*, 2005 U.S. Dist. LEXIS 20215, at *22 (sales of over $6 million in stock, roughly 9.7% of total holdings, insufficient where timing was not suspicious and where plaintiffs failed to explain how they could raise an inference of fraudulent intent); *Network Assocs.*, 2003 U.S. Dist. LEXIS 14442, at *52 (insider's sales of approximately 15% of his stock in each of two subsequent years not suspicious where "there are no allegations that these sales were out of line with … previous stock activity");*see also* Motion To Dismiss of Terayon and the Individual Defendants at 21-23.   In other words, there are no facts alleged in the Complaint from which the Court can infer that E&Y actually spotted or consciously ignored evidence of fraud from a pattern of insider stock sales.

### 4.    Rambling Accusations Of An Anonymous Source

Accusations attributed to "[a] former employee in the accounting department during the Class Period," (Compl. ¶ 52), highlight paragraphs 52 through 55 of the Complaint.  According to this "former employee" (no more specific description is provided), E&Y (i) "was not clean on this stuff" ("this stuff" not described); (ii) "virtually closed the books for year end 2001 and 2002 – a 'no-no;'" (iii) did not "try to learn the Company's business" or "focus on the account"; (iv) "looked only at the [incomplete] paper trail"; and (v) presumably learned that the Company's

accounting personnel were in over their heads. *Id.* According to this "former employee," E&Y erroneously advised Terayon with respect to three transactions – Verilink, RNI and Thomson – although the source acknowledges that the Company may not have disclosed all pertinent information to E&Y on the Thomson transaction. *Id.* ¶¶ 52-54. Finally, this source suggests that E&Y erred in not insisting that the Company follow SOP 97-2, which governs software revenue recognition. *Id.* ¶ 55.

There are two problems with these allegations:  first, Plaintiffs' source is described with nothing approaching the specificity the law requires; second, even if the source's vague assertions were credited, they would not come close to creating a strong inference of scienter.

Confidential sources must be described "with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *Daou Sys.*, 411 F.3d at 1015.  Plaintiffs fail to describe their source's job title, how long he or she worked for the Company, what his or her position entailed or to whom he or she reported.  Nor do Plaintiffs describe how this confidential witness learned of the information attributed to him or her – did he or she even have direct dealings with E&Y auditors?  This Court has repeatedly held that "[c]onfidential witness accounts of this nature are insufficient to support a claim under the Reform Act." *Network Assocs.*, 2003 U.S. Dist. LEXIS 14442, at *34; *Business Objects*, 2005 U.S. Dist. LEXIS 20215, at *17 (plaintiffs failed to provide any detail regarding confidential source's job descriptions or responsibilities); *Morgan*, 2005 U.S. Dist. LEXIS 42346, at *33-34 (plaintiffs failed to explain how any of the witnesses would have personal and firsthand knowledge of the facts they claim to be true, failed to provide specific data to support the witnesses' contentions, and alleged nothing that would allow the court to infer that defendants were aware of the claimed facts)*;see also Northpoint*, 184 F. Supp. 2d at 1000 (dismissing complaint on scienter grounds); *Coble v. Broadvision, Inc.*, No. C 01-01969 CRB, 2002 U.S. Dist. LEXIS 17495, at *15 (N.D. Cal. Sept. 11, 2002) (rejecting allegation "based on an unnamed source who spoke to an unidentified member of 'upper management' at some unspecified time"); *In re MSC Indus. Co. Sec. Litig.*, 283 F. Supp. 2d 838, 846 (E.D.N.Y. 2003) (dismissing allegations of securities fraud "based on vague quotes and conclusory rumors").

Equally important, even if true, this source's allegations would establish no more than that E&Y furnished Terayon with inaccurate accounting advice – negligence, at most, but nothing approaching the mental state required for securities fraud.  Where "red flags" have contributed to a strong inference of scienter, "[t]he warning signs … more closely resembled 'smoking guns' than 'red flags.'"  *Reiger*, 117 F. Supp. 2d at 1012.  As the Ninth Circuit emphasized in *Silicon Graphics* in rejecting a fraud claim based on the contents of an internal report, the contents of which were inadequately described:

> [Plaintiff] is required to state facts giving rise to a strong inference of deliberate recklessness or intent.  It is not enough for her to state facts giving rise to a mere speculative inference of deliberate recklessness, or even a reasonable inference of deliberate recklessness.  The PSLRA requires, to repeat, that [Plaintiff] state with particularity facts giving rise to a strong inference of the required state of mind, i.e., at least deliberate recklessness.

183 F.3d at 985 (citation omitted).  Plaintiffs' confidential source averments fail to meet the *Silicon Graphics* standard.

### 5.    Plaintiffs' Legally Insufficient Motive Allegations

Although motive allegations are not sufficient to plead scienter, the lack of any incentive for E&Y to condone or participate in the alleged fraud contradicts any inference of scienter.  The Amended Complaint includes boilerplate unsubstantiated allegations that E&Y "reaped millions of dollars in fees" and was motivated to countenance the alleged fraud because exposing a client fraud "could, and forseeably would, have cost them customers, business, revenues and earnings."  Compl. ¶¶ 57-58.

The courts have consistently rejected such contentions as irrational.  As the *Reiger* court held,

> a large independent accountant will rarely, if ever, have any rational economic incentive to participate in its client's fraud.  Unlike the officers and directors of the companies it represents, an independent accountant has no ability to line its pockets through insider trading, and no incentive to cover up … mismanagement.  The accountant's success depends on maintaining a reputation for honesty and integrity, requiring a plaintiff to overcome the irrational inference that an accountant would risk its professional reputation to participate in the fraud of a single client.

*Reiger*, 117 F. Supp. 2d at 1007*; see also Worlds of Wonder*, 35 F.3d at 1427 n.7; *DiLeo v. Ernst*

*& Young*, 901 F.2d 624, 629 (7th Cir. 1990). There is no suggestion in the Complaint that E&Y ever earned (or would have earned) anything other than its ordinary and proper professional fees during the extraordinarily long Class Period. Plaintiffs plead no facts that would overcome the natural assumption that E&Y would have no motive to participate in or cover up a fraud by Terayon's management.

**IV.    CONCLUSION**

For the foregoing reasons, E&Y respectfully requests that the Court dismiss the complaint as to E&Y in its entirety.

Dated: March 23, 2007

                              MORGAN, LEWIS & BOCKIUS LLP
                              John H. Hemann
                              Michael J. Lawson
                              Sheila A. Jambekar

                              ERNST & YOUNG LLP
                              Bruce M. Cormier
                              Joel E. Bonner


                              By _____/S/_____
                              John H. Hemann
                              Attorneys for Defendant
                              ERNST & YOUNG LLP

1

## TABLE OF CONTENTS

2

**Page**

3  I.    INTRODUCTION ............................................................................................... 1

4  II.   PLAINTIFFS' ALLEGATIONS ........................................................................ 2

5  III.  PLAINTIFFS FAIL TO PLEAD PARTICULARIZED FACTS SUPPORTING THEIR
      CLAIM OF FRAUD OR GIVING RISE TO A STRONG INFERENCE OF SCIENTER ................... 5

6
7        A.    Plaintiffs Have Not Satisfied the Extremely High Standard For
             Pleading Scienter As To An Auditor As Required by *Silicon
             Graphics* and *DSAM* ............................................................................ 6

8
9        B.    Plaintiffs Fail To Plead Facts Creating A Strong Inference Of
             Fraudulent Intent Or Deliberate Recklessness As To E&Y................................. 8

10             1.    Alleged Violations Of GAAP And The Restatement ............................... 8

11             2.    Terayon's Internal Control Deficiencies .................................................. 11

12             3.    Insider Stock Sales................................................................................. 13

13             4.    Rambling Accusations Of An Anonymous Source ................................. 14

14             5.    Plaintiffs' Legally Insufficient Motive Allegations ................................. 16

15  IV.   CONCLUSION.......................................................................................................... 17

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

# CASES

*Business Objects S.A. Sec. Litig., In re*, No. C 04-2401 MJJ, 2005 U.S. Dist.
LEXIS 20215 (N.D. Cal. Jul. 27, 2005)..................................................... 9, 14, 15

*Coble v. Broadvision, Inc.*, No. C 01-01969 CRB, 2002 U.S. Dist. LEXIS 17495,
(N.D. Cal. Sept. 11, 2002) ................................................................... 15

*Comshare, Inc. Sec. Litig., In re*, 183 F.3d 542 (6th Cir. 1999) .................................. 12

*Crowell v. Ionics, Inc.*, 343 F. Supp. 2d 1 (D. Mass. 2004)...................................... 11

*Daou Sys. Inc., Sec. Litig., In re*, 411 F.3d 1006 (9th Cir. 2005) .......................... 12, 15

*Davis. v. SPSS, Inc.*, 385 F. Supp. 2d 697 (N.D. Ill. 2005) .................................. 10

*DiLeo v. Ernst & Young*, 901 F.2d 624 (7th Cir. 1990)....................................... 16-17

*Ditech Communications Corp. Sec. Litig., In re*, No. C 05-02406 JSW, 2006 U.S.
Dist. LEXIS 58978 (N.D. Cal. Aug. 10, 2006)............................................... 3

*DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385 (9th Cir. 2002)............... 7, 8, 9

*Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005) ......................................... 5

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976)............................................ 7

*GlenFed, Inc. Sec. Litig., In re*, 42 F.3d 1541 (9th Cir. 1994).................................. 6

*Goldberg v. Household Bank*, 890 F.2d 965 (7th Cir. 1989)....................................... 9

*Invision Techs., Inc. Sec. Litig., In re*, No. C 04-03181 MJJ, 2006 U.S. Dist
LEXIS 76458 (N.D. Cal. Aug. 31, 2006) .................................................. 2, 12

*Med/Waste, Inc. Sec. Litig., In re*, No. 99-1684-CIV-GOLD, 2000 U.S. Dist.
LEXIS 22505 (S.D. Fla. Aug. 30, 2000) ..................................................... 10

*Morgan v. AXT, Inc.*, No. C 04-4362 MJJ, 2005 U.S. Dist. LEXIS 42346 (N.D.
Cal. Sept. 23, 2005).................................................................... 9, 14, 15

*MSC Indus. Co. Sec. Litig., In re*, 283 F. Supp. 2d 838 (E.D.N.Y. 2003) .................... 15

*Network Assocs., Inc. II Sec. Litig., In re*, No. C 00-4849 MJJ, 2003 U.S. Dist.
LEXIS 14442 (N.D. Cal. Mar. 25, 2003)................................................. 10, 14, 15

*Northpoint Communications Group, Inc. Sec. Litig.*, 184 F. Supp. 2d 991 (N.D.
Cal. 2001)............................................................................... 10, 15

*Reiger v. Price Waterhouse Coopers LLP*, 117 F. Supp. 2d 1003 (S.D. Cal. 2000) .....7-8, 12, 16

*Segue Software, Inc. Sec. Litig., In re*, 106 F. Supp. 2d 161 (D. Mass. 2000) ............ 10

**Page(s)**

*Shurkin v. Golden State Vintners, Inc.*, No. C 04-03434 MJJ, 2006 U.S. Dist.
LEXIS 94900 (N.D. Cal. Dec. 30, 2006) ................................................................. 12

*Silicon Graphics, Inc. Sec. Litig., In re*, 183 F.3d 970 (9th Cir. 1999) ..............................*passim*

*SmarTalk Teleservs., Inc. Sec. Litig., In re*, 124 F. Supp. 2d 505 (S.D. Ohio 2000) .................. 10

*Software Toolworks Sec. Litig., In re*, 50 F.3d 615 (9th Cir. 1995) ........................................7

*Svezzese v. Duratek, Inc.*, No. MJG-01-1830, 2002 U.S. Dist. LEXIS 20967 (D.
Md. Apr. 30, 2002) ......................................................................................12-13

*Syncor Int'l Corp. Sec. Litig., In re*, 327 F. Supp. 2d 1149 (C.D. Cal. 2004) ........................... 14

*Teachers' Ret. Sys. v. Hunter*, No. 05-1988, 2007 WL 509787 (4th Cir. Feb. 20,
2007) ...........................................................................................................13-14

*U.S. Aggregates, Inc. Sec. Litig., In re*, 235 F. Supp. 2d 1063 (N.D. Cal. 2002) ....................... 11

*Vantive Corp. Sec. Litig., In re*, 283 F.3d 1079 (9th Cir. 2002) ................................................. 13

*Worlds of Wonder Sec. Litig., In re*, 35 F.3d 1407 (9th Cir. 1994) ................................... 7, 9, 16

*Wu Group v. Synopsys, Inc.*, No. C 04-3580 MJJ, 2005 U.S. Dist. LEXIS 42351
(N.D. Cal. Aug. 10, 2005) ................................................................................ 12

**STATUTES**

FED. R. CIV. P.,
9(b) ........................................................................................................ 1, 5, 6

Private Securities Litigation Reform Act of 1995,
15 U.S.C. § 78u-4(b) .............................................................................*passim*
15 U.S.C. § 78u-4(b)(1) ............................................................................... 6
15 U.S.C. § 78u-4(b)(2) ............................................................................... 6
15 U.S.C. § 78u-4(b)(3)(A) ........................................................................... 7
15 U.S.C. § 78u-4(b)(3)(B) ........................................................................... 7

Rule 10b-5 of the Securities Exchange Act of 1934, 17 C.F.R. § 240.10b-5 (2003) .................. 5

Securities Exchange Act of 1934, § 10(b), 15 U.S.C. § 78j(b) (Supp. III 2003) ................*passim*

**MISCELLANEOUS**

H.R. CONF. REP. NO. 104-369 (1995), 1995 U.S.C.C.A.N. 730 .................................................. 6

S. REP. NO. 104-98 (1995), 1995 U.S.C.C.A.N. 679 ................................................................... 6

iii