1

**BRAUN LAW GROUP, P.C.**
Michael D. Braun (167413)
12400 Wilshire Blvd., Ste. 920
Los Angeles, CA 90025
Tel: 310.422.7755
Fax: 310.442.7756
**Liaison Counsel**

2

3

4

**KAHN GAUTHIER SWICK, LLC**
Lewis S. Kahn
650 Poydras Street, Ste 2150
New Orleans, LA 70130
Tel: 504.455.1400
Fax: 504.455.1498
**Lead Counsel**

5

6

**KAHN GAUTHIER SWICK, LLC**
Michael A. Swick
Kim E. Miller (178370)
12 E. 41st St., Ste. 1200
New York, New York 10017
Tel: 212.696.3730
Fax: 504.455.1498
**Lead Counsel for Lead Plaintiff and the Class**

7

8

9

**SAXENA WHITE, P.A.**
Maya Saxena
Joe White
2424 N. Federal Highway
Ste. 2150
Boca Raton, FL 33431
Tel: 561.394.3399
**Lead Counsel**

10

11

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

12

13

14

Adrian G. Mongeli, Individually And On Behalf
of All Others Similarly Situated,

15

Lead Plaintiff,

16

vs.

17

18

TERAYON COMMUNICATION SYSTEMS,
INC., JERRY D. CHASE, RAY FRITZ,
EDWARD LOPEZ, CAROL LUSTENADER,
MATTHEW MILLER, ZAKI RAKIB,
SHLOMO RAKIB, MARK A. RICHMAN,
CHRISTOPHER SCHAEPE, MARK SLAVEN,
LEWIS SOLOMON, HOWARD W. SPEAKS,
ARTHUR T. TAYLOR, DAVID WOODROW,
DOUG SABELLA and ERNST & YOUNG,
LLP

19

20

21

22

23

Defendants.

24

Civil Docket No. 3-06-CV-3936 MJJ

LEAD PLAINTIFF'S MEMORANDUM
OF POINTS AND AUTHORITIES IN
OPPOSITION TO MOTION OF
TERAYON COMMUNICATION
SYSTEMS, INC. AND INDIVIDUAL
DEFENDANTS TO DISMISS
AMENDED CLASS ACTION
COMPLAINT

DATE: July 24, 2007
TIME: 9:30 A.M.
CTRM: 11, 9th Floor

25

26

# **TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ..................................................................................2

II.   STATEMENT OF ISSUE TO BE DECIDED ........................................................3

III.  LEGAL STANDARDS ..........................................................................................4

IV.   ARGUMENT ..........................................................................................................5

     A.    LEAD PLAINTIFF HAS ADEQUATELY PLEADED SCIENTER ........................5

          1.    The Extensive Restatements of Financials Going Back To 2000 Support a Strong Inference of Scienter ............................................................6

          2.    The Nearly $4 Million of Insider Sales Support a Strong Inference of Scienter........................................................................................................8

          3.    The Resignations of E&Y and High-Level Company Executives Support a Strong Inference of Scienter ..........................................................12

          4.    Defendants' Sarbanes-Oxley Certifications Support a Strong Inference of Scienter........................................................................................12

          5.    Allegations Based on Statements from a Former Employee Support a Strong Inference of Scienter……………………………….................13

          6.    Plaintiff's Allegations of Internal Control Deficiencies Support a Strong Inference of Scienter .....................................................................16

          7.    Allegations that Defendants Had Access To Internal Company Documents Provide Context To Further Support the Above-Discussed Indicia of Fraud ..........................................................................................17

     B.    THE COMPLAINT ADEQUATELY ALLEGES MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMISSIONS ......................................17

          1.    None of the Statements Alleged Constitutes "Puffery" .................................19

          2.    The "Safe Harbor" Does Not Apply...............................................................20

          3.    Materially False and Misleading Statements and Omissions are

Alleged Regarding Resignations and Restructuring.......................................22

4.   The Complaint Adequately Alleges False and Misleading Statements

and Omissions Concerning the Convertible Subordinated Notes ..................22

C.   LEAD PLAINTIFF HAS ADEQUATELY PLEADED LOSS CAUSATION .........23

D.   THE COMPLAINT ADEQUATELY ALLEGES CONTROL PERSON

CLAIMS PURSUANT TO 20(a) ……………………………………………25

V.   CONCLUSION ......................................................................................................................26

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Adaptive Broadband Sec. Litigation,*
2002 U.S. Dist. LEXIS 5887 (N.D. Cal. April 2, 2002)..........................................................7, 12, 17

*In re Allscripts Sec. Litigation,*
2001 U.S. Dist. LEXIS 8897 (N.D. Ill. June 28, 2001)....................................................................23

*Anderson v. Clow,*
89 F.3d 1399 (9th Cir. 1996),........................................................................................................18

*Arthur Children's Trust v. Keim,*
994 F.2d 1390 (9th Cir. 1993).......................................................................................................26

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litigation,*
324 F. Supp. 2d 474 (S.D.N.Y. 2004)............................................................................................18

*Barnett v. Centoni,*
31 F.3d 813 (9th Cir. 1994)..............................................................................................................4

*In re Business Objects S.A. Sec. Litigation,*
2005 U.S. Dist. LEXIS 20215 (N.D.Cal. July 27, 2005)..............................................................5, 15

*In re Cabletron System, Inc.,*
311 F.3d 11 (1st Cir. 2002).............................................................................................................16

*Communications Workers of Amer. Plan for Employees' Pensions and Death Benefits v.
CSK Automobile Corp.,*
2007 U.S. Dist. LEXIS 22782 (D. Ariz. 2007)................................................................................13

*Cornerstone Propane Partners, L.P. Sec. Litigation,*
355 F. Supp. 2d 1069 (N.D. Cal. 2005).................................................................................5, 12, 15

*In re Cylink Securities Litigation,*
178 F. Supp. 2d 1077 (N.D. Cal. 2001)............................................................................................7

*In re DDi Corp. Sec. Litigation,*
2005 U.S. Dist. LEXIS 28216 (C.D. Cal. July 20, 2005).................................................................18

*In re Daou System Inc. Sec. Litigation,*
411 F.3d 1006 (9th Cir. 2005).........................................................................................5, 14, 15, 24

*In re Donald J. Trump Casino Sec. Litigation,*
7 F.3d 357 (3d. Cir. 1993)..........................................................................................................20, 21

*Druskin v. Answerthink, Inc.,*
299 F. Supp. 2d 1307 (S.D. Fla. 2004).............................................................................................6

*In re Dura Pharm., Inc. Sec. Litigation,*
452 F. Supp. 2d 1005 (S.D. Cal. 2006).................................................................................8, 23, 24

*In re Electronic Data System Com. Sec. & "ERISA" Litigation,*
298 F. Supp. 2d 544 (E.D. Tex. 2004) .......................................................... 12, 17

*Employers Teamsters Local Nos. 175 and 505 Pension Trust Fund v. Clorox Co.,*
353 F.3d 1125 (9th Cir. 2004) ...................................................................... 20

*Florida State Board of Admin. v. Green Tree Finance Corp.,*
270 F.3d 645 (8th Cir. 2001) ......................................................................... 8

*In re GlenFed, Inc. Sec. Litigation,*
42 F.3d 1541 (9th Cir. 1994) ......................................................................... 4

*Greenapple v. Detroit Edison Co.,*
618 F.2d 198 ................................................................................................. 23

*Haack v. Max Internet Communications, Inc.,*
2002 U.S. Dist. LEXIS 5652 ........................................................................ 5

*Hanon v. Dataproducts Corp.,*
976 F.2d 497 (9th Cir. 1992) ........................................................................ 11

*Hollinger v. Titan Capital Corp.,*
914 F.2d 1564 (9th Cir. 1990) ...................................................................... 26

*Hughes v. Dempsey-Tegeler & Co.,*
534 F.2d 156 (9th Cir. 1976)......................................................................... 19

*In re Intelligroup Secs. Litig.,*
486 F. Supp. 2d at 684 ............................................................................... 12, 17

*Iolab Corp. v. Seaboard Surety Co.,*
15 F.3d 1500 (9th Cir. 1994) ........................................................................ 4

*Jacobson v. Hughes Aircraft,*
105 F.3d 1288 (9th Cir. 1997) ................................................................... 4, 16

*Kaplan v. Rose,*
49 F.3d 1363 (9th Cir. 1994) .................................................................. 19, 26

*In re Lattice Semiconductor Corp. Securities Litigation,*
2006 U.S. Dist. LEXIS 262 (D. Or. 2006) .................................................. 13

*Limantour v. Cray Inc.,*
432 F. Supp. 2d 1129 (W.D. Wash. 2006) ................................................... 13

*In re McKesson HBOC, Inc. Securities Litigation,*
126 F. Supp. 2d 1248 (N.D. Cal. 2000)..................................................... 7, 15

*In re MicroStrategy Inc. Sec. Litigation,*
115 F. Supp. 2d 620 (E.D. Va. 2000) ......................................................... 5, 18

*Newby v. Enron Corp.,*
2005 U.S. Dist. LEXIS 41240 (S.D. Tex. Dec. 22, 2005)............................ 12

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America W. Holding Corp.*,
320 F.3d 920 (9th Cir. 2003) ................................................................................. 19, 20

*In re Northpoint Committees Group, Inc.*,
184 F. Supp. 2d 991 (N.D. Cal. 2001) *and In re* ............................................................ 5

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000) ............................................................................................ 14

*In re Nuko Information System, Inc. Sec. Litigation*,
199 F.R.D. 338 (N.D. Cal. 2000) .................................................................................... 11

*Nursing Home Pension Fund, Local 144 UCFW v. Oracle Corp.*,
380 F.3d 1226 (9th Cir. 2004) ..................................................................................... 5, 9

*In re OCA, Inc.*,
2006 U.S. Dist. LEXIS 90854 (December 14, 2006 E.D. La) ......................................... 13

*PR Diamonds, Inc. v. Chandler*,
364 F.3d 671 (6th Cir. 2004) .......................................................................................... 17

*Payne v. DeLuca*,
433 F. Supp. 2d 547 (W.D. Pa. 2006) ............................................................................. 18

*Phillips v. Scientific-Atlanta, Inc.*,
374 F.3d 1015 (11th Cir. 2004) ........................................................................................ 5

*In re Redback Networks, Inc. Sec. Litigation*,
2006 U.S. Dist. LEXIS 47055 (N.D. Cal. 2006) ............................................................ 25

*Ritter v. Hughes Aircraft Co.*,
58 F.3d 454 (9th Cir. 1995) ............................................................................................ 10

*Roncini v. Larkin*,
253 F.3d 423 (9th Cir. 2001) .......................................................................................... 11

*Rubinstein v. Collins*,
20 F.3d 160 (5th Cir. 1994) ............................................................................................ 21

*In re Rent-Way Secs. Litig.*,
209 F.Supp.2d 493, 509 (W.D. Pa. 2002)……………………………………………16

*San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Cos.*,
75 F.3d 801 (2d Cir. 1996) ............................................................................................. 11

*Scritchfield v. Paolo*,
274 F. Supp. 2d 163 (D.R.I. 2003) .................................................................................. 19

*In re Silicon Graphics Sec. Litigation*,
183 F.3d 970 (9th Cir. 1999) .......................................................................................... 11

*In re Spear & Jackson Sec. Litigation*,

399 F. Supp. 2d 1350 (S.D. Fla. 2005) ................................................................. 3

*In re Splash Tech. Holdings Inc. Sec. Litigation,*
160 F. Supp. 2d 1059 (N.D. Cal. Aug. 28, 2001) .................................................. 2

*Sutton v. Bernard,*
2001 U.S. Dist. LEXIS 11610 (N.D. Ill. 2001) .................................................. 18

*TSC Industrial, Inc. v. Northway, Inc.,*
426 U.S. 438-49 (1976) ........................................................................................ 23

*The WU Group v. Synopsys, Inc.,*
2005 U.S. Dist. LEXIS 42351 (N.D. Cal. Aug. 10, 2005) ................................... 11

*In re Triton Energy Ltd. Securities Litigation,*
2001 U.S. Dist. LEXIS 5920 (E.D. Tx. 2001) ....................................................... 7

*In re U.S. Aggregates, Inc. Sec. Litigation,*
235 F. Supp. 2d 1063 (N.D. Cal. 2002) ............................................................... 12

*In re Verisign,*
2005 U.S. Dist. LEXIS 44391 (N.D. Cal. Nov. 2, 2005) ..................................... 25

*In re Wells Fargo Sec. Litigation,*
12 F.3d 922 (9th Cir. 1993) ................................................................................. 11

*Wenger v. Lumisys, Inc.,*
2 F. Supp. 2d 1231 (N.D. Cal. Mar. 31, 1998) ..................................................... 5

*Zack v. Allied Waste Indus.,* 2005 U.S. Dist.
LEXIS 35323, 32 (D. Ariz. 2005) ....................................................................... 20

*In re Hypercom Corp. Sec. Litigation,*
2006 WL 1836181 (D. Ariz. July 5, 2006) ..................................................... 12, 16

**FEDERAL STATUTES**

15 U.S.C. § 78u-4(b)(1) ......................................................................................... 4

Fed. R. Civ. P. 8 ...................................................................................................... 4

Fed. R. Civ. P. 9(b) ................................................................................................. 4

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 4

Fed. R. Civ. P. 15 .................................................................................................. 26

Fed. R. Evid. 201(b) .............................................................................................. 10

## I.   PRELIMINARY STATEMENT

Lead Plaintiff Adrian Mongeli respectfully submits his opposition to the motion of Terayon Communications Systems, Inc. ("Terayon" or the "Company") and the Individual Defendants to dismiss the Amended Class Action Complaint (the "Complaint").

Defendants' motion to dismiss the Complaint should be denied in full because plaintiff has adequately alleged all of the required elements for claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act").   Defendants' arguments cannot succeed for the following reasons, among others, discussed in detail below:

▪   Defendants argue that plaintiff has failed to allege facts sufficient to create a strong inference of scienter.  In doing so, defendants ignore controlling authority that requires the Court to consider all of the indicia of scienter together, and fail to even address some of the strongest indicia of scienter – including the SEC's investigation of the Company, its delisting, and the Earlier Securities Fraud settlement for $15 million, which involved insider trading allegations against various insiders who sold a total of 180,000 shares in the earlier action.  In this case, the Rakib brothers alone sold 300,000 shares of Company stock during the Class Period.  Here, the additional facts that create a strong indicia of scienter include: the extensive Restatements of financial results for nearly all of the interim and annual financial periods during the Class Period, including numerous GAAP violations as well as complete lack of internal controls; suspicious insider sales amounting to nearly $4 million; the resignation of defendant Ernst & Young ("E&Y"); the resignation of various high-level Company executives; statements from a former employee from the Company's accounting department who indicated, among other things, that goods were "received but not invoiced," that E&Y "was not clean on this stuff," that *the Company "knew their were other issues -- bigger problems with revenue recognition"* than a single customer, and that there were specific GAAP violations involving various customers, such as Verilink, RNI, and Thomson;  and signing by various defendants of Sarbanes-Oxley certifications that numerous false and misleading financial reports "fairly present…the financial condition of the Company";

▪    Defendants argue that plaintiff has failed to plead materially false and misleading statements and omissions despite the fact that they have conceded, as they must, that all of the statements that were ultimately restated in the Company's extensive Restatements of financial results for various interim and annual financial periods going back as far as 2000 were materially false and misleading when made (*see, e.g.*, Def. Br. at 11 ("[b]y restating, Terayon recognized that these previous statements were not accurate");

▪    Defendants' additional arguments that certain non-restated statements and omissions constitute immaterial puffery or are protected by the safe harbor are factual determinations not appropriate for this motion and, additionally, these statements are actionable when viewed in their full context, rather than isolated into meaningless snippets as defendants attempt to do; and

▪    Plaintiff has adequately alleged loss causation in accordance with controlling Supreme Court precedent of *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005).

.    Defendants also would have this Court erroneously find that this is not a securities fraud case because:  (i) the Company issued anemic, piecemeal "warnings" in the form of admissions of limited control weaknesses that had supposedly been remediated and that failed to disclose the fraud; (ii) the Company's own internal investigation by the Audit Committee did not conclude that a fraud had occurred and did not recommend action against the Company or any individual – a fox-watching-the-hen house scenario to be sure;  and  (iii) because the insiders did not make even greater profits.  Defendants had every intention to profit even more from their scheme, but the scheme failed before they could do so, as discussed in Section  IV.A below.[1]  For each of these reasons, and the additional reasons discussed below, defendants' motion should be denied in full.

## II.    STATEMENT OF ISSUE TO BE DECIDED

---

[1] The scheme involved three phases: (i) the transition phase (Phase I); (ii) the restructuring phase (Phase II); and (iii) the resolution/bailout phase (Phase III).  *See* Exhibit A of Declaration of Kim E. Miller ("Miller Decl.") (setting forth factual allegations occurring during each phase of fraud).

Whether plaintiff has stated claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 where many of the statements by defendants are concededly false and where there are numerous indicia of scienter – including but not limited to suspicious trading, restated financials for extended periods, resignations of the auditor and various high-level personnel, an SEC investigation, delisting of the Company's stock, defendants' signing of Sarbanes-Oxley certifications, and corroboration of specific GAAP and SEC rule violations by a former employee, which, when taken as a whole, support a strong inference of scienter?

## III.    LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), the Court may not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994). When analyzing a complaint for failure to state a claim, all factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *See Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1504 (9th Cir. 1994). All reasonable inferences are to be drawn in favor of plaintiff. *Jacobson v. Hughes Aircraft*, 105 F.3d 1288, 1296 (9th Cir. 1997).

To state a claim for securities fraud under Section 10(b) of the 1934 Act and SEC Rule 10b-5, a complaint must meet two requirements. First, it must conform with the "particularity" requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1545 (9th Cir. 1994). Rule 9(b) provides "in all averments of fraud or mistake, the circumstances constituting fraud or mistake, *i.e.*, the who, what, when, where and how of the alleged fraud, shall be stated with particularity. Malice, intent, knowledge, and other condition of mind, *i.e.*, the defendants' scienter, may be averred generally.

Second, a complaint must meet the pleading requirements provided in the PSLRA. The PSLRA codifies the "particularity" obligations of Rule 9(b) by requiring that the complaint specify "each statement alleged to have been misleading," and by requiring that the complaint specify the reason the statement was false or misleading. 15 U.S.C. § 78u-4(b)(1). Moreover, the PSLRA provides that a complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," or scienter. *Id.* at (b)(2).

The required state of mind is either that the defendant acted intentionally or with "deliberate recklessness." *In re Daou Sys. Inc. Sec. Litig.*, 411 F.3d 1006, 1014-15 (9th Cir. 2005).

## IV.    ARGUMENT[2]

### A. LEAD PLAINTIFF HAS ADEQUATELY PLEADED SCIENTER

Defendants attempt to undermine plaintiff's myriad scienter allegations by seeking to isolate them and address them each in a vacuum when in fact the Ninth Circuit has held that they must be viewed in their totality. *See, e.g., In re Daou*, 411 F.3d at 1022 (court considers "whether the total of plaintiffs' allegations, even though individually lacking, are sufficient to create a strong inference that defendants acted with deliberate or conscious recklessness.") quoting *Nursing Home Pension Fund, Local 144 UCFW v. Oracle Corp.*, 380 F.3d 1226 (9th Cir. 2004). *See also In re Spear & Jackson Sec. Litig.*, 399 F. Supp. 2d 1350 (S.D. Fla. 2005), citing *Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015, 1017 (11th Cir. 2004). ("[T]he inference of scienter can arise from an aggregation of particularized facts, even if each individual fact standing alone does not create a sufficiently strong inference.").

On a motion to dismiss a securities fraud claim, a court "must take the factual allegations in the complaint as true, draw whatever inferences regarding the defendant's state of mind are supported by these allegations, and determine whether these inferences individually or cumulatively provide a strong – or 'persuasive' and 'cogent' – inference that the defendant possessed the requisite state of mind.") *Haack v. Max Internet Communications, Inc.*, 2002 U.S. Dist. LEXIS 5652, at *25 (citing *In re MicroStrategy Sec. Litig.*, 115 F. Supp. 2d 620, 631

---

[2] As an initial matter, defendants argue that the Complaint should be dismissed for failure to comply with Fed. R. Civ. P. Rule 8 because it is "so lengthy" and has a so-called "puzzle style." Def. Br. at 7. First, the Complaint is substantial as it must detail the allegations of the fraud in accordance with Fed. R. Civ. P. 9(b). Second, the Complaint sets forth the reasons that each statement is materially false and misleading in the subparagraphs (a)-(k) of ¶64. In any event, courts in this Circuit, including this Court, have held that any deficiencies in the "form of the pleading" are not a basis for the "drastic step" of dismissal. *In re Business Objects S.A. Sec. Litig.*, 2005 U.S. Dist. LEXIS 20215, *10 (N.D.Cal. July 27, 2005), citing *In re Northpoint Comms Group, Inc.*, 184 F. Supp. 2d 991, 998 (N.D. Cal. 2001), and *In re Cornerstone Propane Partners, L.P. Sec. Litig.*, 355 F. Supp. 2d 1069, 1081 (N.D. Cal. 2005). Defendants' citation to *In re Splash Tech. Holdings Inc. Sec. Litig.*, 160 F. Supp. 2d 1059 (N.D. Cal. Aug. 28, 2001), is distinguishable because there plaintiffs had had multiple opportunities to fix court-identified deficiencies in the form of the pleading and failed to do so. Defendants' citation to *Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231 (N.D. Cal. Mar. 31, 1998), is distinguishable because in that case plaintiff failed to indicate which statements included in the pleading were alleged to be false and misleading. In addition, the *Wenger* court granted leave to replead to correct, *inter alia*, the deficiencies in the form of pleading.

1    (E.D. Va. 2000)).  In *Druskin v. Answerthink*, Inc., 299 F. Supp. 2d 1307, 1323 (S.D. Fla.

2    2004), the court listed "a number of indicia" of fraud that courts had found relevant to finding

3    an inference of scienter in previous cases.    The list included: (1) insider trading; (2)

4    particularized allegations of profits through related companies or exercise of options; (3)

5    restatements; (4) auditor resignations; (5) defendant confronted with accounting fraud; (6)

     allegations of "red flags" ignored by auditors; and (7) significant price decline following

6    disclosures.  *Id.* at 1323-1324, cited in *In re Spear & Jackson Sec. Litig.*, 399 F. Supp. 2d at

7    1358.  Of these seven above-listed factors, at least five are clearly alleged in the Complaint (all

8    but factors two and five are alleged in detail in the Complaint).  Taken together, plaintiff's

9    scienter allegations present a compelling picture of deliberate recklessness and/or actual

10   knowledge that the statements made and facts concealed by Defendants during the Class Period

11   were materially false and misleading when made or concealed, as discussed below.

12        In addition to isolating certain of plaintiff's scienter allegations, defendants also wholly

13   ignore other scienter allegations for which they apparently have no response.  For example,

14   defendants fail to address the investigation by the SEC; the delisting from the stock exchange

15   which defendants made no attempt to object to; and the Earlier Securities Fraud Litigation

16   involving allegations of insider trading which the Company settled for approximately $15

17   million.    In fact, under defendants' legally unsupportable analysis that wrongly portrays

18   individual scienter allegations as if each of them is the only scienter allegation included in the

19   Complaint, plaintiff is hard pressed to come up with any hypothetical allegations in which

20   scienter could *ever* be adequately alleged.  This is not the law.  As discussed below in further

21   detail, plaintiff's scienter allegations, taken as a whole, support a strong inference of scienter.

22              **1.    The Extensive Restatements of Financials Going Back To 2000**

23              **Support a Strong Inference of Scienter**

24        The Restatements at issue cover an extended period of time – encompassing

25   "consolidated financial statements for the years ended December 31, 2003, 2002, and 2000 and

26   for the quarters of 2003, 2002, and 2000" (¶ 242) – in short nearly all interim and annual

     financial statements during the Class Period – and involve a variety of GAAP violations.

Therefore, a strong inference of scienter is properly drawn. In fact, in *In re Cylink Secs. Litig.*, 178 F. Supp. 2d 1077, 1084 (N.D. Cal. 2001), the court held that "***the mere fact that the statements were restated at all supports... an inference [of scienter]*.*" (emphasis added). *See also In re Triton Energy Ltd. Secs. Litig.*, 2001 U.S. Dist. LEXIS 5920, at *33-*34 (E.D. Tex. 2001) (although GAAP violations standing alone are insufficient to establish scienter, "this does not mean that 'a misapplication of accounting principles or a restatement of financials can never take on a significant inferential weight in the scienter calculus; to the contrary, ***when the number, size, timing, nature, frequency, and context of the misapplication or restatement are taken into account, the balance of the inferences to be drawn from such allegations may shift significantly in favor of scienter***") (emphasis added); *In re McKesson HBOC, Inc. Secs. Litig.*, 126 F. Supp. 2d 1248, 1273 (N.D. Cal. 2000) ("when significant GAAP violations are described with particularity in the complaint, they may provide powerful indirect evidence of scienter."); *see also In re Adaptive Broadband Sec. Litig.*, 2002 U.S. Dist. LEXIS 5887 *42 (N.D. Cal. April 2, 2002) ("Given the fact that Adaptive was forced to announce restatements at least twice – once on March 15, 2001 and again on July 5, 2001 – the Court finds that while they would be insufficient to support a scienter inference on their own, when coupled with the strong evidence of deliberately reckless accounting, there, these restatements shore up and place in context the allegations of fraud.").[3]

Defendants seek to defend their conduct by arguing that there was one instance in a particular transaction where revenue was not improperly recognized. Def. Br. at 13. This is a factual determination inappropriate for this motion and is contradicted by numerous allegations

---

[3] The cases cited by defendants at Def. Br. 12 are unhelpful to them as these cases stand for the mere proposition that allegations of a restatement or GAAP violations may not standing alone be sufficient. Here, there are numerous other indicia of scienter. Similarly, defendants' argument that adjustments relating to a 1999 License Agreement required adjustments that "essentially cancel each other out," a conclusion that plaintiff disputes, is a factual issue that cannot be resolved on this motion. Defendants also argue that one of the accounting errors relating to SAB 101 and 104 does not support an inference of scienter because "it is reasonable to infer" otherwise. Def. Br. at 13. Again, this is a factual issue not properly resolved on this motion and it runs contrary to the applicable legal standards on a motion to dismiss which require reasonable inferences to be drawn in favor of plaintiff. Finally, defendants argument that the Company "placed its financial accounting under scrutiny" (Def. Br. at 14) by an outside accounting firm and the SEC does absolutely nothing to undermine plaintiff's scienter allegations. All public companies are regulated by the SEC and must have outside accounting firms. E&Y quit. Of course defendants had to hire a new accounting firm.

in the Complaint that revenue was improperly recognized with regard to various customers, in addition to various additional GAAP violations. *See, e.g.*, ¶¶ 50-59, 238-244, 254-260.

### 2. The Nearly $4 Million of Insider Sales Support a Strong Inference of Scienter

Defendants argue that because not every insider profited from insider trading and because the insider trading profits were not even higher than nearly $4 million, scienter is negated. This argument is both factually and legally unsupportable.[4]

In truth, as alleged in the Complaint, this is not the first time that Terayon and the Rakib brothers have been charged with securities fraud by a class of investors in federal court. In this very District in April 2000, a securities fraud suit was filed against the Company and some of the individuals here for issuing false and misleading statements and selling over 180,000 of their personally-held Company shares. In light of this backdrop, it is reasonable to assume that because the Rakib brothers had already gotten their hand caught in the cookie jar once, they would perhaps attempt to be craftier in engaging in yet another insider trading scheme.

The fact that defendants' pump-and-dump scheme was not as successful as it had been the first time around does not make defendants any less culpable when the totality of the scienter allegations provides strong evidence of actual knowledge and or reckless disregard of the fact that the positive statements touting the Company's financial condition, results, and operations were materially false and misleading when made. *See, e.g., Florida State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 662 (8th Cir. 2001) (CEO's failure to sell all of his stock did not undercut finding of scienter, noting "*the ultimate profitability of a course of conduct is not conclusive of intent. Just as we cannot countenance pleading fraud by*

---

[4] Defendants also attempt to cast aside plaintiff's allegations that defendants announced a shelf registration during the Class Period "to take advantage of the artificial inflation in the price of Terayon stock." *See* ¶ 128. (Def. Br. at 20 n. 6). Defendants attempt to view each allegation in isolation is unsupported by controlling caselaw, as discussed above. Plaintiff's shelf registration allegation adds context to the existing motive and opportunity allegations alleged in the Complaint. Defendants' citation to *In re Dura Pharm., Inc. Sec. Litig.*, 452 F. Supp.2d 1005, 1032 (S.D. Cal. 2006), is distinguishable as the Complaint failed to include adequate other indicia of fraud to support an inference of scienter.

*hindsight, neither can we infer innocence by hindsight because the alleged misdeeds did not pay off.*") (emphasis added).

To evaluate the suspiciousness of stock sales, courts in the Ninth Circuit consider three factors: (1) consistency with prior trading history; (2) timing of the sales; and (3) the amount and percentage of shares sold. *Oracle*, 380 F.3d at 1232. Here, when the allegations are taken as a whole, defendants' stock sales were suspicious and support a strong inference of fraud.

First, in the Earlier Securities Fraud Action, insiders sold 180,000 shares for gross proceeds of $30 million, including $7.2 million sold by Zaki Raki and another $7.2 million sold by Shlomo Rakib, each for over $150/share. Here, the number of shares sold just by the Rakib brothers was nearly *twice* the number of shares sold by all insiders in the Earlier Fraud Action. The timing of the stock sales of the Rakib brothers was suspicious indeed.

Upon realizing that defendants' scheme to artificially inflate the stock was truly failing, the Rakib brothers quickly unloaded more than half a million dollars each – approximately 150,000 shares a piece. *The Rakib brothers sold their shares at a price above $3.50/share, when they knew the stock would thereafter totally bottom out on the news of the Restatements which would indicate the Company could not ultimately succeed. There were only literally only a handful trading days between mid-2004 and the end of the Class Period on March 1, 2006 when the stock sold above $3.50.* In short, the Rakib brothers sold as much stock as they could as soon as they could. These shares were sold during a period when defendants were already contemplating the Restatements; when the investigation by the SEC was foreseeable but before it was publicly revealed in or around March 2006; and prior to the $15 million settlement of the Earlier Fraud Action. The signing of the MOU in that action was announced in March 2006.

Defendant's requests for judicial notice regarding the Form 4's for the defendants, as well as the analysis of the percentage of holdings sold, is neither accurate nor appropriate under the circumstances of this case. Specifically, plaintiff is unable to accurately calculate the percentage of shares available for trading that were sold by defendants because the Form 4's do not reflect whether any shares held by the Rakib brothers or any of the other individual

defendants were previously pledged.  Here, a variety of news sources have reported that in January 2005, Zaki Rakib purchased the most expensive private home ever sold in Israel for no less than $22 million (U.S.).  *See, e.g.*, Miller Decl. at Exhibit B.[5]  Because Zaki Rakib, until his resignation as CEO in May of 2004, had worked full time at the Company since its inception and has no other publicly-disclosed sources of income, it is a reasonable inference that shares of Company stock may have been pledged in order to secure this property.

Defendants attempt to make much of the fact that the shares were not sold by defendants at the Class Period high of $14.15 (Def. Br. at 23), but in this case, it is not surprising not only because many of the options were not available to be exercised for reasons previously discussed, but also because the Rakib brothers chose not to sell at that time because they fully anticipated the scheme would artificially inflate the stock far higher.  In short, the stock traded in excess of $160/share in early 2000, defendants did not expect that the Class Period high would in fact be so, and did not yet realize that their scheme to pump and dump would miserably fail.[6]

Defendant Lustenader's sales are suspicious as well.  Lustenader sold virtually all shares freely exercisable shortly after they became so, in significant contrast to prior years.  Defendants argue that at the time Lustenader sold the majority of her shares she had resigned "preclud[ing] access to any insider information." Def. Br. at 22.  In truth, Lustenader already had all the insider information she needed: she recognized that the "transition" phase I of the fraud had failed[7] and she saw defendants had created a Phase II "Restructuring" plan, which temporarily cause shares to rally on positive but false and misleading statements.  In short, Lustenader was simply the first of a long line of high-level executives to bail out.  The end of Phase II (Restructuring phase) of the fraud was marked by a massive upheaval of management

---

[5] Exhibit B is one of several news articles reporting that Zaki Rakib and his wife had purchased the most expensive private home ever sold in Israel, for $22M in January of 2005.  It is appropriate for the Court to take judicial notice of this fact.  *Ritter v. Hughes Aircraft Co.*, 58 F.3d 454, 458 (9th Cir. 1995); Fed. R. Evid. 201(b).

[6] One insider, defendant Christopher Schaepe did sell during phase 1 of the fraud at high, artificially-inflated prices (up to $11.08/share), making profits approaching $1.5 million.

[7] *See* Exhibit A for fuller discussion of three phases of the fraud.

as senior managers fled: Zaki Rakib retired as CEO in May 2004; defendant Sabella retired as COO in June 2004; defendant Taylor retired as COO in July 2004; and Schlomo Rakib retired as President and CTO in October 2004.

Further, explaining why defendants did not sell even more shares, while plaintiff is unable to determine the options exercise prices for some of the defendants, it is a reasonable inference that several of them had options exercisable as of October 31, 2004 that could not be exercised because the stock was trading at only $2.00.

While the large amounts of insider trading here support a finding of scienter, the Ninth Circuit has held that scienter may be found even where no insider trading whatsoever occurs. In *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992), the court held that scienter was established despite the fact that the "officers did not sell their stock during the Class Period." *See also In re Nuko Info. Sys., Inc. Sec. Litig.*, 199 F.R.D. 338, 344-45 (N.D. Cal. 2000) ("Plaintiffs relied on Defendants' misstated revenues and purchased Nuko stocks at inflated prices. Under these circumstances, the absence of Defendants' selling or trading has little bearing on determining whether Plaintiffs have adequately pleaded scienter."). Similarly, in *In re Wells Fargo Sec. Litig.*, 12 F.3d 922, 931 (9th Cir. 1993), the court noted that "[w]hile 'allegations of unusual insider trading by defendants immediately preceding the disclosure of negative news' may be … characteristic of a 'typical securities fraud class action,' they are not required." Thus, the fact that some of the defendants may not have sold all of their stock does nothing to negate the inference of scienter to be drawn by the insider trading that did occur[8], taken together with the additional myriad scienter allegations set forth in the complaint and discussed herein. *See, e.g., San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801 (2d Cir. 1996) (defendant's retention of a large portion of company stock did not vitiate insider trading liability).[9]

---

[8] *Roncini v. Larkin*, 253 F.3d 423, 436 (9th Cir. 2001), cited by defendants (Def. Br. at 21) for the proposition that where only one defendant allegedly traded improperly while various others did not, is distinguishable because here not one but several insiders allegedly engaged in improper sales. In addition, here, various of the Individual Defendants appear to have had options that were not exercisable for the vast majority of the Class Period.

[9] While defendants cite *In re Silcon Graphics*, 183 F.3d at 987, *In re Pixar Secs. Litig.*, 450 F. Supp. 2d 1096, 1105 (N.D. Cal. 2006), and *The WU Group v. Synopsys, Inc.*, 2005 U.S. Dist. LEXIS 42351, *10 (N.D. Cal. Aug.

1

2

### 3.  The Resignations of E&Y and High-Level Company Executives Support a Strong Inference of Scienter

The resignations of high-level Company insiders --first CFO Lustenader after phase I of the fraud failed, and then, after phase II failed: in rapid succession, CEO Zaki Rakib, COO Sabella, CFO Taylor, and finally President and CTO Shlomo Rakib – and the abrupt resignation of defendant E&Y on August 27, 2005, prior to the Company's first of several announcements that a restatement of a single quarter and, eventually, extensive Restatements of financials going back to 2000 would be necessary, support a strong inference of scienter. *See, e.g., In re Intelligroup Secs. Litig.*, 468 F. Supp. 2d 670 (D.N.J. 2006) (resignation of auditor or CFO is one manner in which "the market may learn of possible fraud"), citing *Newby v. Enron Corp.*, 2005 U.S. Dist. LEXIS 41240, at *16 (S.D. Tex. Dec. 22, 2005). Defendants' citations to *In re CornerStone*, 355 F. Supp. 2d at 1093; *In re Hypercom*, 2006 WL 1836181, *8, for the proposition that the defendants' failure to identify "fraud" as the reason for the resignations is unpersuasive here in the face of the extensive Restatements and numerous other indicia of fraud, including an SEC investigation, delisting, and the Earlier Securities Fraud Action. *See, e.g., Intelligroup*, 486 F. Supp. 2d at 684, citing *In re Electronic Data Sys. Com. Sec. & "ERISA" Litig.*, 298 F. Supp. 2d 544, 560-61 (E.D. Tex. 2004) ("defendants cannot escape liability for fraud simply by not admitting the fraud").

### 4.  Defendants' Sarbanes-Oxley Certifications Support a Strong Inference of Scienter

Defendants' execution of numerous Sarbanes-Oxley certifications during the Class Period -- attesting that the various false and misleading reports "fairly presents, in all material respects the financial condition and results of operations of the Company" (*e.g.*, ¶ 206) –

---

10, 2005), for the proposition that the insider sales were not sufficient in and of themselves to give rise to an inference of scienter (Def. Br. at 22), there is of course "no requirement that a plaintiff allege insider trading in order to satisfy the PSLRA pleading standard." *In re U.S. Aggregates, Inc. Sec. Litig.*, 235 F. Supp. 2d 1063 (N.D. Cal. 2002). As noted above, courts in this Circuit have upheld securities fraud complaints that have no allegations of insider sales based solely on other indicia of fraud. *Id.*, citing *Adaptive Broadband Sec. Litig.*, 2002 U.S. Dist. LEXIS 5887. By contrast, where, as here, defendants pocketed nearly $4M in insider sales, the insider selling allegations provide strong evidence of scienter.

support a strong inference of scienter. *See, e.g.*, *Communications Workers of Amer. Plan for Employees' Pensions and Death Benefits v. CSK Auto Corp.*, 2007 U.S. Dist. LEXIS 22782, *29 (D. Ariz. 2007) ("CSK's admission of accounting errors and the Individual Defendants' Sarbanes-Oxley certifications and high-level positions at CSK raise some inference of scienter"); *In re Lattice Semiconductor Corp. Secs. Litig.*, 2006 U.S. Dist. LEXIS 262, *50-51 (D. Or. 2006) ("The Sarbanes-Oxley certifications, in combination with plaintiffs' allegations of regular finance meetings, extensive access to databases, periodic reports and special reports, and the allegations that they were micromanagers, are sufficient to create a strong inference of actual knowledge or of deliberate recklessness."). In *Lattice Semiconductor*, the court reasoned that a "Sarbanes-Oxley certification can support at least some inference of scienter because it necessarily supports one of the alternative inferences that (a) the defendant was aware of the misconduct alleged (because, as the defendant certified, the company had effective disclosure controls), or (b) that the defendant knowingly misrepresented that the company's disclosure controls were adequate and effective. Several commentators have similarly suggested that a corporate officer's Sarbanes-Oxley certification could be used as circumstantial evidence to show that a defendant acted with scienter." *In re OCA, Inc.*, 2006 U.S. Dist. LEXIS 90854, *60 (December 14, 2006 E.D. La), discussing *Lattice Semiconductor* and citing commentators Harold S. Bloomenthal, Steven J. Choi, and Kourtney T. Coward for the proposition that such certifications constitute evidence from which defendant's knowledge of the misrepresentations or reckless disregard of them could be inferred.

Defendants' argument that these certifications "do not demonstrate scienter" (Def. Br. at 17), is particularly puzzling given that the only supporting parenthetical provided – from *Limantour v. Cray Inc.*, 432 F. Supp. 2d 1129, 1160 (W.D. Wash. 2006) -- concedes that Sarbanes Oxley certifications can support a strong inference of scienter, where, as here, they are coupled with other indicia of scienter.

**5.    Allegations Based on Statements from a Former Employee Support a Strong Inference of Scienter**

Lead Plaintiff's confidential source is identified with sufficient particularity to satisfy the PSLRA, and the allegations attributed to this source further support a strong inference of scienter against defendants. It is unnecessary to name a source as long as the source is described "with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged and the complaint contains adequate corroborating details. *In re Daou Sys.*, 411 F.3d at 1015-16. *See also In re Beyond*, 266 F. Supp. 2d at 1159; *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000).

Lead Plaintiff has done so. The source is described in the Complaint as a person who worked in the accounting department during the relevant time period (the "Former Employee"). The Former Employee had direct personal knowledge of the facts to which he/she attests by virtue of his/her position in the accounting department of the Company and those statements are strongly corroborated by Defendants' Restatements of its interim and annual financials for an extensive time period, among other things.

The statements attributed to the Former Employee make it clear that he/she had direct exposure to certain of the Individual Defendants (including Zaki Rakib) as well as high-level E&Y partners on the Terayon account (*e.g.*, audit Partners Lisa Portnoy and Mike Turner) and knowledge of E&Y's business practices and course of conduct, as well as very particular information regarding what E&Y did and did not do during the Class Period and with respect to which business areas and accounts in connection with its auditing role with Terayon. For example, the Former Employee provided details regarding which aspects of E&Y's due diligence were lacking and why (*e.g.*, ¶¶ 52-53) and which accounts, for example, had particular problems (*e.g.*, Verilink, RNI, Thomson) (¶ 52). Again, these issues are corroborated by Defendants' admissions in the Restatements.

The statements from the Former Employee also make clear that the source has a strong accounting background and is able to discuss specific GAAP provisions and general SEC reporting rules and regulations that had been violated by Defendants during the Class Period. For example, the Former Employee stated that SOP 97-02 was not applied when it should have been (¶ 55) and provided specific details of a conversation between E&Y partner Mike Turner

and Defendant Richman to further support this conclusion.  *Id.*  This gross error was admitted by the Company in its Restatements.  Further, the Former Employee noted E&Y "virtually closed the books for the year end 2001 and 2000 – a 'no-no'."  (¶ 52).  The Former Employee also faulted E&Y for its failure in the course of due diligence to consult with the vice presidents of the Company who ran each of its three business areas – video, modem, and CMTS.  *Id.*  The Former Employee pointed to particular guidance from E&Y that proved wrong (¶ 53) and noted that goods were "received but not invoiced" when they should have "amortized over time."  *Id.*  The source further was able to not only speak to global "bigger problems with revenue recognition," but also to explain improper revenue recognition with respect to a particular account (CMTS) for a particular period (third quarter 2004).  *Id.*; ¶ 54.[10]

Defendants' contention that plaintiff's description of the confidential source — must include an "actual title, the years of his tenure at the company, any description of his actual job functions, or information about the individuals he worked with"  (Def. Br. at 18) – should be rejected.[11]  This witness provides sufficient direct evidence of scienter to meet the requirements of the PSLRA.  Plaintiff need only plead with particularity sufficient facts to support beliefs concerning false and misleading statements.  *In re McKesson HBOC, Inc. Sec. Litig,* 126 F. Supp. 2d at 1271.  The court can look at the level of the detail provided by the witness, the

---

[10] Defendants' argument that consultations with an auditor (Def. Br. at 19-20) insulate them from liability for improper revenue recognition falls flat here.  Not only has the Former Employee alleged that defendants improperly recognized revenue with respect to more than one account (¶¶52-54) but also defendants conceded through the restatements that revenue was improperly recognized, among other accounting problems.  Finally, defendants ignore the important part of the quote at ¶ 53 of the Complaint that the Company "really wanted to recognize the revenue [because they] knew the third quarter 2004 for CMTS was gonna be bad."

[11] Defendants' citations to In re *Business Objects S.A. Sec. Litig., 2005 U.S. Dist. LEXIS 2021,* and *In re Cornerstone Propane Partners Sec. Litig.,* 355 F. Supp. 2d 1069 (Def. Br. at 18-19), are not to the contrary.  As this Court noted in *Business Objects,* "when plaintiffs rely on both confidential witnesses and on other facts, they need not name their sources as long as the latter facts provide an adequate basis for believing that the defendants' statements were false."  *Id.* at *16, quoting *Daou Systems,* 397 F.3d at 711.  Here, where the restatements of financials over an extended period of time were necessary and defendants conceded the materially false and misleading nature of those financials through the restatements themselves, plaintiff has met this requirement.  In addition, the witnesses in *Business Objects* were unable to provide a level of detail regarding any of their statements, which called into question their reliability and knowledge of the issues at hand.  By contrast here, the Former Employee provides specific details of names, accounts involved, specific GAAP provisions violated, and the like, as discussed above.  In *Cornerstone,* 355 F. Supp. 2d at 1089-90, the court did not find fault with the description of the confidential witnesses, but rather found that the information provided by them needed to be more specifically pleaded and granted leave to replead.

coherence and plausibility of the allegations, and the reliability of the source, among other indicia.  *In re Cabletron Sys., Inc.*, 311 F.3d 11, 29-30 (1st Cir. 2002).  Here, the level of specific details regarding accounts, personnel involved, specific GAAP provisions violated and the like are not only coherent and plausible but also strongly corroborated by defendants' own concessions in the Restatements.

### 6.  Plaintiff's Allegations of Internal Control Deficiencies Support a Strong Inference of Scienter

Defendants argue that plaintiff's scienter allegations are "belie[d]" (Def. Br. at 14) by the fact that this Complaint involves allegations of internal control deficiencies which do not rise to the level of fraud.[12]  Of course, control deficiencies and resulting restatements underlie some of the largest securities frauds in recent history, including Enron, Tyco, and others. Nevertheless, defendants argue that because they made so-called "disclosures" regarding certain control weaknesses -- which continued to conceal the true, known adverse facts underlying the defendants' scheme to defraud and therefore enabled the fraud to continue unabated prior to the March 1, 2006 announcement of the need to restate – that "[t]he more plausible inference from Terayon's disclosure of certain weaknesses in 2004 and 2005 is that the Company did not believe the weaknesses rendered the financials unreliable."  Def. Br. at 15.  In making this argument, defendants throw the standard on a 12(b)(6) motion out the window and argue that this Court should weigh competing inferences against each other. Plaintiff's well-pleaded allegations to the contrary must be taken as true.  All reasonable inferences are to be drawn in favor of plaintiff.  *Jacobson*, 105 F.3d at 1296.

Finally, defendants argue that they addressed "internal control issues as they became known, including self-investigation, prompt disclosure, full investigation…"  Def. Br. at 15. Of course, this is nothing more than an attempt to rewrite the allegations of the Complaint.

---

[12] Defendants' citation to *In re Hypercom Corp. Sec. Litig.*, No. cv-05-0455-PHX-NVW, 2006 WL 1836181, *9 (D. Ariz. July 5, 2006), for the proposition that internal control weaknesses are not indicative of scienter is undermined by that decision itself which notes that "a lack of internal controls… is considered in combination with other facts to determine whether a plaintiff has alleged facts establishing a strong inference of scienter.  In fact, numerous cases have found internal control deficiencies indicative of scienter.  *E.g.*, *In re Rent-Way Secs. Litig.*, 209 F. Supp. 2d 493, 509 (W.D. Pa. 2002).

Plaintiffs would simply note that courts have held that the failure of a company's internal investigation to turn up fraud is little comfort to investors.[13]    *See, e.g., Intelligroup*, 486 F. Supp. 2d at 684, citing *In re Electronic Data Sys. Com. Sec. & "ERISA" Litig.*, 298 F. Supp. 2d at 560-61 ("defendants cannot escape liability for fraud simply by not admitting the fraud").

### 7.    Allegations that Defendants Had Access To Internal Company Documents Provide Context To Further Support the Above-Discussed Indicia of Fraud

Plaintiff's allegations that defendants had access to internal documents provide contextual background to support the above-discussed indicia of scienter. *See, e.g., In re Adaptive Broadband*, 2002 U.S. Dist. LEXIS 5887 at *49 ("given the sufficiency of the facts supporting the deliberately reckless GAAP violations, it makes no difference that there were no stock sales, or that the Complaint only alludes to internal company reports. These additional facts provide a backdrop for a portrait of fraud, painted in sufficient detail to satisfy the Court that the case is not one of the "fishing expeditions" the PSLRA was designed to discourage. At this stage, taken as true, Plaintiffs' pleadings are sufficient to suggest egregious GAAP violations in necessary detail to support a scienter inference, and therefore a violation of federal securities laws.").

### B.    THE COMPLAINT ADEQUATELY ALLEGES MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMISSIONS

Defendants cherry pick only a handful of plaintiff's myriad materially false and misleading statements and attack them as, alternatively: inactionable "puffery;" protected by

---

[13] Defendants' citation to *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 691 (6th Cir. 2004), where defendants hired an outside consultant to investigate accounting problems is inapplicable. Defendants' RJN 9-11, which are referred to without parentheticals or internal page references to provide any guidance as to why these extensive documents are attached, refer to, *inter alia*, the Restatements, the audit committee's findings, bonuses paid to various insiders, the hiring of new auditors, and a consultant hired solely to "explore alternatives" with respect to the Convertible Subordinated Notes. In fact, the vast majority of 1,000-plus pages of documents attached by defendants as exhibits to this motion are simply referred to generically in various places in their brief with little or no explanation of why they supposedly support any particular proposition.

the so-called "safe harbor" for certain forward-looking statements; not adequately alleged to be false; or, with respect to the convertible subordinated notes, disclosed.[14]

In an attempt to confuse the issue of what constitutes a materially false and/or misleading statement or omission, Defendants attempt to handily dismiss in one fail swoop all of the myriad false and misleading statements **conceded** by Defendants in the Restatements to be materially false and misleading by simply attempting to redirect the Court's attention and punting to an entirely separate issue – whether plaintiff has adequately alleged scienter (Def. Br. at 11). In short, defendants concede, as they must, that all statements that required restating are materially false and misleading, and that the claims stemming from these statements cannot be dismissed on this basis. *See, e.g. "[b]y restating, Terayon recognized that these previous statements were not accurate*." Def. Br. at 11 (emphasis added). *See also In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 486 (S.D.N.Y. 2004) ("the mere fact that financial results were restated is a sufficient basis for pleading that those statements were false when made."); a*ccord Payne v. DeLuca*, 433 F. Supp. 2d 547, 577 (W.D. Pa. 2006); *In re MicroStrategy Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 634-35 (E.D. Va. 2000).

Recognizing they cannot pass the straight face test on the false and misleading nature of the statements that mandated the extensive Restatements of interim and annual financial statements over a lengthy period, defendants instead focus on taking potshots at a small percentage of the statements, hoping to distract the Court from the big picture. As noted in *Sutton v. Bernard*, 2001 U.S. Dist. LEXIS 11610, at *14 (N.D. Ill. 2001), "we need not parse through each and every alleged misstatement contained in the complaint to determine if it is actionable. *It is sufficient for pleading purposes that at least some of the GAAP violations (and other material misstatements and omissions) alleged by plaintiffs are actionable*." (cited in *In re DDi Corp. Sec. Litig.*, 2005 U.S. Dist. LEXIS 28216 (C.D. Cal. July 20, 2005).

---

[14] As a preliminary matter, the determination of whether these statements are materially false and misleading is a factual determination inappropriate at the motion to dismiss stage. *Anderson v. Clow*, 89 F.3d 1399, 1405 (9th Cir. 1996), *cert. denied*, 520 U.S. 1103 (1997).

1   Certainly it is the case here that many of the statements alleged in the complaint are actionable,
2   even if not every single one of the statements alleged, standing on its own, would survive.

3       To illustrate the fact that defendants have focused their attack on only a small portion of
4   plaintiff's actionable statements, leaving the vast majority of them untouched, Exhibit C to the
    Declaration of Kim E. Miller contains a redlined version of the false and misleading statements
5   allegations of the Complaint, revealing that – even if plaintiff conceded that each and every one
6   of the statements that defendants argue constitute "puffery" or are "protected" by the safe
7   harbor were inactionable – which they are not – there is still a large number of actionable false
8   and misleading statements that are not challenged by defendants under their other arguments
9   regarding adequately alleging falsity, or the issue regarding the subordinated notes.   As
10  previously noted, all statements that required restating in the massive Restatements of financial
11  results are false and misleading as a matter of law and cannot be dismissed on this ground.

12          **1.    None of the Statements Alleged Constitutes "Puffery"**

13  "The Court is particularly mindful of the Ninth Circuit's admonition that statements
14  cannot be considered in isolation, but must be considered in the context of the total
15  presentation.  *Hughes v. Dempsey-Tegeler & Co.*, 534 F.2d 156, 176 (9th Cir. 1976)."   In
16  reviewing the statements identified by defendants as "puffery," defendants misleadingly fail to
17  consider these statements in their full context. *See* Exhibit C to Miller Decl. for full context of
18  each such statement as alleged in the Complaint, demonstrating it an integral part of a
19  representation of material fact.

20      The statements at issue are not mere puffery.  As held by the Ninth Circuit in *No. 84*
21  *Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920,
22  935 (9th Cir. 2003), statements are *not* puffery where, as here, a "reasonable investor would
23  consider the potential effects of each of these facts on the overall economic health of the
24  company as significantly altering the 'total mix' of information made available"); *see also*
25  *Kaplan v. Rose*, 49 F.3d 1363, 1375-76 (9th Cir. 1994) (statements that company's competitive
26  position was "strong," "progress is excellent," "our outlook is bright," and "we see increased
    sales activity" are actionable); *Scritchfield v. Paolo*, 274 F. Supp. 2d 163, 175 (D.R.I. 2003)

1   (holding statement that company was "premier provider of high-speed DSL service in the
2   Northeast corridor" is not puffery), cited in *Zack v. Allied Waste Indus.*, 2005 U.S. Dist. LEXIS
3   35323, *32 (D. Ariz. 2005). The statements identified by defendants here as alleged puffery
4   are even more specific than those upheld as material by Courts in this Circuit and in other
5   Circuits. To cite just a single example identified by defendants, ¶ 132 of the Complaint
6   includes a quote from Zaki Rakib identifying specific details regarding the Company's
7   exceeding guidance ("Versus Q2 we grew revenues 23% sequentially, increased our gross
    margins, reduced our operating expenses, and continued to manage the balance sheet closely")
8   and goes on to discuss, *inter alia*, specific issues that will impact the Company and its products
9   ("We believe the cable operators will increasingly compete against the telecom and satellite
10  companies with more service offerings and increased throughput, which we think bodes very
11  well for both DOCSIS2.0 and digital video management system adoption rates into 2004.").
12  Such statements are not immaterial puffery.

13          ## 2. The "Safe Harbor" Does Not Apply

14          Defendants challenge the actionability of statements set forth in a handful of paragraphs
15  of the Complaint (¶¶ 60, 83, 103, 129, 141, 183) on the grounds that "[f]orward-looking
16  statements that are identified as such and accompanied by meaningful cautionary statements are
17  immune from liability under the PSLRA's safe harbor provision." Def. Br. at 10.[15] First, this
18  is an erroneous statement of the law in the Ninth Circuit, which has addressed the concern that
19  under such an interpretation a defendant could make a deliberately false statement so long as it
20  is accompanied by meaningful cautionary language. *See, e.g., No. 84 Employer Teamster Joint*
21  *Council Pension Trust Fund*, 320 F.3d at 936 ("If we allow [defendant] to shield itself from
22  liability based on these statements, any corporation could shield itself from future exposure for
23  past misconduct by making present-tense statements regarding the misconduct and its effects

24  _____

25  [15] As shown by Exhibit A to Miller Decl., it is clear that only a very small number of plaintiff's myriad false and
    misleading statements during the Class Period are challenged on this basis and, once again, defendants have failed
26  to analyze them in context and have isolated particular snippets, despite the fact that "a court must appraise a
    misrepresentation or omission in the complete context in which the author conveys it." *In re Donald J. Trump
    Casino Sec. Litig.*, 7 F.3d 357, 369 (3d. Cir. 1993).

LEAD PLAINTIFFS MEMORANDUM
OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION OF TERAYON
COMMUNICATION SYSTEMS, INC. AND INDIVIDUAL DEFENDANTS TO DISMISS
AMENDED CLASS ACTION COMPLAINT [**CIVIL DOCKET NO. 3-06-CV-3936
MJJ** - 20]

on the corporation.")  As a result, the Ninth Circuit has held that the two prongs of the Safe

Harbor – the first prong relating to whether the statement is forward-looking and accompanied

by meaningful cautionary language, and the second prong requiring that plaintiff state

particular facts giving rise to a strong inference that the defendants acted with "actual

knowledge"-- must be applied independently.  *Employers Teamsters Local Nos. 175 and 505

Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125 (9th Cir. 2004).[16]

Defendants' statements are *not* protected by the safe harbor because, to the extent that

any such statements are forward-looking, the cautionary statements are not meaningfully tied to

the statements, but rather constitute generalized boilerplate that does not warn of adverse,

known facts.  In fact, for every statement identified by defendants as forward-looking, the so-

called "cautionary language" is merely a laundry list of generic, boilerplate "risk factors"

repeated in the Company's SEC filings or noted at the beginning of conference calls.  *See

generally* Def. Appendix B.  For example, Def. Appendix B at p. 8, quotes paragraph 183 of

Complaint that "Our restructuring activities and increased focus on cost management in 2004

will greatly benefit the company as we drive operations to positive net income…we expect to

deliver profitable top line growth to achieve net income profits and positive cash flow

generation." The generic, repetitious boilerplate provided does not warn investors of the

adverse known facts that this "restructuring" could not succeed because, among other things, as

defendants well knew, the Company had grossly inadequate internal controls that were not

effective and did not prevent material fraud in the presentation of financial results; the

Company's financial statements did not comply with GAAP and SEC rules; and the Company

did not effectively monitor and adjust reserves related to its restructuring charges during the

Class Period and over accrued reserves related to legal fees, taxes and other liabilities owed to

third-party vendors. ¶64(c), (d), (i).  *See Rubinstein v. Collins*, 20 F.3d 160, 171 (5th Cir. 1994)

---

[16] *See also In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d at 368 ("We have squarely held that  opinions, predictions and other forward-looking statements are not per se inactionable under the securities laws.  Rather, such statements of 'soft information' may be actionable misrepresentations if the speaker does not genuinely and reasonably believe them.")

("the inclusion of general cautionary language regarding a prediction would not excuse the alleged failure to reveal known, material, adverse facts." [17]

### 3. Materially False and Misleading Statements and Omissions are Alleged Regarding Resignations and Restructuring

Defendants argue that "statements about certain executive resignations, the Company's change in auditor, and plans for corporate restructuring" are not alleged to be false. (Def. Br. at 10-11)  This is not true. Plaintiff has alleged a massive fraudulent scheme during which defendant insiders (first CFO Lustenader after phase I of the fraud failed, and then, after phase II failed: CEO Zaki Rakib, COO Sabella, CFO Taylor, and finally President and CTO Shlomo Rakib) all resigned when the scheme began to unravel, which departures were explained away as defendants' desires to pursue other interests and the like when in truth they had decided to bail out on a failing scheme. *See, e.g.*, 18, 19, 20, 31, 32, 64, 238-244.  Similarly, plaintiff has alleged that the real reasons for the resignation of defendant E&Y were concealed based on, *inter alia*, the Restatements themselves and the information from a former Terayon accountant regarding the Company's dealings with E&Y, the numerous red flags, and the Earlier Securities Fraud Action.  *See, e.g.*, ¶¶ 5, 7, 49-59, 64, 238-244.  The restructuring statements are adequately alleged to be false based on the concededly ineffective monitoring and adjustment of reserves related thereto during the Class Period. ¶ 64(i), 234.

### 4. The Complaint Adequately Alleges False and Misleading Statements and Omissions Concerning the Convertible Subordinated Notes

Plaintiffs have adequately alleged that defendants omitted to disclose that its oft-discussed Convertible Subordinated Notes contained a contingent put which provided that in the event of default, the Notes could become due and immediately payable, as well as two additional embedded derivatives that did not comply with SFAS 133.  *See, e.g.*, ¶ 68.  In response, defendants have submitted a hefty document in the RJN that is approximately 350

---

[17] Even if the Court were to determine that any such statements are in fact forward-looking and contain meaningful cautionary language, for the reasons discussed in Section A, *supra*, plaintiff has adequately pleaded actual knowledge of the defendants that each of these statements was materially false and misleading when made.

pages long that they say disclosed "all the terms of the contingent put."[18]  Def. Br. at 11.
Tellingly, defendants do not cite any particular language from this document.  Instead, they
point cite a section of it, providing no discussion or analysis.  Apparently plaintiff and all
investors are expected to have distilled this document down to its core and found whatever
particular language defendants are supposedly referring to.  Defendants cannot be permitted to
repeatedly tout to investors the benefits of their "$500 million of 5% Convertible Subordinated
Notes due in August 2007…" without explaining the very real risk – which ultimately
transpired – that made the Notes payable in full upon an earlier default.  Even assuming that the
relevant language could be properly parsed even if it were located by an investor – which
plaintiff contends is not the case, by hiding this supposed "disclosure" in a massive, complex S-
3 filing, defendants are not disclosing the risk, they are perpetrating the fraud.  *See, e.g.*, *In re
Allscripts Sec. Litig.*, 2001 U.S. Dist. LEXIS 8897, *17 (N.D. Ill. June 28, 2001) ("Nor should
management 'bury the shareholders in an avalanche of trivial information – a result that is
hardly conducive to informed decisionmaking.'" quoting *TSC Indus., Inc. v. Northway, Inc.*,
426 U.S. 438-49 (1976).  *See also Greenapple v. Detroit Edison Co.*, 618 F.2d 198, 205 (2d
Cir. 1980 (where method of presentation or "gloss" placed on information obscures or distorts
significant material facts, it is misleading).

 The reality is, the market was unaware that this secret provision existed until defendants
were forced to admit it in January of 2006 – which they managed to do in a single paragraph
(*see* ¶ 230) and which formed the first of the three Class Period curative disclosures which
promptly caused the stock price to plummet as the market digested previously-concealed news.

### C.    LEAD PLAINTIFF HAS ADEQUATELY PLEADED LOSS CAUSATION

 Plaintiff has adequately alleged loss causation.  In *Dura*, 544 U.S. 336, the Supreme
Court held that in order to allege loss causation a plaintiff must allege "the traditional elements
of causation and loss."  *Id*. at 347.  The Supreme Court found that a complaint failed to allege
loss causation where it failed "to claim that Dura's share price fell significantly after the truth

---

[18] Defendants do not dispute that the other statements/omissions regarding the Notes' improper embedded
derivatives are adequately pleaded.

became known…" *Id*. *Dura* further noted that the "complaint nowhere else provides the defendants with notice of what the relevant economic loss might be or of what the causal connection might be between that loss and the misrepresentation concerning Dura's 'spray device.'" *Id*.

Plaintiff has complied with *Dura*. The Complaint is replete with numerous allegations detailing the causal connection between defendants' misrepresentations and class members' economic loss (*e.g.*, ¶¶ 247-253; 225-234). There are at least three partial disclosures alleged during the Class Period, culminating in the March 1, 2006 disclosure that Restatements were necessary. The first partial disclosure occurred on November 7, 2005, (¶ 225) when defendants issued a release announcing the Company would delay its third quarter financials and may have recognized revenue from a single customer in violation of GAAP. The next day, shares of Terayon stock trade to a low of $2.17 from the prior day's close of $2.57, a 35% decline from the high of $3.50 two weeks earlier on October 18, 2005. *See* Miller Decl. Ex. D. The second partial disclosure occurred on January 10, 2006, when the Company announced that Terayon had received a letter from the NASDAQ regarding the Company's delisting and that the Company was in violation of its Indenture agreement with respect to the Notes and that default could require immediate payment. (¶ 230). Shares traded from $2.13 on January 9, 2006 to below $1.65 on January 17, 2006, as the significance of the information is digested by the market, a 24% decline. *See* Miller Decl. Ex. E. Finally, the Complaint alleges the final Class Period disclosure regarding the Restatements on March 1, 2006. Shares trade from a high of $2.82 on March 1, 2006 to a low of $2.16 on March 2, 2006, a 23.4% decline. *See* Miller Decl. Ex. F. Because there are over 77.637 million shares outstanding, a $0.50 decline in share price is approximately a $35 million reduction in market capitalization.

Plaintiff specifically alleges in detail an immediate 13% drop as a direct result of the March 1, 2006 announcement. *See* ¶ 250. These allegations readily comply with *Dura* and are further supported by the Ninth Circuit's decision in *In re Daou Sys. Inc.*, 411 F.3d at 1025-1027 (upholding loss causation allegations where plaintiff alleged there was a steep drop in defendants' stock price upon relevation of previously-undisclosed facts).

1    In addition, the Complaint further details the reasons that the drop was caused by

2   defendants' disclosures, rather than external market factors. *E.g.*, ¶ 252. These allegations are

3   more than sufficient to adequately allege loss causation.

4        Other than *Dura*, Defendants cite only two cases in support of their argument that

5   plaintiff has failed to adequately plead loss causation. Both of these decisions, *In re Redback*

6   *Networks, Inc. Sec. Litig.*, 2006 U.S. Dist. LEXIS 47055 (N.D. Cal. 2006) and *In re Verisign*,

7   2005 U.S. Dist. LEXIS 44391 (N.D. Cal. Nov. 2, 2005), are expressly noted as "NOT FOR

8   CITATION." These cases have no precedential value and defendants' citations to them

9   constitute a direct violation of the Local Rules and any arguments stemming therefrom should

10  be disregarded by the Court.[19]

### D.    THE COMPLAINT ADEQUATELY ALLEGES CONTROL PERSON CLAIMS PURSUANT TO 20(a)

12   Defendants contend that control person liability under Section 20(a) of the Exchange

13  Act does not apply because no primary violation has been sufficiently alleged. However, as

14  shown above, plaintiff's Section 10(b) claims are sustainable, and the control person claims

15  should also be upheld. In addition, scienter is not an element of the control person claims.

16  Instead, "it is the alleged controlling person who has the burden of showing that he acted in

17  good faith, and so did not share in the scienter required for liability under Section 10(b).

---

19  [19] Even if the Court were to consider defendants' arguments in reliance on these impermissibly cited cases, the arguments fail. Defendants' argument that the explosive March 1, 2006 revelation was limited to "only one accounting issue" "relating to a single customer" (Def. Br. at 24) is wrong. This revelation was interpreted by the market as a crushing blow, as the large volume of trading and 13% drop indicate. In truth, it was a concession that the Company's entire enterprise was a failure and could never recover from the stock decline that began in 2000. By the time the ultimate post-Class Period announcements disclosed the full scope of the fraud, they had virtually no impact on the stock price because it simply confirmed what the market had already gleaned: that this Company's fraud had long since destroyed the Company. Defendants' argument that defendants are not responsible for the losses that occurred prior to the March 1, 2006 announcement because the stock price had already fallen also fails. First, there were three curative Class Period disclosures alleged. Further, as discussed in detail above, plaintiff has readily complied with *Dura's* requirements to allege causation and economic loss. Where, as here, plaintiff has passed that hurdle and adequately alleged loss causation, it is a question of fact for the jury to determine the extent of that loss and whether defendants' elaborate scheme to defraud plaintiff and the Class by attempting, but ultimately failing, to push the price of the stock well above the Class Period high of $14.15 per share, and ultimately causing the stock to plummet to below $2.00/share when the true facts underlying the fraud were ultimately revealed.

*Kaplan*, 49 F.3d at 1382 (citing *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1575 (9th Cir. 1990); *Arthur Children's Trust v. Keim*, 994 F.2d 1390, 1398 (9th Cir. 1993).

## CONCLUSION

For the foregoing reasons, the motion to dismiss filed by Terayon and the Individual Defendants should be denied in its entirety.[20]

Dated:  April 23, 2007                         Respectfully submitted,

                                    **/s/ Kim E. Miller**
                                    Michael A. Swick
                                    Kim E. Miller (178370)
                                    **KAHN GAUTHIER SWICK, LLC**
                                    12 E. 41st St., Ste. 1200
                                    New York, New York  10017
                                    Tel: 212.696.3730
                                    Fax: 504.455.1498

                                    **KAHN GAUTHIER SWICK, LLC**
                                    Lewis S. Kahn
                                    650 Poydras Street, Ste 2150
                                    New Orleans, LA  70130
                                    Tel: 504.455.1400
                                    Fax: 504.455.1498

                                    **SAXENA WHITE P.A.**
                                    Maya Saxena
                                    Joseph White
                                    2424 N. Federal Highway, Ste. 2150
                                    Boca Raton, FL  33431
                                    Tel: 561.394.3399
                                    Fax: 561.394.3382

                                    **Lead Counsel for Lead Plaintiff**
                                    **and the Class**

                                    **BRAUN LAW GROUP, P.C.**
                                    Michael D. Braun (167413)
                                    12400 Wilshire Blvd., Ste. 920

---

[20] In the event that the Court determines that all or any portion of this Complaint should be dismissed, Lead Plaintiff respectfully requests leave to replead under the liberal standard of Fed. R. Civ. P. Rule 15.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Los Angeles, CA  90025
Tel: 310.422.7755
Fax: 310.442.7756
**Liaison Counsel for Lead Plaintiff
and the Class**

## PROOF OF SERVICE

1

STATE OF LOUISIANA        )
2                                    )ss.:
PARISH OF ORLEANS       )
3

4        I am employed in the parish of Orleans, State of Louisiana, I am over the age of 18 and not a party to the within action; my business address is 650 Poydras Street, Suite 2150, New Orleans, LA 70130.

5

6        On April 23, 2007, using the Northern District of California's Electronic Case Filing System, with the ECF ID registered to Kim E. Miller, I filed and served the document(s) described as:

7

8        **LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION OF TERAYON COMMUNICATION SYSTEMS AND INDIVIDUAL DEFENDANTS TO DISMISS AMENDED CLASS ACTION COMPLAINT**

9

10        The ECF System is designed to automatically generate an e-mail message to all parties in the case, which constitutes service.  According to the ECF/PACER system, for this case, the parties served are as follows:

11

12 Michael D. Braun, Esq.                             service@braunlawgroup.com

13 Lionel Z. Glancy, Esq.                               info@glancylaw.com

14 Michael M. Goldberg, Esq.                        info@glancylaw.com

15 **Counsel for Plaintiffs**

16 Patrick Edward Gibbs, Esq.                     patrick.gibbs@lw.com
                                                         zoila.aurora@lw.com

17 **Counsel for Defendant**
**Terayon Communications Systems, Inc.**
**and Individual Defendants**

18

19 Sheila Anil Jambekar, Esq.                    sjambekar@morganlewis.com

20 **Counsel for Defendant Ernst & Young LLP**

21        On April 23, 2007, I served the document(s) described as:

22        **LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION OF TERAYON COMMUNICATION SYSTEMS AND INDIVIDUAL DEFENDANTS TO DISMISS AMENDED CLASS ACTION COMPLAINT**

23

24 by placing a true copy(ies) thereof enclosed in a sealed envelope(s) addressed as follows:

25 Maya Saxena, Esq.
Joseph E. White, III., Esq.
26 SAXENA WHITE P.A.
2424 North Federal Highway, Suite 257

1   Boca Raton, FL 33431
    Tel:    (561) 394-3399
2   Fax:    (561) 394-3382

3   Michael A. Swick, Esq.
    Kim E. Miller, Esq.
    KAHN GAUTHIER SWICK, LLC
4   114 E. 39th Street
    New York, NY 10016
5   Tel:    (212) 920-4310
    Fax:    (504) 455-1498

6
    **Lead Counsel for Plaintiff and the Class**
7
    Bruce M. Cormier, Esq.
8   Joel E. Bonner, Esq.
    ERNST & YOUNG LLP
9   1225 Connecticut Avenue, NW
    Washington, D.C. 20036
10  Tel:    (202) 327-7603
    Fax:    (202) 327-7601

11
    **Counsel for Defendant**
12  **Ernst & Young LLP**

13          I served the above document(s) as follows:

14          BY MAIL.  I am familiar with the firm's practice of collection and processing
    correspondence for mailing.  Under that practice it would be deposited with U.S. postal service
15  on that same day with postage thereon fully prepaid at New Orleans, Louisiana in the ordinary
    course of business.  I am aware that on motion of the party served, service is presumed invalid
16  if postal cancellation date or postage meter date is more than one day after date of deposit for
    mailing in an affidavit.

17          I declare, pursuant to Civil L.R. 23-2, that on the date hereof I served a copy of the
18  above-listed document(s) on the Securities Class Action Clearinghouse by electronic mail
    through the following electronic mail address provided by the Securities Class Action
19  Clearinghouse:

20                          **scac@law.stanford.edu**

21          I am employed in the office of a member of the bar of this Court at whose direction the
    service was made.

22          I declare under penalty of perjury under the laws of the United States that the above is
23  true and correct.

24          Executed on April 23, 2007, at New Orleans, Louisiana 70130.

25                                          /S/ CATHERINE R. GAUTHIER
                                            Catherine R. Gauthier
26

LEAD PLAINTIFFS MEMORANDUM
OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION OF TERAYON
COMMUNICATION SYSTEMS, INC. AND INDIVIDUAL DEFENDANTS TO DISMISS
AMENDED CLASS ACTION COMPLAINT [**CIVIL DOCKET NO. 3-06-CV-3936
MJJ - 29**]