1    Michael D. Braun (CA Bar #167416)
     BRAUN LAW GROUP, P.C.
2    12400 Wilshire Blvd., Suite 920
     Los Angeles, CA 90025
3    Tel:     (310) 442-7755
     Fax:     (310) 442-7756
4
    **Liaison Counsel for Plaintiff and the Class**
5

6    Maya Saxena                          Michael A. Swick
     Joseph E. White III                  Kim E. Miller (CA Bar #178370)
7    SAXENA WHITE P.A.            KAHN GAUTHIER SWICK, LLC
     2424 North Federal Highway, Suite 257     12 East 41st St., 12th Floor
     Boca Raton, FL 33431              New York, NY 10017
8    Tel:     (561) 394-3399           Tel:     (212) 696-3730
     Fax:     (561) 394-3382           Fax:     (504) 455-1498
9
     Lewis Kahn
10   KAHN GAUTHIER SWICK, LLC
     650 Poydras Street, Suite 2150
11   New Orleans, LA 70130
     Tel:     (504) 455-1400
12   Fax:     (504) 455-1498

13   **Lead Counsel for Plaintiff and the Class**

14

15                **UNITED STATES DISTRICT COURT**

16             **NORTHERN  DISTRICT OF CALIFORNIA**

17

18   ADRIAN MONGELI, Individually, And    )     **CASE NO.: 3-06-CV-03936 MJJ**
     On Behalf Of All Others Similarly Situated, )
19                               )     <u>**CLASS ACTION**</u>
                               )
20              Plaintiff,         )     **LEAD PLAINTIFF'S MEMORANDUM OF**
                               )     **POINTS AND AUTHORITIES IN**
21       vs.                       )     **OPPOSITION TO MOTION OF ERNST &**
                               )     **YOUNG TO DISMISS AMENDED CLASS**
22   TERAYON COMMUNICATION       )     **ACTION COMPLAINT**
     SYSTEMS, INC., ZAKI RAKIB, JERRY   )
23   D. CHASE, MARK A. RICHMAN,      )     **DATE:**     **July 24, 2007**
     EDWARD LOPEZ, RAY FRITZ,  CAROL )    **TIME:**     **9:30 A.M.**
24   LUSTENADER, MATTHEW MILLER,     )     **CTRM:**     **11, 9th Floor**
     SHLOMO RAKIB, DOUG SABELLA,     )
25   CHRISTOPHER SCHAEPE, MARK      )
     SLAVEN, LEWIS SOLOMON, HOWARD )
26   W. SPEAKS, ARTHUR T. TAYLOR,     )
     DAVID WOODROW, and ERNST &      )
27   YOUNG, LLP                     )
                               )
28            Defendants.       )
                               )

1

## TABLE OF CONTENTS

2

3   TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

4   I.    PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5   II.   STATEMENT OF ISSUE PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

6   III.  STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

7   IV.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

8         A.   Plaintiff Has Properly Pled Violations of the Exchange Act
               Against E&Y . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
9
          B.   Plaintiff's Allegations Raise a Strong Inference of Scienter . . . . . . . . . . . . . . . . . . 6
10
               1.   E&Y Had Motive to Participate in the Terayon Accounting
11                  Fraud . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

12             2.   Plaintiff's Allegations of E&Y's Role in the Scheme
                    Satisfy the Scienter Pleading Requirement . . . . . . . . . . . . . . . . . . . . . 9
13
               3.   The Terayon Insiders' Sales Support a Strong Inference of Scienter . . . . . 11
14
               4.   Allegations Based on Statements from a Former Employee
15                  in the Accounting Department Support a Strong Inference of
                    Scienter . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
16
               5.   E&Y's Knowledge or Reckless Disregard of Terayon's
17                  Problems May Be Inferred from E&Y's Failure to Recognize
                    and Respond to Red Flags . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
18
               6.   E&Y's Failure to Follow GAAP Provides Independent
19                  Proof of Scienter . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

20  V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

21

22

23

24

25

26

27

28

i

1

## TABLE OF AUTHORITIES

2

3

## FEDERAL CASES

4
*CMNY Capital, L.P. v. Deloitte & Touche,*
821 F. Supp. 152 (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

5

*In re Consol. Capital Sec. Litig.,*
6
1990 U.S. Dist. LEXIS 19864 (N.D. Cal. Feb. 26, 1990) . . . . . . . . . . . . . . . . . . . . . . . . . 4

7
*In re Cylink Sec. Litig.,*
178 F. Supp. 2d 1077 (N.D. Cal. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

8

*DSAM Global Value Fund v. Altris Software, Inc.,*
9
288 F.3d 385 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

10
*Danis v. USN Communs., Inc.,*
73 F. Supp. 2d 923 (N.D. Ill. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

11

*In re Dura Pharms., Inc. Sec. Litig.,*
12
452 F. Supp. 1005 (S.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

13
*Eminence Capital, L.L.C. v. Aspeon, Inc.,*
316 F.3d 1048 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

14

15
*In re First Merchs. Acceptance Corp. Sec. Litig.,*
1998 U.S. Dist. LEXIS 17760, (N.D. Ill. Nov. 4, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . 14

16
*In re Fleming Cos. Secs. & Derivative Litig.,*
2004 U.S. Dist. LEXIS 26488 (E.D. Tex. June 10, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . 7

17

18
*Hall v. City of Santa Barbara,*
833 F.2d 1270 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

19
*In re Homestore.com, Inc. Sec. Litig.,*
252 F. Supp. 2d 1018 (C.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

20

21
*Lilley v. Charren,*
936 F. Supp. 708 (N.D. Cal. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

22
*In re McKesson Hboc, Inc. Sec. Litig.,*
126 F. Supp. 2d 1248 (N.D. Cal. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

23

24
*Miller v. Material Scis. Corp.,*
9 F. Supp. 2d 925 (N.D. Ill. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

25
*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. West Holding Corp.,*
320 F.3d 920 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6, 10

26

27
*Novak v. Kasaks,*
216 F.3d 300 (2d. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

28

ii

*In re Nuko Info. Sys., Inc. Sec. Litig.,*
199 F.R.D. 338 (N.D. Cal. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Ponce v. S.E.C.,*
345 F.3d 722 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Rehm v. Eagle Fin. Corp.,*
954 F. Supp. 1246 (N.D. Ill. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Ronconi v. Larkin,*
253 F.3d 423 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re Silicon Graphics Sec. Litig.,*
183 F.3d 970 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6

*In re SmarTalk Teleservs., Inc. Sec. Litig.,*
124 F. Supp. 2d 505 (S.D. Ohio 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Software Toolworks, Inc.,*
50 F.3d 615 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Stone & Webster, Inc., Sec. Litig.,*
414 F.3d 187 (1st Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Transcrypt Int'l Sec. Litig.,*
1999 U.S. Dist. LEXIS 17540 (D. Neb. Nov. 4, 1999) . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Wells Fargo Sec. Litig.,*
12 F.3d 922 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re WorldCom, Inc. Sec. Litig.,*
2003 U.S. Dist. LEXIS 10863 (S.D.N.Y. June 25, 2003) . . . . . . . . . . . . . . . . . . . . 8, 10

*In re Worlds of Wonder Sec. Litig.,*
35 F.3d 1407 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**FEDERAL STATUTES**

15 U.S.C. § 78u-4(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

15 U.S.C. § 78u-4(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

1   Plaintiff Adrian Mongeli ("Plaintiff") respectfully submits his Memorandum of Points and
2   Authorities in Opposition to the Motion of Ernst & Young, LLP ("E&Y") to Dismiss the Amended
3   Class Action Complaint ("Complaint").

4   **I.    PRELIMINARY STATEMENT**

5   In its Memorandum of Points and Authorities in Support of Its Motion to Dismiss the Amended
6   Class Action Complaint ("E&Y's Brf."), E&Y argues that the Complaint should be dismissed because
7   Plaintiff has failed to plead particularized facts giving rise to a strong inference that E&Y acted with
8   scienter, as required under the Private Securities Litigation Reform Act of 1995 ("PSLRA"). E&Y's
9   motion to dismiss should be denied in its entirety because Plaintiff has adequately alleged all of the
10  required elements for claims under the Securities Exchange Act of 1934 ("Exchange Act") and has pled
11  particularized facts giving rise to a strong inference that E&Y acted with scienter with respect to its
12  participation in the accounting fraud at Terayon Communication Systems, Inc. ("Terayon" or "the
13  Company), as required by the PSLRA.

14  Plaintiff asserts that E&Y, Terayon's independent outside auditor, participated in a scheme to
15  defraud the Company's shareholders who purchased Terayon securities between June 28, 2001 and
16  March 1, 2006 (the "Class Period"). Plaintiff contends that during the Class Period, Defendants
17  knowingly or recklessly published a series of statements which were materially false and misleading
18  at the time of such publication, and which omitted information necessary to legitimize Defendants'
19  statements in light of such omissions. Plaintiff further alleges that several individual defendants
20  engaged in improper insider sales, collectively reaping millions of dollars in proceeds at the direct
21  expense of Plaintiff and the class.

22  Within the Class Period and until its surprising resignation as Terayon's auditor in September
23  2005, E&Y was a necessary, indeed critical, aid in Terayon's fraudulent scheme to artificially inflate
24  the stock price of the Company through materially false and misleading statements with respect to
25  purported record-setting financial results and projections. In truth, these results were attributable to
26  improper accounting practices – including improper revenue recognition – which resulted in a
27  significant and material overstatement of Terayon's revenues.

28

1

1    Although obvious warning signs of these improper accounting practices abounded, E&Y
2    intentionally or with deliberate recklessness ignored the "red flags" that were present at Terayon prior
3    to and during the Class Period. These warning signs included, among others, an earlier settlement of
4    a securities fraud action involving the same cast of characters ("Terayon Earlier Securities Fraud
5    Action"), numerous GAAP violations, suspicious insider sales amounting to nearly $4 million in
6    proceeds, resistance to application of correct accounting principles which would have had a negative
7    effect on financial results, as well as a complete lack of internal controls and procedures, ultimately
8    leading to a formal SEC investigation, the delisting of Terayon from the NASDAQ, and a restatement
9    of 72 months' worth of financial results. Had E&Y fulfilled its obligations as Terayon's independent
10   outside auditor, such "red flags" would have raised E&Y's suspicions and would have forced it to
11   conduct significant testing and review of Defendants' financial disclosures and reports.

12   Despite the prevalence of these warning signs, and in violation of its duties as an independent
13   outside auditor, E&Y failed to ask the appropriate and necessary questions which a reasonable and
14   independent auditor would inquire in the course of due diligence, failed to disclose any material
15   problems with Terayon's financial reporting until just months prior to its abrupt resignation, and failed
16   to deliver a public objection to the Company's characterization of certain control deficiencies as one-
17   time events that had already been substantially remedied or cured, and that were not expected to
18   continue to have a material impact on the Company or its financial reporting.

19   Because E&Y was the sole independent auditor during the majority of the Class Period, class
20   members relied on the veracity of E&Y's confirmations that Terayon was reporting accurate financial
21   results in accordance with GAAP when they purchased Terayon securities. Investors relied on those
22   results, confirmed by E&Y, showing that the Company's business was growing in key areas. As a
23   result, class members suffered millions of dollars in losses when they learned that Terayon had been
24   reporting false and misleading financial results throughout the Class Period with E&Y's full knowledge
25   and participation.

26   ///

27   ///

28   ///

2

1    **II.    STATEMENT OF ISSUE PRESENTED**

2          Whether the Complaint adequately states claims under the Exchange Act against E&Y where

3    the alleged material misrepresentations and omissions of E&Y, along with its intentional or deliberately

4    reckless ignorance of obvious "red flags" concerning Terayon's fraudulent accounting practices and

5    improper insider sales, when taken as a whole, support a strong inference of scienter.

6    **III.    STANDARD OF REVIEW**

7          Motions to dismiss are viewed with disfavor and particular skepticism to ensure that plaintiffs

8    are not denied a full and fair opportunity to present their claims. *Hall v. City of Santa Barbara*, 833

9    F.2d 1270, 1274 (9th Cir. 1986). In considering a motion to dismiss, all allegations of material facts

10   in the complaint are taken as true and construed in the light most favorable to the plaintiff. *In re Silicon*

11   *Graphics Sec. Litig.*, 183 F.3d 970, 983 (9th Cir. 1999). A complaint should not be dismissed unless

12   it appears beyond a doubt that the plaintiff cannot prove any set of facts in support of the claim that

13   would entitle him to relief. *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. West*

14   *Holding Corp.*, 320 F.3d 920, 931 (9th Cir. 2003). The Court cannot parse and dismiss each allegation

15   one by one. Rather, it must determine whether in the final analysis, "*the total of plaintiffs' allegations*

16   . . . [is] sufficient to create a strong inference that defendants acted with deliberate or conscious

17   recklessness." *In re Dura Pharms., Inc. Sec. Litig.*, 452 F. Supp. 1005, 1017 (S.D. Cal. 2006)

18   (emphasis added) (quotations and citations omitted).

19   **IV.    ARGUMENT**

20        **A.    Plaintiff Has Properly Pled Violations of the Exchange Act Against E&Y**

21        E&Y argues that Plaintiff failed to properly plead claims against E&Y for violations of Section

22   10(b) of the Exchange Act because he has failed to particularize his charge of fraud under Rule 9(b) and

23   failed to plead facts giving rise to a strong inference that E&Y acted with scienter. E&Y's Brf. at 5.

24   E&Y's argument is untenable because, as set forth in greater detail below, Plaintiff has pled facts in

25   support of his allegations sufficient to satisfy the pleading standards of the PSLRA.[1]

26

27        [1] E&Y has joined in the Motion to Dismiss of Terayon Communication Systems, Inc. and

28   the Individual Defendants with respect to the loss causation arguments presented therein. (E&Y's
     Brf. at 1). Accordingly, Plaintiff incorporates by reference Section IV.C of his Opposition to the

3

1    Pursuant to the PSLRA, a complaint must specify each statement alleged to have been

2    misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the

3    statement or omission is made on information, the complaint shall state with particularity all facts on

4    which the belief is formed. *See* 15 U.S.C. § 78u-4(b)(1). By alleging with particularity E&Y's

5    materially misleading statements and omissions that allowed Terayon to publish projections and

6    financial results that were seriously flawed, misleading and lacking in rational basis, Plaintiff has met

7    his pleading burden under the PSLRA.

8    Plaintiff alleges that, during the Class Period, Defendants published a series of statements which

9    were materially false and misleading when published, and which omitted information necessary to make

10   Defendants' statements not materially false and misleading. Plaintiff further contends that at the time

11   these false and misleading statements were being issued throughout the Class Period – which artificially

12   inflated the price of Terayon stock – several of the individual defendants were engaging in improper

13   insider sales, collectively reaping millions of dollars in proceeds at the direct expense of the class

14   members. Despite E&Y's obligations as Terayon's outside auditor to properly test and review the

15   Company's disclosures and reports, and disclose any material problems with the Company's financial

16   reporting, E&Y intentionally or with deliberate recklessness ignored the numerous "red flags" that

17   surrounded Terayon during the Class Period. These improprieties were clear warning signs which

18   should have raised E&Y's suspicions in order to protect the interests of the investing public.

19   E&Y cites cases and articulates relevant pleading principles but offers no meaningful analysis

20   of the facts alleged in the Complaint. It is not enough for E&Y to simply quote legal standards; it must

21   analyze the totality of the allegations related to its conduct. Moreover, E&Y conveniently glosses over

22   a number of significant allegations that support a strong inference of scienter.

23

24   Motion to Dismiss of Terayon Communication Systems, Inc. and the Individual Defendants, Docket

25   No. 53. Furthermore, Defendants' and E&Y's loss causation defense is fact-sensitive and cannot be
     appropriately determined at this stage of the proceedings. *See In re Consol. Capital Sec. Litig.*, No.

26   C 85 7332 AJZ, 1990 U.S. Dist. LEXIS 19864 (N.D. Cal. Feb. 26, 1990); *Lilley v. Charren*, 936 F.

27   Supp. 708, 718 (N.D. Cal. 1996) ("Plaintiffs allege that as a result of false and misleading
     statements Kenetech securities were artificially inflated in price for two years, and include other

28   allegations relating to causation throughout the complaint. At this preliminary pleading stage, these
     allegations are sufficient") (citations omitted).

                                                        4

1    E&Y's argument fails because Plaintiff has identified, in significant detail, the material

2    misrepresentations, omissions and violations that E&Y committed during the Class Period:

3         -    Throughout the Class Period, E&Y knew that its audit reports would be
              disseminated to and relied upon by investors, and that it owed duties to
4              Terayon's investors as the outside independent auditor for the Company. (*See,
              e.g.*, ¶¶ 16, 49).
5

6         -    The allegations of fraud and misrepresentation in the Terayon Earlier Securities
              Fraud Action raised significant red flags and ongoing concerns regarding the
7              accuracy and completeness of the Company's disclosures and the adequacy of
              the Company's controls and procedures, and these red flags should have caused
8              E&Y to approach Terayon's audits with a very high level of skepticism and to
              critically approach Defendants' disclosures and representations – especially
9              those related to revenues and related-party transactions. (*See, e.g.*, ¶¶ 46-49).

10

11        -    E&Y knew or recklessly disregarded that the Terayon insiders' stock sales were
              highly unusual in their timing and amounts, and ignored these obvious
12             cautionary signs that would have allowed it to uncover Defendants' accounting
              fraud. (*See, e.g.*, ¶¶ 3, 50-51, 263-64).

13

14        -    A former Terayon employee in the accounting department during the Class
              Period revealed that E&Y "was not clean on this stuff", "virtually closed the
15             books for year end 2001 and 2000 – a 'no-no'", "did not try to learn the
              Company's business", provided recommendations on goods received but not
16             invoiced that were "not valid – they should have been amortized over time",
              provided invalid instructions with respect to the Thomson transaction in order
17             to appease Terayon's desire to recognize the revenue from the transaction
              immediately, failed to ask the appropriate and necessary questions in the course
18             of its due diligence, failed to insist on the application of SOP 97-2 with regard
              to software revenue recognition, did not focus on the Terayon account and did
19             not have any material discussions with the vice president of Terayon who ran
              each of its three business areas. (*See, e.g.*, ¶¶ 52-55).

20

21        -    E&Y was motivated to conceal the Defendants' accounting fraud because the
              auditor did not want to lose millions of dollars in professional fees from the
22             Terayon account, nor risk having the reputation of exposing its own clients to
              regulatory, civil or criminal sanctions, thereby potentially costing it future clients
23             and revenue. (*See, e.g.*, ¶¶ 5, 17, 57-58).

24        -    E&Y's statements and confirmations contained in Terayon's SEC filings during
              the Class Period were each materially false and misleading when made because
25             the financial statements, projections and operations reports were *not* true,
              accurate or reliable, the financial statements were *not* GAAP compliant,
26             Terayon's internal financial accounting and disclosure controls were grossly
              inadequate and ineffective, E&Y failed to properly test such internal controls
27             and procedures, and Terayon's internal control deficiencies were material and
              pervasive. (*See, e.g.*, ¶¶ 1, 2, 4, 5, 17, 59, 64, 148, 149, 195).

28

5

1    Accordingly, the Complaint identifies with particularity E&Y's duties as the independent

2    outside auditor for Terayon, the warning signs that E&Y ignored which would have led a reasonably

3    independent and unbiased outside auditor to uncover Defendants' accounting fraud, the particulars of

4    the statements and omissions at issue in the Complaint, the documents in which these statements were

5    contained, and the reasons why the statements were false and misleading.

6    **B.    Plaintiff's Allegations Raise a Strong Inference of Scienter**

7    The PSLRA requires a plaintiff to "state with particularity facts giving rise to a strong inference

8    that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). In this Circuit, the

9    "required state of mind" is one of "deliberate or conscious recklessness." *Silicon Graphics*, 183 F.3d

10    at 979. Scienter may be inferred from the same set of facts that allege the falsity of the relevant

11    statements. *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2002) (pleading requirements under the

12    PSLRA can be collapsed into a single inquiry because analysis of both requirements involves the same

13    set of facts). Drawing all reasonable inferences in favor of the plaintiff, the court can then "answer the

14    larger question of whether [the] complaint, considered in its entirety, states facts which give rise to a

15    strong inference of deliberate recklessness," or knowledge. *Silicon Graphics*, 183 F.3d at 980 n.11,

16    983, 985.

17    E&Y's analysis concerning the adequacy of Plaintiff's individual scienter allegations is flawed

18    because it considers such allegations in a vacuum without examination of the larger picture. E&Y

19    dismisses each of these allegations one by one as failing to meet the particularity requirements of the

20    PSLRA. However, the individual allegations collectively, and the Complaint as a whole, should be

21    analyzed in assessing whether Plaintiff has pled particularized facts sufficient to support a strong

22    inference of scienter:

23    > Under Silicon Graphics and its progeny, we examine *all the*
     > *circumstances* in determining whether a strong inference of scienter has
24    > been raised.... Beyond each individual allegation, we also consider
     > whether the *total of plaintiffs' allegations*, even though individually
25    > lacking, are sufficient to create a strong inference that defendants acted
     > with deliberate or conscious recklessness.

26

27    *Am. West*, 320 F.3d at 937-38 (internal quotation marks and citations omitted) (emphasis added); *see*

28    *also Ronconi*, 253 F.3d at 429 ("In considering whether a private securities fraud complaint can survive

6

1  dismissal under Rule 12(b)(6), we must determine whether particular facts in the complaint, taken as

2  a whole, raise a strong inference that defendants intentionally or [with] deliberate recklessness made

3  false or misleading statements.") (internal quotation marks and citations omitted). Additionally, several

4  factors may be considered in assessing the sufficiency of scienter allegations with respect to an auditor

5  in particular:

6      With regard to sufficiently alleging scienter against auditors, courts have
       held that in assessing the totality of the circumstances the following may

7      each contribute in supplying an inference that an auditor performed a
       reckless or fraudulent audit: 1) red flags regarding accounting matters,

8      2) restated financial statements, 3) an auditor's failure to obtain sufficient
       support for account balances, and 4) an auditor's failure to follow-up on

9      known accounting errors.

10  *In re Fleming Cos. Secs. & Derivative Litig.*, No. 5-03-MD-1530 (TJW), MDL-1530, 2004 U.S. Dist.

11  LEXIS 26488 at *116 (E.D. Tex. June 10, 2004) (citations omitted).

12      Considered in their entirety, the facts alleged here raise a strong inference of E&Y's scienter.

13  The Complaint alleges that Defendants participated in a scheme to overstate the Company's revenues

14  which artificially inflated the stock price of the Company.  E&Y legitimized the scheme by issuing

15  unqualified opinions on Terayon's financials despite evidence that the Company's controls and

16  procedures and, as a result, the Company's projections and reported financial results, were seriously

17  flawed, misleading and lacking in rational basis.  Plaintiff has set forth facts alleging that E&Y utterly

18  ignored obvious cautionary signs that would have allowed it to uncover Defendants' accounting fraud

19  and the complete lack of internal controls and procedures that ultimately forced Terayon to restate 72

20  months of financial results.  (*See, e.g.*, ¶¶ 17, 49-56, 195).

21      Taken as a whole, the Complaint alleges, in specific detail, a scheme employed by Defendants

22  to publish materially false and misleading statements which artificially inflated the price of Terayon

23  stock.  Additionally, Plaintiff has bolstered his scienter allegations by pleading that E&Y had motive

24  to participate in the Terayon accounting fraud, that Terayon's public filings are replete with violations

25  of GAAP and related abuses, and that E&Y intentionally or with deliberate recklessness ignored the

26  many cautionary signs that should have alerted it to such violations. (*See, e.g.*, ¶¶ 4, 5, 17, 55-59, 64,

27  77, 91, 195, 212, 244, 254-61).

28

7

1          **1.    E&Y Had Motive to Participate in the Terayon Accounting Fraud**

2          E&Y argues that it lacked any incentive to participate in the alleged fraud and that, because of

3     E&Y's purported lack of motive, Plaintiff's scienter allegations are necessarily contradicted. *See*

4     E&Y's Brf. at 16-17. Specifically, E&Y dismisses as "irrational" Plaintiff's allegations that E&Y was

5     motivated to participate in the alleged fraud in order to collect millions of dollars in professional fees

6     and avoid subjecting a client to possible civil and criminal liability, leading to a potential loss of future

7     business. *Id.*

8          Although motive allegations alone do not conclusively establish scienter, Plaintiff has pled

9     substantial instances of Defendants' material misrepresentations and omissions in addition to motive

10    allegations. *See, supra*, Section IV.A. E&Y's motive and opportunity to participate in the Terayon

11    accounting fraud, when combined with material misrepresentations and omissions, contribute to a

12    strong inference of scienter. *See In re Nuko Info. Sys., Inc. Sec. Litig.*, 199 F.R.D. 338, 343 (N.D. Cal.

13    2000) ("motive and opportunity coupled with highly material misrepresentations or omissions may well

14    satisfy the standard"); *In re Wells Fargo Sec. Litig.*, 12 F.3d 922, 931 (9th Cir. 1993) (motive and

15    opportunity may contribute to an inference not just of recklessness, but "specific intent to commit . . .

16    fraud").

17         Moreover, E&Y is wrong in suggesting that it could have no sufficient motive to engage in

18    securities fraud. Any notion that auditors' fees cannot serve as such a motive has been more than

19    discredited by the numerous other recent examples of securities frauds implicating auditors:

20                    The final allegation on which plaintiffs rely is PwC's motivation to
                      overlook S&W's concealment of losses in order to protect its own source
21                    of lucrative accounting and consulting fees. We do not doubt that such
                      a profit motive could contribute to an auditor's decision to turn a [blind]
22                    eye to a corporation's misleading accounting. Such allegations can thus
                      strengthen an inference of scienter predicated on other facts, possibly
23                    adding sufficient strength to satisfy the strong-inference requirement of
                      [the] PSLRA.
24

25    *In re Stone & Webster, Inc., Sec. Litig.*, 414 F.3d 187, 215 (1st Cir. 2005) (internal quotations and

26    citations omitted); *see also In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288 (DLC), 2003 U.S. Dist.

27    LEXIS 10863, at *13 (S.D.N.Y. June 25, 2003) ("Andersen was well paid for its WorldCom work").

28    E&Y's no-possible-motive argument is nothing short of a contention that auditors who are paid large

1  but customary professional fees for their audits cannot violate the securities laws. Nothing in the

2  PSLRA comes close to supporting such an extreme view.

3          **2.    Plaintiff's Allegations of E&Y's Role in the Scheme Satisfy the Scienter
              Pleading Requirement**

4

5          In addition to possessing motive to participate in the Terayon accounting fraud, E&Y does not

6  and cannot rebut the inference that it acted with conscious or deliberate recklessness given the multitude

7  of obvious cautionary signs that would have alerted a truly independent outside auditor to the

8  accounting improprieties and securities fraud taking place within Terayon. E&Y audited the Terayon

9  financial statements prior to and during the Class Period up until its abrupt resignation as the

10  Company's outside auditor in September 2005. However, as it admits, E&Y did not publicly identify

11  or disclose any deficiencies in Terayon's internal controls or express any adverse opinions on the

12  Company's financial results until Terayon's Form 10-Q was filed on November 15, 2004. E&Y's Brf.

13  at 11. This was more than three years after the beginning of the Class Period and only months prior to

14  E&Y's suspicious resignation as Terayon's independent outside auditor. Predictably, months later

15  Terayon disclosed to the investing public that the Company would have to restate 72 months of

16  financial results during the Class Period due to rampant accounting violations.

17          Under these circumstances, E&Y's audit of Terayon's financial statements during the Class

18  Period amounted either to no audit at all, or an egregious failure to see the obvious and investigate the

19  Defendants' admittedly misleading accounting practices. In such cases of utter failure, the Ninth Circuit

20  has affirmed Section 10(b) and Rule 10b-5 claims against outside auditors. *See, e.g., Ponce v. S.E.C.*,

21  345 F.3d 722 (9th Cir. 2003); *In re Software Toolworks, Inc.*, 50 F.3d 615 (9th Cir. 1994) (scienter

22  requirement for a claim of deceptive conduct by the accountant was pled where allegations showing that

23  the accounting practices of the auditor were so deficient that the audit amounted to no audit at all, or

24  an egregious refusal to see the obvious, or to investigate the doubtful).

25          E&Y's argument that Plaintiff has failed to properly plead particularized facts and allegations

26  are further undercut by the numerous authorities that support the sufficiency of Plaintiff's scienter

27  allegations. In *Am. West*, the court held that allegations regarding the defendants' misleading

28  statements, when taken as a whole, met the stringent pleading standard of the PSLRA: "In this era of

9

1  corporate scandal, when insiders manipulate the market with the complicity of lawyers and accountants,

2  we are cautious not to raise the bar of the PSLRA any higher than that which is required under its

3  mandates." 320 F.3d at 945-46. *See also Nuko Info.*, 199 F.R.D. 338 (plaintiffs who alleged overstated

4  revenues sufficiently alleged motive and opportunity, facts strongly suggesting that defendants knew

5  they were overstating revenues and that it was improper for them to do so, and violations of GAAP

6  regarding those transactions); *In re Homestore.com, Inc. Sec. Litig.*, 252 F. Supp. 2d 1018 (C.D. Cal.

7  2003) (allegations sufficiently gave rise to a strong inference that the auditor acted with deliberate

8  recklessness and that the auditor's conduct amounted to an egregious refusal to see the obvious when

9  it issued its audit opinion and substantially participated in the preparation of various quarterly reports).

10      Furthermore, the court in *Fleming Cos.* found that the allegations against an auditor, when taken

11  as a whole, adequately pled scienter.  The court found significant the auditor's duties to obtain and

12  evaluate evidence concerning the assertions made in its client's financial statements:

13          Independent auditors are charged with obtaining and evaluating evidence
            concerning the assertions made in their client's financial statements.
14          Auditors are not entitled to allow representations from a company's
            management to substitute for the auditing procedures that are necessary
15          to provide a reasonable basis for forming an opinion regarding the
            financial statements that are the subject of the audit.... Professional
16          auditors are required to act diligently and in good faith, and to apply a
            professional skepticism to their evaluation of evidence.  An auditor
17          should conduct the audit objectively, thoroughly and carefully. Before
            certifying financial statements, an auditor should have an understanding
18          of the factors that may have a significant effect on the financial
            statements.

19

20  2004 U.S. Dist. LEXIS 26488, at *121-22 (citations omitted).  If E&Y had evaluated properly the

21  obvious cautionary signs of improprieties prevalent in Terayon during the Class Period, it would have

22  discovered Defendants' fraudulent accounting practices:   "[t]he allegations identifying the steps

23  Andersen should have taken and failed to take, and the fraud it would have discovered if it had taken

24  those steps, create a strong inference that Andersen acted recklessly in conducting the WorldCom

25  audits." *Worldcom*, 2003 U.S. Dist. LEXIS 10863, at *22; *see also Novak v. Kasaks*, 216 F.3d 300, 308

26  (2d. Cir. 2000) (allegations that defendants "failed to review or check information that they had a duty

27  to monitor, or ignored obvious signs of fraud" are sufficient to allege recklessness).

28

1

### 3. The Terayon Insiders' Sales Support a Strong Inference of Scienter

2      Plaintiff incorporates by reference Section IV.A.2 from his Opposition to the Motion to Dismiss

3 of Terayon Communication Systems, Inc. and the Individual Defendants, Docket No. 53. E&Y argues

4 that Plaintiff failed to set forth allegations sufficient to infer that E&Y intentionally or with deliberate

5 recklessness ignored evidence of fraud from insider stock sales. However, Plaintiff alleges, in

6 significant detail, particularized facts sufficient to infer that E&Y consciously ignored the suspicious

7 nature of the insider sales.

8      The allegations include, among others, the improper insider sales which formed a basis for the

9 Terayon Earlier Securities Fraud Action; the suspicious sales of the Terayon insiders during the Class

10 Period, including 300,000 shares by the Rakib brothers alone in February of 2005 – nearly *double* the

11 number of shares sold by all insiders in the Terayon Earlier Securities Fraud Action; and the timing of

12 these suspicious insider sales when Defendants were already contemplating the restatement, an SEC

13 investigation was entirely foreseeable, and the Terayon Earlier Securities Fraud Action had not yet

14 settled for $15 million. (*See, e.g.*, ¶¶ 3, 46-51, 235, 263-64).

15      Given this backdrop of improper and fraudulent business activity, the insider sales were highly

16 questionable and should have raised the suspicions of E&Y. A reasonable and independent outside

17 auditor would have inquired as to the propriety of these insider sales, thereby exposing the fraud taking

18 place at Terayon. Accordingly, E&Y's intentional or deliberately reckless ignorance of the evidence

19 of fraud from the Terayon insider stock sales provides additional support for a strong inference of

20 scienter.

21

### 4. Allegations Based on Statements from a Former Employee in the Accounting Department Support a Strong Inference of Scienter

22

23      Plaintiff incorporates by reference Section IV.A.5 from his Opposition to the Motion to Dismiss

24 of Terayon Communication Systems, Inc. and the Individual Defendants, Docket No. 53. In addition

25 to questioning the specificity with which Plaintiff described the former employee who worked in

26 Terayon's accounting department during the Class Period, E&Y also questions whether the assertions

27 of the employee create a strong inference of scienter. While Plaintiff has identified his confidential

28

11

1    source with sufficient particularity to satisfy the PSLRA, the allegations attributed to this source also

2    support a strong inference of scienter against E&Y.

3     In particular, the statements from the former employee reveal significant violations of GAAP

4    and general SEC reporting rules and regulations, improper revenue recognition and accounting direction

5    with respect to several accounts and transactions, and conversations between E&Y and Defendants

6    which confirm that E&Y allowed Defendants' biased judgments, inaccurate representations and

7    compromised agendas to substitute its own due diligence and investigation in applying proper

8    accounting principles. (*See, e.g.*, ¶¶ 52-55). Such deficiencies and failures are corroborated by

9    Defendants' own concessions in the restatements of the Terayon Class Period financial reports.

10   Moreover, the specificity of the former employee's statements makes it clear that E&Y was aware of

11   the obvious cautionary signs present in Terayon during the Class Period and failed to respond to such

12   red flags in a manner consistent with its duties and obligations as the sole independent outside auditor

13   for Terayon. Accordingly, the former employee's statements provide a strong inference of scienter.

14      **5.** **E&Y's Knowledge or Reckless Disregard of Terayon's Problems May Be**
     **Inferred from E&Y's Failure to Recognize and Respond to Red Flags**

15

16    Plaintiff alleges that E&Y consciously or with deliberate recklessness ignored the obvious

17   warning signs concerning Terayon's allegedly fraudulent financial reporting during the Class Period.

18   E&Y dismisses these allegations, stating that none of these signs "demonstrates that E&Y acted either

19   intentionally or with deliberate recklessness." E&Y's Brf. at 8. Indeed, E&Y's method of attacking

20   Plaintiff's allegations is to analyze one piece of the puzzle and conclude that this single element, by

21   itself, is not sufficient to support an inference of scienter. However, such allegations cannot be

22   examined in a vacuum without reference to the rest of the puzzle in which E&Y's conscious or

23   deliberately reckless behavior is clear and a strong inference of scienter is presented.

24    E&Y's conscious or deliberately reckless behavior can be inferred from the "specific, highly

25   suspicious facts and circumstances available to the auditor at the time of the audit." *In re SmarTalk*

26   *Teleservs., Inc. Sec. Litig.*, 124 F. Supp. 2d 505, 514 (S.D. Ohio 2000). Furthermore, ignoring copious

27   "red flags" also gives rise to an inference of scienter. *Miller v. Material Scis. Corp.*, 9 F. Supp. 2d 925,

28   928 (N.D. Ill. 1998) ("Deliberately ignoring 'red flags' . . . can constitute the sort of recklessness

12

necessary to support § 10(b) liability."); *Danis v. USN Communs., Inc.*, 73 F. Supp. 2d 923, 942 (N.D. Ill. 1999) ("Plaintiffs sufficiently allege the existence of and Deloitte's awareness of these 'red flags' . . . . Deloitte's knowledge or reckless disregard of USN's problems may be inferred."); *In re Transcrypt Int'l Sec. Litig.*, No. 4:98CV3099, 1999 U.S. Dist. LEXIS 17540, at *27-28 (D. Neb. Nov. 4, 1999) (failure to notice numerous red flags demonstrates an auditor's recklessness); *CMNY Capital, L.P. v. Deloitte & Touche*, 821 F. Supp. 152, 166 (S.D.N.Y. 1993) ("red flags" support an inference of scienter).

The numerous red flags throughout the Class Period regarding Terayon's accounting improprieties and securities fraud included, among others, the settlement of the Terayon Earlier Securities Fraud Action, violations of GAAP and SEC reporting rules and regulations, suspicious insider sales, resistance to application of SOP 97-2, improper revenue recognition and third-party transactions, and ineffective internal controls and procedures, all culminating in the restatement of 72 months of Terayon financial reports. Such extensive warning signs contribute to a finding of E&Y's scienter:

> The fact that an auditor ignored red flags constitutes strong evidence of intentional or reckless conduct. Although the existence of a restatement may not by itself satisfy the scienter requirement, a restatement can tip the scales in favor of a finding of scienter when the restatement is viewed with the totality of the circumstances surrounding the restatement. A restatement adds significant weight to the scienter calculus due to the magnitude of a restatement, the repetitiveness of GAAP violations requiring the restatement, and the simplicity of the accounting principles that were violated.

*Fleming Cos.*, 2004 U.S. Dist. LEXIS 26488, at *116-17 (citations omitted). Because the Complaint is replete with allegations of red flags and support for the conclusion that E&Y's conduct amounted to no audit at all or refusal to see the obvious or investigate the doubtful, Plaintiff has properly pled scienter.

**6.    E&Y's Failure to Follow GAAP Provides Independent Proof of Scienter**

Plaintiff incorporates by reference Section IV.A.1 from his Opposition to the Motion to Dismiss of Terayon Communication Systems, Inc. and the Individual Defendants, Docket No. 53. E&Y's deliberately reckless or intentional failure to follow GAAP resulted in the filing of materially false financial statements, providing an independent basis by which to find E&Y liable under Section 10(b).

13

1   E&Y argues that GAAP violations, without more, do not establish scienter, citing to *DSAM Global*

2   *Value Fund v. Altris Software, Inc.*, 288 F.3d 385 (9th Cir. 2002) in support. E&Y's Brf. at 9.

3   However, *DSAM* is distinguishable from the instant action in that the plaintiff there failed to allege *any*

4   facts other than the GAAP violations to establish that the auditor acted with scienter. *DSAM*, 288 F.3d

5   at 390-91. Furthermore, the auditor in *DSAM* withdrew its audit opinion immediately upon learning

6   of such accounting violations. *Id.* at 388.

7       E&Y attempts to distort the content of Plaintiff's assertions and examines the allegations of

8   GAAP violations without context. Such characterization is an effort to mask obvious improprieties and

9   violations with the argument that this allegation, alone, is not sufficient to meet the standards of the

10  PSLRA.

11      Moreover, this Circuit has held that GAAP violations, combined with other circumstances

12  indicating unlawful activities, provide strong circumstantial evidence of scienter. *See In re McKesson*

13  *Hboc, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1272-73 (N.D. Cal. 2000) ("[W]hen significant GAAP

14  violations are described with particularity in the complaint, they may provide powerful indirect evidence

15  of scienter. After all, books do not cook themselves."); *In re Cylink Sec. Litig.*, 178 F. Supp. 2d 1077,

16  1082-83 (N.D. Cal. 2001) (GAAP violations that "constituted a widespread and significant inflation of

17  revenue . . . a strong inference arises that senior management intentionally misstated earnings"). Even

18  E&Y's own reference to *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1426 (9th Cir. 1994),

19  suggests as much: "alleged violations of GAAP or SEC regulations, *without more*, do not establish

20  scienter." E&Y's Brf. at 9 (emphasis added). E&Y's violations with respect to the Terayon accounting

21  fraud include much more than a mere honest error in accounting or judgment by a truly independent

22  outside auditor.

23      Additionally, the huge magnitude of the misrepresented financial information also supports a

24  strong inference of scienter. *See, e.g., Rehm v. Eagle Fin. Corp.*, 954 F. Supp. 1246, 1256 (N.D. Ill.

25  1997) (large accounting errors strengthen inference of scienter). In *In re First Merchs. Acceptance*

26  *Corp. Sec. Litig.*, No. 97 C 2715, 1998 U.S. Dist. LEXIS 17760, at * 30-32 (N.D. Ill. Nov. 4, 1998),

27  the court held that allegations of specific GAAP violations, combined with other circumstances

28  suggesting fraudulent intent, constituted strong circumstantial evidence of scienter.

14

1    Here, Plaintiff specifically pleads that Terayon's semi-annual and annual reports and other

2   public filings during the Class Period violated GAAP. (*See, e.g.,* ¶¶ 4, 59, 64, 77, 91, 195, 212, 244,

3   254-61). Plaintiff further alleges that as a direct result of Terayon's GAAP violations, the Company's

4   public filings during the Class Period were necessarily false and misleading. Furthermore, as a result

5   of Defendants' GAAP violations, Terayon was ultimately required to restate 72 months' worth of

6   financial reports, the Company was delisted from the NASDAQ, and the SEC launched a formal

7   investigation of the Company. When the truth finally emerged, a financial picture that was materially

8   different from that which Defendants and E&Y publicly represented throughout the Class Period came

9   to light.  Accordingly, the magnitude of E&Y's failures during the Class Period provides strong

10  circumstantial evidence of its scienter.

11  **V.    CONCLUSION**

12    For all of the foregoing reasons, the Court should deny in its entirety E&Y's Motion to Dismiss

13  the Amended Class Action Complaint.  If any part of E&Y's motion is granted, Plaintiff respectfully

14  requests leave to amend. *Eminence Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1051-53 (9th Cir.

15  2003).

16                                  Respectfully submitted,

17  Dated: May 7, 2007               Michael D. Braun
                                     BRAUN LAW GROUP, P.C.

18

19                      By:          _____/S/_____
                                     Michael D. Braun
20                                   12400 Wilshire Boulevard
                                     Suite 920
21                                   Los Angeles, CA 90025
                                     Tel:   (310) 442-7755
22                                   Fax:   (310) 442-7756

23                                   **Liaison Counsel for Plaintiff and the Class**

24                                   Maya Saxena
                                     Joseph E. White III
25                                   SAXENA WHITE P.A.
                                     2424 North Federal Highway, Suite 257
26                                   Boca Raton, FL 33431
                                     Tel:   (561) 394-3399
27                                   Fax:   (561) 394-3382

28

                                     15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Lewis Kahn
KAHN GAUTHIER SWICK, LLC
650 Poydras Street, Suite 2150
New Orleans, LA 70130
Tel:    (504) 455-1400
Fax:    (504) 455-1498

Michael A. Swick
Kim E. Miller
KAHN GAUTHIER SWICK, LLC
12 East 41st St., 12th Floor
New York, NY 10017
Tel:    (212) 696-3730
Fax:    (504) 455-1498

**Lead Counsel for Plaintiff and the Class**

16

1

**PROOF OF SERVICE**

2   STATE OF CALIFORNIA         )
                                )ss.:
3   COUNTY OF LOS ANGELES       )

4       I am employed in the county of Los Angeles, State of California, I am over the age of 18 and
    not a party to the within action; my business address is 12400 Wilshire Boulevard, Suite 920, Los
5   Angeles, CA 90025.

6       On May 7, 2007, using the Northern District of California's Electronic Case Filing System, with
    the ECF ID registered to Michael D. Braun, I filed and served the document(s) described as:
7

8       **LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
    OPPOSITION TO MOTION OF ERNST & YOUNG TO DISMISS AMENDED CLASS
    ACTION COMPLAINT**

9

10      The ECF System is designed to automatically generate an e-mail message to all parties in the
    case, which constitutes service.  According to the ECF/PACER system, for this case, the parties served
    are as follows:

11

12  Lionel Z. Glancy, Esq.                     info@glancylaw.com

    Michael M. Goldberg, Esq.                  info@glancylaw.com
13

14  Kim E. Miller, Esq.                        kim.miller@kgscounsel.com

    **Counsel for Plaintiffs**
15

16  Patrick Edward Gibbs, Esq.                 patrick.gibbs@lw.com
                                               zoila.aurora@lw.com

17  **Counsel for Defendant
    Terayon Communication Systems, Inc.
18  and Individual Defendants**

19  Sheila Anil Jambekar, Esq.                 sjambekar@morganlewis.com

20  John H. Hemann, Esq.                       jhemann@morganlewis.com

21  **Counsel for Defendant Ernst & Young LLP**

22      On May 7, 2007, I served the document(s) described as:

23      **LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
    OPPOSITION TO MOTION OF ERNST & YOUNG TO DISMISS AMENDED CLASS
24  ACTION COMPLAINT**

25  by placing a true copy(ies) thereof enclosed in a sealed envelope(s) addressed as follows:

26  ///

27  ///

28  ///

17

Maya Saxena, Esq.
Joseph E. White III, Esq.
SAXENA WHITE P.A.
2424 North Federal Highway, Suite 257
Boca Raton, FL 33431
Tel:    (561) 394-3399
Fax:    (561) 394-3382

Lewis Kahn, Esq.
KAHN GAUTHIER SWICK, LLC
650 Poydras Street, Suite 2150
New Orleans, LA  70130
Tel:    (504) 455-1400
Fax:    (504) 455-1498

Michael A. Swick, Esq.
KAHN GAUTHIER SWICK, LLC
12 East 41st St., 12th Floor
New York, NY 10017
Tel:    (212) 696-3730
Fax:    (504) 455-1498

**Lead Counsel for Plaintiff
Adrian G. Mongeli and the Class**

Michael J. Lawson, Esq.
MORGAN, LEWIS & BOCKIUS LLP
One Market
Spear Street Tower
San Francisco, CA 94105
Tel:    (415) 442-1000
Fax:    (415) 442-1001

Bruce M. Cormier, Esq.
Joel E. Bonner, Esq.
ERNST & YOUNG LLP
1225 Connecticut Avenue, NW
Washington, D.C. 20036
Tel:    (202) 327-7603
Fax:    (202) 327-7601

**Counsel for Defendant
Ernst & Young LLP**

I served the above document(s) as follows:

BY MAIL.  I am familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in an affidavit.

18

1        I declare, pursuant to Civil L.R. 23-2, that on the date hereof I served a copy of the above-listed
document(s) on the Securities Class Action Clearinghouse by electronic mail through the following
2    electronic mail address provided by the Securities Class Action Clearinghouse:

3                        **scac@law.stanford.edu**

4        I am employed in the office of a member of the bar of this Court at whose direction the service
was made.
5

    I declare under penalty of perjury under the laws of the United States that the above is true and
6    correct.

7        Executed on May 7, 2007, at Los Angeles, California 90025.

8

9
                                     /S/ LEITZA MOLINAR
10                                        Leitza Molinar

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28