MORGAN, LEWIS & BOCKIUS LLP
Michael J. Lawson (Bar No. 66547)
John H. Hemann (Bar No. 165823)
Sheila A. Jambekar (Bar No. 239101)
One Market
Spear Street Tower
San Francisco, CA 94105
Tel: (415) 442-1000
Fax: (415) 442-1001

ERNST & YOUNG LLP
Bruce M. Cormier
Joel E. Bonner (Bar No. 105492)
1225 Connecticut Avenue, NW
Washington, D.C. 20036
Tel: (202) 327-7603
Fax: (202) 327-7601

Attorneys for Defendant
ERNST & YOUNG LLP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ADRIAN MONGELI, Individually, And On Behalf Of All Others Similarly Situated,

Plaintiff,

v.

TERAYON COMMUNICATIONS SYSTEMS, INC., ZAKI RAKIB, JERRY D. CHASE, MARK A. RICHMAN, EDWARD LOPEZ, RAY FRITZ, CAROL LUSTENADER, MATTHEW MILLER, SHLOMO RAKIB, DOUG SABELLA, CHRISTOPHER SCHAEPE, MARK SLAVEN, LEWIS SOLOMON, HOWARD W. SPEAKS, ARTHUR T. TAYLOR, DAVID WOODROW, and ERNST & YOUNG LLP,

Defendants.

Case No. 3-06-CV-03936 MJJ

**CLASS ACTION**

**REPLY IN SUPPORT OF ERNST & YOUNG LLP'S MOTION TO DISMISS**

Hearing Date: July 24, 2007
Time: 9:30 a.m.
Dept.: Courtroom 11
Judge: Hon. Martin J. Jenkins
Action Filed: June 23, 2006

# TABLE OF CONTENTS


| | | | | Page |
|---|---|---|---|---|
| I. | INTRODUCTION | | | 1 |
| II. | PLAINTIFF'S ALLEGATIONS DO NOT GIVE RISE TO A "STRONG INFERENCE" OF SCIENTER ON THE PART OF E&Y | | | 2 |
| | A. | The "Red Flags" Identified by Plaintiff Do Not Support A Strong Inference of Scienter | | 2 |
| | | 1. | Terayon's Previous Litigation Does Not Legally or Factually Support an Inference of Scienter | 3 |
| | | 2. | Terayon's 2006 Restatement Does Not Support an Inference of Scienter | 4 |
| | | 3. | The Alleged Insider Trading Does Not Support an Inference of Scienter | 7 |
| | | 4. | Plaintiff's Contention that E&Y's Scienter May Be Established by Terayon's Lack of Internal Controls is Unsupportable | 9 |
| | B. | Plaintiff's Confidential Witness Allegations are Deficient | | 10 |
| | C. | Plaintiff's Motive Argument is Baseless and Contrary to Law | | 12 |
| III. | EVEN TAKEN AS A WHOLE, PLAINTIFF'S ALLEGATIONS FAIL TO GIVE RISE TO A STRONG INFERENCE OF SCIENTER | | | 13 |
| IV. | CONCLUSION | | | 15 |

# TABLE OF AUTHORITIES

Page

## CASES

*Danis v. USN Communications, Inc.*, 73 F. Supp. 2d 923 (N.D. Ill. 1999), .......... 10

*Davis v. SPSS, Inc.*, 385 F. Supp. 2d 697 (N.D. Ill. 2005) .......... 3

*Dileo v. Ernst & Young*, 901 F. 2d 624 (7th Cir. 1990) .......... 12

*DSAM Global Value Fund v. Altris Software, Inc*, 288 F.3d 385 (9th Cir. 2002) .......... 1, 2, 4, 14

*Forman v. Davis*, 371 U.S. 178 (1962) .......... 1

*Gompper v. VISX, Inc.*, 298 F.3d 893 (9th Cir. 2002) .......... 5, 9, 13

*In re Business Objects S.A. Secs. Litig.*, No. C 04-2401 MJJ, 2005 U.S. Dist. LEXIS 20215 (N.D. Cal. July 27, 2005). .......... 11

*In re Cabletron Systems, Inc.*, 311 F.3d 11 (1st Cir. 2002) .......... 11

*In re Comshare Incorporated Sec. Litig.*, 183 F.3d 542 (6th Cir. 1999) .......... 7

*In re Daou Systems, Inc.*, 411 F.3d 1006 (9th Cir. 2005) .......... 11

*In re First Merchants Acceptance Corporation Sec. Litig.*, No. 97 C 271517760 (N.D. Ill. Nov. 4, 1998) .......... 6

*In re Fleming Companies Inc. Sec. Litig.*, 2004 U.S. Dist. LEXIS 26488 (N.D. Tex. June 11, 2004) .......... 13, 14

*In re Homestore.com Inc. Sec. Litig.*, 252 F. Supp. 2d 1019 (C.D. Cal. 2003) .......... 5, 6

*In re Nuko Information Systems, Inc.*, 199 F.R.D. 338 (N.D. Cal. 2000) .......... 12, 13

*In re Paincare Sec. Litig.*, 2007 WL 1229703 (M.D. Fla. Apr. 25, 2007) .......... 11

*In re Read-Rite Corp. Sec. Litig.*, 335 F.3d 843 (9th Cir. 2003) .......... 2

*In re SeeBeyond Technologies Corporation Sec. Litig.*,

**TABLE OF AUTHORITIES**
**(continued)**


**Page**

266 F. Supp. 2d 1150 (C.D. Cal. 2003) .......... 10

*In re Silicon Graphics Inc. Sec. Litig.*, 288 F.3d 970 (9th Cir. 1999) .......... 4, 11, 15

*In re Smartalk Teleservices, Inc. Sec. Litig.*, 124 F. Supp. 2d 505 (S.D. Ohio 2000) .......... 4

*In re Sofware Toolworks, Inc., Sec. Litig.*, 50 F.3d 615 (9th Cir. 1995) .......... 1, 4, 14

*In re Stone & Webster, Inc. Secs. Litig.*, 414 F.3d 187 (1st Cir. 2005) .......... 3, 12

*In re Transcrypt Int'l Sec. Litig.*, 4:98CV3099, 1999 U.S. Dist. LEXIS 17540 (D. Neb. Nov. 4, 1999) .......... 7

*In re Wells Fargo Sec. Litig.* 12 F.3d 922 (9th Cir. 1993) .......... 12

*In re Worldcom, Inc. Sec. Litig.*, 2003 U.S. Dist. LEXIS 10863 (S.D.N.Y. June 24, 2003) .......... 12

*Miller v. Pezzani (In re Worlds of Wonder Sec. Litig.)*, 35 F.3d 1407 (9th Cir. 1994) .......... 4, 6, 12

*Morgan v. AXT, Inc.* No. C 04-4362 MJJ, 2005 U.S. Dist. LEXIS 42346, (N.D. Cal. Sept. 21, 2005) .......... 1, 11, 15

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.*, 320 F.3d 920 (9th Cir. 2003) .......... 8

*Rehm v. Eagle Finance Corp.*, 954 F. Supp. 1246 (N.D. Ill. 1997) .......... 6

*Reiger v. Price Waterhouse Coopers, LLP*, 117 F. Supp. 2d 1003 (S.D. Cal. 2000) .......... 3, 7, 9

*Riggs Partners, LLC v. Hubb Group, Inc.*, 2002 WL 31415721 (N.D. Ill. 2002) .......... 3

*San Leandro Emergency Med. Plan v. Philip Morris Cos.*, 75 F.3d 801 (2d Cir. 1996) .......... 7

*S.E.C. v. Price Waterhouse*, 797 F Supp. 1217 (S.D.N.Y. 1992) .......... 12

*Svezzese v. Duratek, Inc.*, 2002 U.S. Dist. LEXIS 20967 (D. Md. Apr. 30, 2002) .......... 9

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*The WU Group v. Synopsys, Inc.*,
2005 U.S. Dist. LEXIS 42351, (N.D. Cal. Aug. 10, 2005) .......... 1

*Wietschner v. Monterey Pasta Co.*,
294 F. Supp. 2d 1002 (N.D. Cal. 2003) .......... 1

## I. INTRODUCTION

As in other putative securities class actions this Court has dismissed, "[h]ere, the sum is no greater than its parts." *See, e.g.*, *Morgan v. AXT, Inc.*, No. C 04-4362 MJJ, 2005 U.S. Dist. LEXIS 42346, *38 (N.D. Cal. Sept. 21, 2005); *The WU Group v. Synopsys, Inc.*, No. C 07-03580, 2005 U.S. Dist. LEXIS 42351, *34 (N.D. Cal. Aug.10, 2005); *Wietschner v. Monterey Pasta Co.*, 294 F. Supp. 2d 1002, 1117 (N.D. Cal. 2003) (Jenkins, J.).

Nothing short of a "strong inference" of fraudulent intent—or scienter—on the part of Ernst & Young LLP ("E&Y") in connection with its independent audits of Terayon Communication Systems, Inc.'s ("Terayon's" or "the Company's") financial statements will suffice under the Private Securities Litigation Reform Act ("PSLRA"). In asking the Court to look to the whole of his allegations in determining whether he has sufficiently pled scienter, Plaintiff all but concedes that none of his allegations individually gives rise to the necessary strong inference. Even when considering his allegations as a whole, however, Plaintiff has failed to establish the necessary strong inference of scienter required under the PSLRA.

The allegations of "red flags" to which Plaintiff points do not constitute strong circumstantial evidence that E&Y's work for Terayon amounted to "no audit at all" or "an egregious refusal to see the obvious," as required under *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 389 (9th Cir. 2002), and *In re Sofware Toolworks, Inc. Sec. Litig.*, 50 F.3d 615, 628 (9th Cir. 1995). Moreover, his arguments regarding E&Y's alleged motive to cover-up fraud and information from a confidential witness do not support an inference of scienter under well-established law.

Accordingly, Plaintiff's claims against E&Y must be dismissed. Leave to amend should not be granted if to do so would be futile. *Forman v. Davis*, 371 U.S. 178, 182 (1962). Because Plaintiff does not identify any facts in his Opposition that he *could* plead to establish scienter if given leave to amend, his claims should be dismissed with prejudice.

## II. PLAINTIFF'S ALLEGATIONS DO NOT GIVE RISE TO A "STRONG INFERENCE" OF SCIENTER ON THE PART OF E&Y

Plaintiff relies on three categories of allegations in his effort to show that E&Y acted with scienter: (1) "'red flags' that were present at Terayon" and that E&Y failed to heed, (2) statements by a "confidential witness" regarding E&Y's diligence as auditor, and (3) assertions regarding E&Y's "motive" to hide Terayon's alleged fraud. The tacit theme of Plaintiff's Opposition brief, however, is that E&Y could and should have ferreted out the alleged fraud because it was Terayon's auditor – a negligence-based argument that is insufficient to satisfy the scienter requirement for a federal securities fraud claim. *See, e.g., In re Read-Rite Corp.*, 335 F.3d 843, 848 (9th Cir. 2003) (a strong inference of scienter may not be based upon allegations that defendants "would be aware of the falsity of some or all" of the allegedly misleading statements "based upon their job duties"). Instead, to withstand this motion to dismiss, Plaintiff must allege facts demonstrating that E&Y essentially conducted "no audit at all," or displayed "egregious *refusal* to see the obvious, or investigate the doubtful." *DSAM*, 288 F.3d at 390 (emphasis added). Plaintiff fails to meet this standard.

### A. The "Red Flags" Identified by Plaintiff Do Not Support A Strong Inference of Scienter

Plaintiff asserts that "obvious warning signs" existed at Terayon and that E&Y "intentionally or with deliberate recklessness ignored the 'red flags' . . . ." (Lead Plaintiff's Memorandum of Points and Authorities in Opposition to Motion of Ernst & Young to Dismiss Class Action Complaint ("Opposition") at 2). He generally identifies four "red flags" or "warning signs": (1) previous securities litigation settled by Terayon, (2) "numerous GAAP violations," (3) insider sales that he claims were "suspicious," and (4) a lack of internal controls. (Id.) He also identifies at the outset of his brief "resistance to application of correct accounting principles" but does not separately address this "resistance" at any point in his brief.

It is not enough, as Plaintiff does throughout his Opposition, to allege certain events identified through hindsight and label them "red flags." "[T]he mere fact that an auditor missed what a plaintiff labels warning signs gives little support to its own conclusion that an auditor was

reckless, much less willfully blind, with respect to the falsity of information in a financial statement." *In re Stone & Webster, Inc. Sec. Litig.*, 414 F.3d 187, 214 (1st Cir. 2005). To demonstrate a "strong" inference of scienter based on purported "red flags," Plaintiff must plead specific facts demonstrating that E&Y actually had knowledge of, or was willfully blind to, the red flags *at the time* it made the allegedly misleading statements. *See Reiger v. Price Waterhouse Coopers, LLP*, 117 F. Supp. 2d 1003, 1009 (S.D. Cal. 2000); *see also Davis v. SPSS, Inc.*, 385 F. Supp. 2d 697, 718 (N.D. Ill. 2005) (defining "red flags" as "specific, highly suspicious facts and circumstances available to the auditor at the time of the audit") (citing *Riggs Partners, LLC v. Hubb Group, Inc.*, 2002 WL 31415721, *9 (N.D. Ill. 2002)).

**1. Terayon's Previous Litigation Does Not Legally or Factually Support an Inference of Scienter**

Plaintiff asserts that Terayon's involvement in a civil securities action was a "red flag" that should have placed E&Y on a high degree of alert and caused E&Y to spot the alleged fraudulent misstatements by the company about its revenue and revenue recognition practices.

Absent from Plaintiff's Opposition brief is any citation to a case suggesting that a company's involvement in an earlier private securities litigation can be considered a "red flag" of fraud supporting an inference of scienter against its auditor. Nor is there any factual allegation that E&Y failed to follow Generally Accepted Auditing Standards ("GAAS") by not focusing attention on the prior securities litigation.

Aside from lacking legal precedent for his argument, Plaintiff's claim that previous litigation is a "red flag" is not factually supportable in this case. Plaintiff's Amended Complaint provides no description of the earlier litigation or the resulting settlement. (*See* Amended Complaint ("Compl.") ¶¶ 46-48.) As described in Terayon's Form 10K for the year ending December 31, 2005, however, the allegations giving rise to the prior litigation focused on purported misstatements and failures to disclose information regarding Terayon's *technology* – *not* Terayon's accounting or financial condition; in other words, matters unrelated to the misstatements alleged in the instant litigation. (*See* Request for Judicial Notice in Support of Motion to Dismiss Amended Class Action Complaint for Violations of Federal Securities Laws

by Terayon and Individual Defendants ("Terayon Motion to Dismiss RJN"), Ex. 1 at 42.) Under these circumstances, it does not follow that an auditor should or would conclude its client was engaged in accounting fraud, much less that the failure to so conclude was an "extreme departure from the standards of ordinary care." *See DSAM*, 288 F.3d at 389 (citing *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999)).[1] Moreover, a settlement of the earlier litigation was reached in March 2006, *after* E&Y had resigned as auditor, so the settlement of that previous securities litigation necessarily could not have been be a "red flag" as to E&Y. (*See* Terayon Motion to Dismiss RJN, Ex. 1 at 42.)

Plaintiff's allegations related to Terayon's earlier securities litigation thus support no inference of conscious fraud or deliberate recklessness, much less the strong inference required by the PSLRA.

**2. Terayon's 2006 Restatement Does Not Support an Inference of Scienter**

Plaintiff contends that Terayon's financial statements were "not GAAP compliant" and that "E&Y's deliberately reckless or intentional failure to follow GAAP" led to the filing of false financial statements. Plaintiff, however, does cites no facts in support of this conclusion, and cites no facts that suggest E&Y knew or believed while it was the company's auditor that the financial statements were not GAAP compliant. (See Opposition at 13-14).

The law on this point is well-established: "Scienter requires more than a misapplication of accounting principles." *Software Toolworks*, 50 F.3d at 628 (quoting *Miller v. Pezzani (In re Worlds of Wonder Sec. Litig.)*, 35 F.3d 1407, 1426 (9th Cir. 1994)). For a GAAP violation to be a "red flag," Plaintiff must allege facts showing that the violation was such that a failure to see it was "highly unreasonable." *See Silicon Graphics*, 288 F.3d at 389; *see also In re Smartalk Teleservices, Inc. Sec. Litig.*, 124 F. Supp. 2d 505, 517 (S.D. Ohio 2000) (to rely on GAAP

---

[1] This is particularly so given that securities lawsuits against public companies are commonplace—indeed, too commonplace according to Congress twelve years ago, when the PSLRA was enacted. *See* H.R. Conf. Rep. No. 104-369, at 32, 41 (1995) *reprinted at* 1995 U.S.C.C.A.N. 730, 740.

violations in and of themselves as "red flags" from which some inference of scienter could be inferred, a plaintiff must allege facts showing that the accounting errors were obvious). Plaintiff has not done so.

The closest Plaintiff comes is in his confidential witness allegations regarding revenue recognition and SOP 97-2 (Compl. ¶¶ 53-55), but, at most, these allegations might suggest an inference of simple negligence, not a strong inference of a "highly unreasonable" accounting determination by E&Y. An unnamed witness is alleged in paragraph 53 to have said that E&Y gave incorrect advice to the company regarding the "Thomson transaction," but in the next paragraph the same witness concedes the "possibility that not everything that the Company knew about the deliverables for the Thomson Transaction was disclosed to Ernst & Young . . . ." (Compl. ¶¶ 53-54.) In paragraph 55, the same witness recounts that E&Y suggested at an unstated time that SOP 97-2 should have been applied to certain unidentified transactions and Terayon's CFO responded that the company was "not a software company" and declined to do so. (Compl. ¶ 55.)

These thin allegations do not support an inference of scienter.[2] First, Plaintiff's own confidential witness allegations suggest that the company did not fully inform E&Y of information relevant to the determination whether to apply SOP 97-2. Second, the allegations lack specific information regarding the transactions, issues raised during the discussions between E&Y and the company, or when the discussions and transactions occurred. Plaintiff's failure to identify such particulars regarding the accounting issues is fatal to any inference of scienter. Moreover, since these allegations are fully consistent with the absence of scienter, they cannot create the strong inference of scienter that the law requires. *Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002).

In this respect, this case has little in common with *In re Homestore.com Inc. Securities Litigation*, 252 F. Supp. 2d 1018 (C.D. Cal. 2003), on which Plaintiff relies in his Opposition. In

---

[2] The confidential witness allegations are defective for the additional reasons discussed in Part II.B, below.

*Homestore.com* the plaintiff alleged that the auditor was heavily involved in the day-to-day accounting practices of the company, and the auditor had required application of the proper GAAP principles on certain transactions, but not on others of the exact same kind. *Id.* at 1043-44. Furthermore, in *Homestore.com*, the issue of proper accounting under a particular GAAP was allegedly discussed at an audit committee meeting with the auditor present and the auditor approved improper GAAP application, but later took the position that it would not allow the improper accounting on a going-forward basis. *Id.* at 1045. There are no such allegations here with respect to E&Y – no allegations that establish that E&Y was heavily involved on a daily basis with Terayon's accounting or that otherwise demonstrate E&Y's contemporaneous knowledge that Terayon was applying the wrong revenue recognition rules to its accounting.[3]

Plaintiff attempts to layer the size of and months affected by Terayon's 2006 restatement on top of the alleged misapplication of SOP 97-2, and that way build the necessary "strong" inference of fraudulent intent. (Opposition at 14-15.) This attempt fails, however, because there is nothing – factual or legal – to carry the load. As noted in E&Y's moving papers, the restatement only reduced Terayon's total revenue by two percent and increased its losses by eight-tenths of one percent. (*See* Memorandum of Points and Authorities in Support of Ernst & Young LLP's Motion to Dismiss Amended Class Action Complaint ("Motion") at 4-5). Plaintiff does not address these facts in his Opposition and they stand in contrast to those of the cases cited by Plaintiff, *Rehm v. Eagle Finance Corp.*, 954 F. Supp. 1246, 1250 (N.D. Ill. 1997), which involved a restatement that reduced the company's earnings by ninety-one percent, and *In re First Merchants Acceptance Corporation Securities Litigation*, No. 97 C 271517760, *2 (N.D. Ill. Nov. 4, 1998), which involved a $28 million overstatement of income for a 31 month class period

---

3 This case is also distinguishable from *Miller v. Material Sciences Corp.*, 9 F. Supp. 2d 925 (N.D. Ill. 1998), on which Plaintiff also relies, because in that case the company's auditor was not even named as a defendant.

and a $90 million overstatement of net worth. The restatement in this case is not of similar magnitude.[4]

Plaintiff's attempt to rely on the number of months that were restated also is unavailing, largely because Plaintiff has failed to plead the existence of any other circumstantial evidence suggesting fraud. Any inference of fraud based on the length of the restatement period rests on speculation, which is insufficient to support the required inference of scienter. *See In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 553 (6th Cir. 1999) ("Although Plaintiffs speculate that it is likely that Defendants knew of the GAAP violations because they occurred over a long period of time, claims of securities fraud cannot rest 'on speculation and conclusory allegations.'") (quoting *San Leandro Emergency Med. Plan v. Philip Morris Cos.*, 75 F.3d 801, 813 (2d Cir. 1996)).

Plaintiff's GAAP and restatement allegations accordingly support no inference of conscious fraud or deliberate recklessness.

**3. The Alleged Insider Trading Does Not Support an Inference of Scienter**

Plaintiff contends that certain stock sales by Terayon executives support an inference of scienter as to E&Y. This argument is unsupported by the law or by any specific factual allegations regarding E&Y's knowledge.

Plaintiff has not cited any case in which stock sales by company executives were held to support a finding of scienter on the part of an auditor. Moreover, to make such a case, Plaintiff would have to do more than show, in hindsight, that certain insider stock sales were suspicious. Rather, he would be required to allege facts demonstrating that the suspicious circumstances surrounding the sales were known to E&Y at the time and obviously suggested impropriety. *Cf. Reiger*, 117 F. Supp. 2d at 1009 (holding that scienter of an accountant cannot be inferred from

---

4 Plaintiff cites *Transcrypt International* in his Opposition, but there the court stated that even if the numbers were off by ten to fifteen percent, the violations might be characterized only as mere negligence. *In re Transcrypt Int'l Secs. Litig.*, 4:98CV3099, 1999 U.S. Dist. LEXIS 17540, *25 (D. Neb. Nov. 4, 1999).

allegedly suspicious transactions where the plaintiff failed to plead that the accountant knew the facts making them suspicious and the facts did not inherently suggest fraud). In his Opposition, Plaintiff points to no factual allegation that E&Y was aware of the circumstances surrounding the insider sales or had any contemporaneous knowledge that the sales were suspicious.

Moreover, the stock sales to which Plaintiff points are not particularly suspicious – even in hindsight.[5] Plaintiff alleges that only four of fifteen individual defendants were engaged in these insider trades. He does not claim that the trades were particularly large for those four individuals given their total holdings or that the timing of the trades was at all suspicious, such as just before a negative earnings announcement. (Compl. ¶¶ 262-64.) Indeed, in his opposition to Terayon's motion to dismiss, Plaintiff admits that the alleged "insider trading" scheme was *not* overtly suspicious, writing that the insiders, having "already gotten their hand caught in the cookie jar once, . . . would perhaps attempt to be craftier in engaging in a yet another insider trading scheme." (*See* Lead Plaintiff's Memorandum of Points and Authorities in Opposition to Motion of Terayon Communication System, Inc. and Individual Defendants to Dismiss Class Action Complaint, Docket No. 53 ("Opposition to Terayon's Motion to Dismiss"), at 8).

Furthermore, the trading by insiders Plaintiff alleges here is unlike that alleged in *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.*, on which Plaintiff relies in his opposition to Terayon's motion to dismiss. In *No. 84*, nine insiders, who had made no sales for 20 months prior to the 10 month class period, sold between 88 and 100 percent of their stock in rapid succession over the course of three months when allegedly misleadingly optimistic statements were being made and the stock was at its peak, and just prior

---

[5] See discussion in Motion to Dismiss Amended Class Action Complaint for Violations of Federal Securities Laws by Terayon and the Individual Defendants, Section II.E.7, Docket No. 35-1, and Reply In Support of Motion to Dismiss Amended Class Action Complaint for Violations of Federal Securities Laws by Terayon and the Individual Defendants, Section I.C., Docket No. 57, which E&Y joins and hereby incorporates by reference.

to negative information became public that led to a plunge in stock price. 320 F.3d 920, 939-940 (9th Cir. 2003).[6] There are no similar allegations in this case.

**4. Plaintiff's Contention that E&Y's Scienter May Be Established by Terayon's Lack of Internal Controls is Unsupportable**

Another warning sign to which Plaintiff points is Terayon's alleged lack of internal controls. Here again, however, Plaintiff does not connect what he claims as a "red flag" (the lack of internal controls) with a specific factual allegation that E&Y knew or deliberately disregarded that flag.

Plaintiff contends generally that Terayon's "ineffective controls and procedures" were "red flags." This sort of "boilerplate" allegation does not provide a sufficient basis on which to sustain a complaint under the PSLRA. *Reiger,* 117 F. Supp. 2d at 1009, n.5. Plaintiff points to no specific allegation in his Amended Complaint that E&Y knew of and disregarded Terayon's allegedly ineffective internal controls before or after the third quarter of 2004 when certain problems with Terayon's internal controls were, in fact, disclosed. *See Svezzese v. Duratek, Inc.*, 2002 U.S. Dist. LEXIS 20967, at * 15-17 (D. Md. Apr. 30, 2002) (rejecting argument that internal control problems can be "red flags" where Plaintiff failed to plead facts showing the auditor had knowledge of the internal control problems). Indeed, the fact that internal control problems were disclosed in 2004 undermines any inference that E&Y either ignored or did not report internal control problems and supports the contrary inference that E&Y properly considered those internal control issues of which it was aware. It would make no sense for E&Y to require the disclosure of internal control deficiencies in 2004, only to hide them at other times during the class period. *Cf. Gompper*, 298 F.3d at 897 (holding that under the PSLRA, when determining whether plaintiffs have pled facts demonstrating a strong inference of scienter, courts

---

6 Moreover, *No. 84* did not involve allegations that any auditor should have seen the insider trading as a "red flag" of fraud. Furthermore, the insider stock trades were not the only indicia of scienter in that case because there were substantial detailed allegations showing that the defendants had actual knowledge of the problems inside the company rendering the targeted statements materially misleading. *See No. 84*, 320 F. 3d at 942.

must consider "*all* reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs") (emphasis in original).

Furthermore, the facts pled here are distinguishable from those in *Danis v. USN Communications, Inc.*, 73 F. Supp. 2d 923 (N.D. Ill. 1999), on which Plaintiff relies. In *Danis*, the plaintiff alleged that one of the fundamental internal problems at the client company was the lack of any system for accounts and billing, and that the same firm that audited the client's accounts was hired also as a consultant to evaluate the client's internal accounting and billing controls. 73 F. Supp. 2d at 942. In the process of conducting its evaluation, the accounting firm prepared a report detailing substantial problems with the client's infrastructure, so it was clear that the accounting firm was aware of the internal control problems at the client company. *Id.* This, combined with the fact that two outside companies who considered acquiring the accountant's client readily noticed the lack of internal controls, was sufficient to show a strong inference of recklessness by the accountant. *Id.* There are no similar allegations in this case and, accordingly, there is no basis upon which to conclude E&Y acted knowingly or recklessly with regard to Terayon's allegedly deficient internal controls.

**B. Plaintiff's Confidential Witness Allegations are Deficient**

Plaintiff asserts in his Opposition that his confidential witness allegations are sufficient to establish scienter. Yet, he cites no case and provides no analysis of the statements that would establish them as sufficient to support an inference that E&Y knew or must have known that statements regarding Terayon were false or misleading.

First, Plaintiff does not identify any basis to conclude that his confidential witness was in a position to have direct, factual knowledge of the matters on which he or she comments. In support of his argument (incorporating Section IV.A.5 of his Opposition to Terayon's Motion to Dismiss), Plaintiff cites *In re SeeBeyond Technologies Corporation Securities Litigation*, 266 F. Supp. 2d 1150 (C.D. Cal. 2003), and *In re Daou Systems, Inc.*, 411 F.3d 1006 (9th Cir. 2005). These cases demonstrate the inadequacies of Plaintiff's confidential witness allegations, however. In *SeeBeyond*, the court found the confidential witness allegations sufficient, but only after the plaintiffs amended the complaint to add specific information about the confidential witnesses' job

responsibilities. 266 F. Supp. 2d at 1158-59. In *Daou Systems, Inc.*, for each witness, the plaintiff provided a job description and responsibilities, sometimes even providing the witness's exact title and to whom the witness reported. 411 F.3d at 1016. Moreover, the confidential witnesses provided specific and detailed facts about the alleged fraud. *See id.* at 1018-20.

Plaintiff's confidential witness allegations in this case are similar to those in *Morgan v. AXT, Inc.*, which this Court found insufficient. *See Morgan*, 2005 U.S. Dist. LEXIS 42346, * 33-34 (finding confidential witness allegations deficient where they did not describe the timing of the witnesses' observations and conclusions or explain the witnesses' job responsibilities so as to determine how the witnesses had personal knowledge of the information recounted). Plaintiff here fails to identify the confidential witness's job responsibilities, his or her basis for knowing the information, or anything regarding when the witness learned the information.

Plaintiff contends that the statements' specificity in and of itself is sufficient absent specifics regarding the witness's job title, job responsibilities, how or from whom he or she learned the information attributed to him or her, whether he or she actually dealt with E&Y directly or whether the information was learned second or third hand. (Opposition to Terayon's Motion to Dismiss at 15-16). The statements themselves belie Plaintiff's contention, as they are far from specific.[7] Indeed, the statements are "long on speculation, but short on relevant detail." *See In re Business Objects S.A. Secs. Litig.*, No. C 04-2401 MJJ, 2005 U.S. Dist. LEXIS 20215, *11 (N.D. Cal. July 27, 2005).

Finally, as E&Y points out in its moving papers, even if the confidential witness's statements had a sufficient foundation, they would create, at most, an inference of negligence, not a strong inference of the required deliberately reckless or conscious mental state. *See Silicon Graphics*, 183 F.3d at 985. "Fecklessness is not recklessness." *In re Paincare Holdings Sec.*

---

7 The confidential witness statement here is also unlike those relied on in *In re Cabletron Systems, Inc.*, 311 F.3d 11, 30-31 (1st Cir. 2002), which Plaintiff cites. In *Cabletron Systems, Inc.*, there were numerous confidential witnesses with personal knowledge of the facts, whose consistent stories reinforced one another, and who provided significant details as to the fraudulent actions including the name and address of one employee who stashed goods in his garage in connection with a fictitious sale. *See id.*

*Litig.*, 2007 WL 1229703 *8 (M.D. Fla. Apr. 25, 2007). In short, Plaintiff's confidential witness allegations contribute nothing to the strong inference of scienter that Plaintiff is required to plead.

**C. Plaintiff's Motive Argument is Baseless and Contrary to Law**

Plaintiff's motive allegations also are insufficient to satisfy the PSLRA's pleading requirements. Plaintiff dismisses the well-established premise that E&Y would have no rational incentive to participate in the alleged fraud Terayon committed – but offers no factual basis for his contrary conclusion that E&Y would act irrationally and put the prospect of fees from a single, small client above its valuable reputation. *See In re Worlds of Wonder*, 35 F.3d at 1427 n.7 ("[I]t is highly improbable that an accountant would risk surrendering a valuable reputation for honesty and careful work by participating in a fraud merely to obtain increased fees")(citing *S.E.C. v. Price Waterhouse*, 797 F Supp. 1217, 1242 (S.D.N.Y. 1992)). "One who believes that another has behaved irrationally has to make a strong case." *See DiLeo v. Ernst & Young*, 901 F. 2d 624, 639 (7th Cir. 1990). Plaintiff has made no case, much less a strong one.

Instead, Plaintiff alleges only bare numbers regarding the fees Terayon paid E&Y. (Compl. ¶¶ 73, 109, 148). He claims that E&Y earned approximately $500,000 in fees from Terayon in 2001; $610,000 in 2002, and $500,000 in 2003. (*See id.*) However, Plaintiff alleges no factual context from which to determine the significance of these fees to E&Y. *Compare In re Worldcom, Inc. Sec. Litig.*, 2003 U.S. Dist. LEXIS 10863, *13 (S.D.N.Y. June 24, 2003) (the client was the most valuable client for the particular branch office and the firm was paid $16.8 million in one year).[8] Moreover, E&Y's resignation from the Terayon account – voluntarily

---

[8] *Stone & Webster, Inc.*, another case on which Plaintiff relies to support his motive allegations, is also unavailing. 414 F.3d 214-15. *Stone & Webster* involved allegations that an auditor falsely asserted compliance with GAAP did not audit in accordance with GAAS, missed "red flags," and was motivated by lucrative fees. Though the court acknowledged that fees could strengthen an inference of scienter based on other facts, it found that, despite the plaintiff's attempts to assert other facts supporting scienter, not unlike the case here, allegations of a profit motive were insufficient to raise a strong inference of scienter. *Id.* at 215. Similarly, *In re Wells Fargo Sec. Litig.*, 12 F.3d 922 (9th Cir. 1993), and *In re Nuko Information Systems, Inc.*, 199 F.R.D. 338 (N.D. Cal. 2000), provide no support for Plaintiff's motive allegations. *Wells Fargo* was decided before the PSLRA's heightened pleading standards, and when motive and opportunity was sufficient to plead scienter, which Plaintiff acknowledges is no longer the case. 12 F.3d at 930-31; (*see also* Opposition at 8). In *Nuko Information Systems*,

(continued)

renouncing this fee income – further undermines any inference that could be drawn from allegations related to E&Y's profit "motive."

Plaintiff's related allegation that E&Y would countenance its client's fraud to avoid subjecting the client to civil and criminal liability also is unsupported by any legal authority or specific facts suggesting E&Y was so motivated. Moreover, this assertion is contrary to the more reasonable inference that an accountant would be motivated, not to cover up its customer's fraudulent accounting, but to ensure the accounting was done properly to avoid subjecting *itself* to liability and sanctions. *Cf. Gompper*, 298 F.3d at 897. Plaintiff's motive allegations thus provide no support for the conclusion that E&Y acted with scienter.

## III. EVEN TAKEN AS A WHOLE, PLAINTIFF'S ALLEGATIONS FAIL TO GIVE RISE TO A STRONG INFERENCE OF SCIENTER

Plaintiff asks the Court to consider the totality of his scienter allegations rather than examine them individually. However, none of Plaintiff's allegations support an inference of scienter because Plaintiff fails to allege facts that connect what E&Y knew at the time to something Terayon allegedly did wrong. Plaintiff is stacking zeros – and zero plus zero equals zero.

Indeed, the allegations pled in *In re Fleming Companies Inc. Securities Litigation*, 2004 U.S. Dist. LEXIS 26488 (N.D. Tex. June 11, 2004), a case on which Plaintiff relies to support his "totality" argument, stand in contrast to, and demonstrate the inadequacy of, Plaintiff's allegations. In *Fleming*, the plaintiffs alleged that the auditor was heavily involved with the company's accounting and knew thoroughly the company's financial history, accounting practices, internal controls and business operations. *Id.* at *123. The auditor was being paid both auditing and consulting fees, with its audit fees being $1 million in auditing fees and consulting

---

the claims were not against an independent auditor, and involved detailed allegations demonstrating that the defendants knew certain transactions were tentative and that they were not supposed to recognize revenue as to tentative transactions, but did anyway. 199 F.R.D. at 343-44.

fees of nearly twice that at $1.8 million, in a single year. *Id.* at *125. In *Fleming*, the plaintiff alleged that the company fired much of its accounting and audit staff, and then outsourced to another accounting firm, whose employee subsequently demanded a transfer to another company after learning of the company's widespread improprieties. *Id.* The plaintiff also then identified, among other things, specific GAAS violations by the accounting firm in failing to expand its procedures given the lack of internal auditing, inadequate accounting staff, and absence of specific documentation supporting transactions. *Id.* at 128. And, ultimately, the restatement in *Fleming* resulted in a reduction of earnings by $85 million, which accounted for 79% of the company's reported earnings for the time period at issue. *Id.*

Terayon's restatement, on the other hand, decreased its total revenue by only 2% and increased its losses by less than 1%. (*See* Motion at 4-5). Moreover, E&Y collected only audit – not consulting – fees from Terayon and the amounts were substantially smaller. Finally, the gravamen of Plaintiff's complaint against E&Y is that the auditor was not sufficiently involved in Terayon's business.

In short, Plaintiff's allegations suggest that E&Y was, at worst, negligent. His own characterizations of E&Y's work bespeak only negligence, not the deliberate recklessness necessary to state a claim for securities fraud. (*See, e.g.*, Opposition at 2 ("Had E&Y fulfilled its obligations as Terayon's independent outside auditor, such "red flags" would have raised E&Y's suspicions...."); Opposition at 5 ("these red flags should have caused E&Y to approach Terayon's audits with a very high level of skepticism and to critically approach Defendants' disclosures and representations"); Opposition at 5 ("A reasonable and independent outside auditor would have inquired as to the propriety of these insider sales, thereby exposing the fraud taking place at Terayon").)

Mere negligence, even gross negligence, is insufficient to state a claim for securities fraud, however. Indeed, in *DSAM*, where the plaintiffs alleged the auditor "had in its hands the very documentation that clearly showed [the company's] violation of GAAP..., yet did not see the obvious," the Ninth Circuit held that the plaintiff still did not establish a strong inference of deliberate recklessness. *DSAM*, 288 F.3d at 390; *see also Software Toolworks*, 50 F.3d at 628

(finding the evidence, at most, supported an inference of negligence by the auditors even though plaintiffs established certain OEM agreements were poorly documented, informal, and conditional, that the OEM licensing transactions were risky, that the company was under pressure to report favorable earnings, and the auditor only obtained oral confirmations of some agreements and deviated from its audit plan). Here, as to E&Y, Plaintiff has not pled facts even as specific and serious as those in *DSAM.*

As in *Morgan v. AXT, Inc.*, here, each scienter allegation is fatally deficient on its own, and thus cannot together give rise to the necessary strong inference of scienter required under the PSLRA. 2005 U.S. Dist. LEXIS 4234, * 38. Failure to plead specific facts demonstrating a strong inference of scienter as to E&Y is fatal to Plaintiff's claim against E&Y. *See Silicon Graphics*, 183 F.3d at 980.

## IV. CONCLUSION

For the foregoing reasons, as well as those in the Reply In Support of Motion to Dismiss Amended Class Action Complaint for Violations of Federal Securities Law by Terayon and the Individual Defendants, Docket No. 57, with respect to loss causation in which E&Y joins, E&Y respectfully requests that the Court dismiss Plaintiff's claims against E&Y with prejudice.

Dated: June 6, 2007

MORGAN, LEWIS & BOCKIUS LLP
John H. Hemann
Michael J. Lawson
Sheila A. Jambekar

ERNST & YOUNG LLP
Bruce M. Cormier
Joel E. Bonner

By /S/
John H. Hemann
Attorneys for Defendant
ERNST & YOUNG LLP